IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ABDULRAHMAN RAGEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-CV-336 |
| | ) | |
| UNIVERSITY OF NORTH | ) | |
| CAROLINA at CHAPEL HILL, JAN | ) | |
| NIKLAS ULRICH, ALICE ZHANG, | ) | |
| and DONALD BUDENZ in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

Abdulrahman Rageh alleges that during his ophthalmology fellowship at the University of North Carolina at Chapel Hill, the University discriminated against him based on his national origin and age. After bringing his concerns to a supervisor, the University shortened his fellowship to one year, and after he filed a charge with the EEOC, the University terminated his fellowship. Dr. Rageh asserts several causes of action against defendants UNC-CH, and three UNC employees, Jan Niklas Ulrich, Alice Zhang, and Donald Budenz. The defendants' motion to dismiss will be granted in part and denied in part.

## I. Facts Alleged in the Amended Complaint

Dr. Rageh is a medical doctor of Egyptian national origin, and he is over forty years of age. Doc. 14 at ¶ 20. In August 2022, Dr. Rageh began a two-year Vitreoretinal

Fellowship at UNC, a fellowship providing advanced training in ophthalmology. *Id.* at ¶¶ 26–27, 30. During Dr. Rageh's fellowship, defendant Dr. Alice Zhang, one of the attending and supervising physicians, mocked his accent, criticized him for mispronouncing her name, and allowed younger residents to perform more steps in operations than Dr. Rageh. *Id.* at ¶¶ 18, 37, 39. Dr. Zhang expressed unjustified concerns to defendant Dr. Jan Niklas Ulrich, the fellowship director for UNC, about Dr. Rageh's skills and issues with patient safety, and she eventually refused to work with Dr. Rageh. *Id.* at ¶¶ 17, 43–44, 48, 52.

On December 19, 2022, Dr. Rageh delivered a letter to Dr. Ulrich complaining of discrimination by Dr. Zhang. *Id.* at ¶ 54. Shortly thereafter, Dr. Ulrich signed positive reference letters and recommendations for Dr. Rageh, *id.* at ¶¶ 82–87, but at the same time he shortened Dr. Rageh's fellowship to one year, purportedly because of patient safety concerns. *Id.* at ¶¶ 63–67. By the end of the year, UNC learned that Dr. Rageh had filed a charge of discrimination with the EEOC, and in January 2023 UNC terminated Dr. Rageh's contract; Dr. Ulrich told Dr. Rageh that he was being terminated because he filed the EEOC complaint. *Id.* at ¶¶ 70–72.

Since his termination, Dr. Rageh has sought other employment opportunities. *Id.* at ¶¶ 73–78. Dr. Ulrich has informed potential employers and state licensing boards that Dr. Rageh had been relieved from seeing patients because of safety concerns. *Id.* at ¶ 73.

After receiving a right to sue letter from the EEOC, *id.* at ¶ 13; *see also* Doc. 14-3, Dr. Rageh brought this lawsuit. In his amended complaint, he asserts claims against the defendants for violations of Title VII (discrimination and retaliation), 42 U.S.C.

§§ 2000e-2(a)(1), 2000e-3(a), and the Age Discrimination in Employment Act (discrimination and retaliation), 29 U.S.C. §§ 623(a), 623(d), as well as for defamation per se, breach of contract, negligent or intentional infliction of emotional distress,[1] interference with contractual relations, tortious interference with prospective economic advantage, and wrongful discharge in violation of public policy.  Doc. 14 at ¶¶ 103–93.  Defendants moved to dismiss.  Doc. 17.

## II.      Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor.  *See Twombly*, 550 U.S. at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  But courts are not required to accept any legal conclusions drawn from the facts, nor to "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000); *accord Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 154 (4th Cir. 2020).

## III.     Title VII and ADEA Claims

### A. Title VII and ADEA Claims Against Individual Defendants

Title VII and the ADEA do not provide a cause of action against co-employees or supervisors; the cause of action is against the employer.  *Lissau v. S. Food Serv., Inc.*, 159

---

[1] As discussed *infra*, it is unclear whether Dr. Rageh means to assert a claim for negligent infliction of emotional distress or intentional infliction of emotional distress.

3

F.3d 177, 180–81 (4th Cir. 1998). To the extent the complaint can be read to assert Title VII and ADEA claims against the individual defendants in their individual capacities, those claims are dismissed.

The Title VII and ADEA claims against the individual defendants in their official capacities are duplicative of the claims against UNC. "[D]uplicative claims against an individual in his official capacity when the government entity is also sued may be dismissed." *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) (collecting cases); *see also Khazanie v. Univ. of N.C. at Chapel Hill*, No. 20-CV-1096, 2021 WL 5235296, at *4 (M.D.N.C. Nov. 10, 2021). Dr. Rageh provides no argument to the contrary.

The motion to dismiss the Title VII and ADEA claims against the individual defendants in both their official and individual capacities will be granted.

### B. Title VII and ADEA Claims Against UNC-CH

#### 1. Discrimination Claims

Dr. Rageh asserts a claim for national origin discrimination under Title VII, Doc. 14 at ¶¶ 103–114, and a claim for age discrimination under the ADEA. *Id.* at ¶¶ 124–131. Under both statutes, a plaintiff can prove that an adverse employment action was the product of discrimination either by producing direct evidence of discrimination or circumstantial evidence using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to raise an inference of discrimination. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2019) (Title VII claim); *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (ADEA claim).

4

While the pleadings need not "contain specific facts establishing a prima facie case of discrimination" under the *McDonnell Douglas* framework, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585–87 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

### a. ADEA – Age

For his age discrimination claim, Dr. Rageh must allege facts plausibly supporting the inference that (1) he was "over the age of 40," (2) he "experienced discrimination by an employer," and (3) the discrimination was "because of his age." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020). Age must be the but-for cause of an adverse employment action, *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 67 (4th Cir. 2023), but a plaintiff "need not establish but-for causation to survive a motion to dismiss." *Lattinville-Pace v. Intelligent Waves LLC*, No. 22-1144, 2024 WL 1756167, at *1 (4th Cir. Apr. 24, 2024). "[A] plaintiff need only plead sufficient facts to plausibly support a claim of discrimination." *Id.*

The adverse employment action does not need to be significant. *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Rather, a plaintiff need only allege "some injury respecting her employment terms or conditions." *Id.* at 359 (stating employee's allegations that she was transferred and given fewer responsibilities would constitute an adverse employment action even though her rank and pay remained the same); *see also Grant v. N.C. Dep't of Transp.*, No. 23-CV-702, 2024 WL 2789388, at *3 (E.D.N.C. May 30, 2024) (applying *Muldrow* to an ADEA claim).

5

Dr. Rageh has alleged sufficient facts to state an ADEA discrimination claim based on denial of training opportunities. He alleges that he was over 40 years old during his fellowship, Doc. 14 at ¶ 41, and that Dr. Zhang, who supervised him on behalf of UNC, provided him with fewer training opportunities than younger residents, eventually refusing to train him. *Id.* at ¶¶ 18, 39, 52, 128, 130; *see also* Doc. 14-2 at 3 (asserting in his EEOC charge that Dr. Zhang only allowed him to take notes during surgeries while she permitted the younger residents to participate). In his EEOC charge attached to the complaint, Dr. Rageh asserts that according to Dr. Ulrich, Dr. Zhang expressed concerns about his age before his fellowship even started. Doc. 14-2 at 2.[2] To the extent his ADEA claim is based on a denial of training opportunities by Dr. Zhang, it may proceed.

The defendants contend that Dr. Rageh has not alleged sufficient facts to give rise to a prima facie case of discrimination because he has not adequately alleged that his job performance was satisfactory or that he was treated differently from similarly situated employees. Doc. 18 at 10–12. But the Supreme Court has held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz*, 534 U.S. at 515; "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510; *accord McCleary-Evans*, 780 F.3d at 584. Even the prima facie requirements often used to show discrimination by circumstantial evidence "are not set in stone." *Guessous v. Fairview Prop. Invs., LLC*,

---

[2] A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. The Court's "evaluation is thus generally limited to a review of the allegations of the complaint itself" and to exhibits attached to the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *see also* Fed. R. Civ. P. 10(c).

828 F.3d 208, 219 (4th Cir. 2016). Taken as a whole and in light of the alleged statements by Dr. Ulrich about Dr. Zhang's concerns with Dr. Rageh's age, Dr. Rageh's claim of age discrimination meets the plausibility standard.

The defendants also contend that loss of training opportunities is not an adverse employment action. Doc. 18 at 14. But the defendants ignore the Supreme Court's decision earlier this year clarifying that the adverse employment action need not be significant. *Muldrow*, 601 U.S. at 355.

To the extent Dr. Rageh contends that UNC shortened and terminated his fellowship because of his age, he has not alleged sufficient facts to make that claim plausible. He alleges that Dr. Ulrich, not Dr. Zhang, made those decisions, Doc. 14 at ¶ 71, and he has not alleged any facts tending to indicate that Dr. Ulrich based his decision on Dr. Rageh's age. Dr. Rageh does not, for instance, allege that after his termination, a less qualified, younger replacement was given the fellowship. *See Lattinville-Pace*, 2024 WL 1756167, at *3.

In the absence of any factual allegations supporting a plausible inference that Dr. Ulrich shortened and then terminated Dr. Rageh's fellowship because of his age, this claim will be dismissed. *See Washington v. Baltimore City Police Dep't*, No. 22-CV-2212, 2023 WL 6308090, at *6–7 (D. Md. Sept. 28, 2023) (dismissing ADEA claim because the plaintiff did not allege facts supporting an inference that her non-promotion was because of her age); *see also Palmer*, 72 F.4th at 63–64 (noting in the summary judgment context that direct evidence of age discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear

7

directly on the contested employment decision" and holding that mere comments about retirement are not direct evidence of age discrimination).

Dr. Rageh has alleged facts that, while thin, nudge his ADEA age discrimination claim from conceivable to plausible insofar as it is based on reduced training opportunities. The motion to dismiss his age discrimination claim against UNC will be denied to that extent. But to the extent that his claim is based on UNC shortening or terminating his fellowship because of his age, the motion to dismiss will be granted, as he has alleged insufficient facts to make this claim plausible.

### b. Title VII – National Origin

For his Title VII discrimination claim to proceed, Dr. Rageh must allege facts allowing for a reasonable inference that UNC discriminated against him "with respect to his . . . terms, conditions, or privileges of employment, because of [his] . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Discrimination based on foreign accent may be considered national origin discrimination. *See Bell v. Home Life Ins. Co.*, 596 F. Supp. 1549, 1555 (M.D.N.C. 1984); *Shulman v. Blue Cross & Blue Shield of S.C.*, No. 07-CV-2967, 2009 WL 2929534, at *2 (D.S.C. Sept. 2, 2009); *see also* 29 C.F.R. § 1606.1 (defining national origin discrimination broadly to include denial of equal employment opportunity based on "linguistic characteristics of a national origin group.").

Dr. Rageh has alleged sufficient facts to state a Title VII national origin discrimination claim to the extent that he bases his claim on denial of training opportunities by Dr. Zhang. In support of this claim, Dr. Rageh alleges that he is a member of a protected class as he is of Egyptian national origin, Doc. 14 at ¶¶ 2, 20, 21,

8

that Dr. Zhang mocked his accent and criticized him for mispronouncing her name, *id.* at ¶¶ 37, 109, and that even though the fellowship is intended to provide training in ophthalmological surgeries, *see id.* at ¶ 27, Dr. Zhang provided him with fewer training opportunities than residents who reported to him, and she eventually refused to train him. *Id.* at ¶¶ 39, 52, 128, 130.

The defendants raise the same arguments against Dr. Rageh's Title VII discrimination claim as they do against his ADEA discrimination claim. *See* Doc. 18 at 10–15. For the reasons stated *supra*, the defendants' arguments are unpersuasive.

To the extent that Dr. Rageh contends that UNC shortened and terminated his fellowship because of his national origin, however, he has not alleged facts making that claim plausible. He alleges no facts supporting a plausible inference that Dr. Ulrich shortened or terminated his fellowship because of his national origin, so this claim will be dismissed. *See Lattinville-Pace*, 2024 WL 1756167, at *3 (affirming dismissal of Title VII national origin claim where plaintiff did not allege enough facts from which the court could "infer that her termination was motivated by a discriminatory animus against French-Canadians"); *see also McCleary-Evans*, 780 F.3d at 585 (affirming dismissal of Title VII discrimination claim because the plaintiff did not allege facts allowing for a reasonable inference that she was not hired because of her race or sex).

Dr. Rageh has plausibly stated a Title VII discrimination claim against UNC for denial of training opportunities, and the motion to dismiss will be denied to that extent. But to the extent that his claim is based on UNC shortening or terminating his fellowship because of his national origin, the motion to dismiss will be granted.

9

### 2. Retaliation Claims

To plead a Title VII or ADEA retaliation claim, "the complaint must allege facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff because of the plaintiff's protected activity." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (cleaned up); *see also Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022). Dr. Rageh has stated claims for retaliation under both statutes. He alleges that he engaged in protected activity of filing an EEOC charge n based on age and national origin discrimination, Doc. 14 at ¶ 12; *see* Doc. 14-2, that within weeks of learning of the EEOC charge, UNC terminated his fellowship, and that Dr. Ulrich told him he was terminated because he filed the EEOC charge. Doc. 14 at ¶¶ 70–71.

Dr. Rageh has alleged sufficient facts to give rise to a plausible inference that his fellowship was shortened and then terminated in retaliation for his protected activity. The motion to dismiss these claims against UNC will be denied.

## IV. State Law Claims

Dr. Rageh asserts state law claims against all defendants for defamation per se, *id.* at ¶¶ 141–153, breach of contract, *id.* at ¶¶ 154–161, negligent or intentional infliction of emotional distress, *id.* at ¶¶ 162–170, interference with contractual relations, *id.* at ¶¶ 171–178, tortious interference with prospective economic advantage, *id.* at ¶ 179–185, and wrongful discharge in violation of public policy. *Id.* at ¶¶ 186–193.

### A. UNC-CH is Entitled to Sovereign Immunity

The Eleventh Amendment bars suits by private parties against state actors like UNC and its employees acting in their official capacities absent an exception or clear and

explicit waiver. *See Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1138–39 (4th Cir. 1990); *Brown v. Univ. of N.C. at Chapel Hill*, No. 22-CV-717, 2023 WL 6958987, at *16 (M.D.N.C. Oct. 20, 2023); *see also Se. Pub. Safety Grp., Inc. v. Munn*, No. 22-1114, 2024 WL 4625079, at *2 (4th Cir. Oct. 30, 2024) (noting that Eleventh Amendment "immunity extends to suits against state officials in their official capacities because such suits are no different from a suit against the State itself" (cleaned up)). Here, there is no waiver for tort or contract claims brought in federal court, and North Carolina is "entitled to Eleventh Amendment immunity when common law tort claims . . . that seek monetary damages are brought into federal court through pendent jurisdiction." *Dai v. Univ. of N.C. at Chapel Hill*, No. 02-CV-224, 2003 WL 22113444, at *5, n.5 (M.D.N.C. Sept. 2, 2003); *see also Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005); *Vincent v. N.C. Dep't of Transp.*, No. 20-CV-51, 2020 WL 5710710, at *11 (M.D.N.C. Sept. 24, 2020).

Dr. Rageh concedes that his state law claims against UNC and the individual defendants in their official capacities are barred by the Eleventh Amendment. Doc. 21 at 6. The motion to dismiss the state law claims will be granted as to those defendants.

## B. State Law Claims Against Individual Defendants

### 1. Defamation Per Se

For a claim of defamation, the "plaintiff must allege . . . that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) (quoting *Griffin v. Holden*, 180 N.C. App. 129, 133, 636 S.E.2d 298,

302 (2006)).  The only allegedly false and defamatory statements Dr. Rageh specifically

identifies are statements made by Dr. Ulrich in letters to two state licensure boards "that

Dr. Rageh was relieved from seeing patients on January 9, 2023 due to repeated safety

concerns."  Doc. 14 at ¶¶ 144–145.  Dr. Rageh alleges that he suffered reputational

damage because of those false statements.  *Id.* at ¶¶ 150–151.

The defendants contend that Dr. Ulrich's statements are factually true and thus not

defamatory, and that Dr. Ulrich is entitled to a qualified privilege because the statements

were made in pursuance of a social or personal duty.  Doc. 18 at 19–21.  While truth is a

complete defense to defamation, *Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 268

N.C. App. 334, 344, 836 S.E.2d 322, 329 (2019), and North Carolina law does provide a

qualified privilege from liability in defamation actions under certain circumstances,[3]

these affirmative defenses are better raised at summary judgment on a more developed

factual record.[4]

Viewing the factual allegations in the amended complaint as a whole, Dr. Rageh

alleges that he was not relieved from seeing patients because of patient safety concerns

---

[3] "A qualified privilege exists when a communication is made:  (1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest."  *Kinesis Advertising, Inc. v. Hill*, 187 N.C. App. 1, 18, 652 S.E.2d 284, 297 (2007).

[4] In fact, all of the cases the defendants cite about the qualified privilege are decisions at the summary judgment stage.  *See* Doc. 18 at 20–21; *Dobson v. Harris*, 352 N.C. 77, 87, 530 S.E.2d 829, 837 (2000); *Harris v. Procter & Gamble Mfg. Co.*, 102 N.C. App. 329, 332, 401 S.E.2d 849, 851 (1991); *Harris v. Prince George's Cnty. Pub. Schs.*, 141 F.3d 1158 (Table), 1998 WL 183837, at *4 (4th Cir. Apr. 20, 1998); *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 520, 665 A.2d 297, 321 (1995); *Friel v. Angell Care Inc.*, 113 N.C. App. 505, 511, 440 S.E.2d 111, 115 (1994); *Pressley v. Cont'l Can Co.*, 39 N.C. App. 467, 468, 250 S.E.2d 676, 677 (1979).

but for retaliatory reasons. *See* Doc. 14 at ¶¶ 79–87 (alleging that Dr. Ulrich was satisfied with his work in December 2022, before the EEOC complaint was filed); *id.* at ¶ 60 (alleging that Dr. Ulrich first noted Dr. Rageh's performance deficiencies just hours after Dr. Rageh submitted a formal complaint); *id.* at ¶ 66 (alleging that Dr. Rageh did not have discussions with Dr. Ulrich about his performance deficiencies before December 20, 2022, as Dr. Ulrich said); *id.* at ¶¶ 71–72 (alleging Dr. Rageh was actually terminated because he filed an EEOC charge).

Dr. Rageh has alleged facts which make his defamation claim against Dr. Ulrich plausible, so the motion to dismiss the defamation claim against Dr. Ulrich in his individual capacity will be denied. Dr. Rageh has not identified any specific statements by Dr. Zhang or Dr. Budenz that he contends are false and defamatory. The motion to dismiss the defamation claim as to those two defendants will be granted.

## 2. Breach of Contract

"Under North Carolina law, the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 606 (M.D.N.C. 2019) (cleaned up) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26, 530, S.E.2d 838, 843 (2000)). Formation of a valid contract requires "an agreement based on a meeting of the minds and sufficient consideration." *Id.*; *see also Creech ex rel. Creech v. Melnik*, 147 N.C. App. 471, 477, 556 S.E.2d 587, 591 (2001).

Dr. Rageh alleges that he had a written contract of employment with UNC, Doc. 14 at ¶ 155, but he does not allege that he had a contract with any individual defendants.

In the absence of an alleged contract between Dr. Rageh and any individual defendant, the motion to dismiss the breach of contract claim will be granted as to all defendants.

### 3. Negligent or Intentional Infliction of Emotional Distress

Dr. Rageh next brings a claim for infliction of emotional distress, though it is not clear whether his claim is for negligent infliction or intentional infliction. His claim enumerated as Count VII is entitled "Negligent Infliction of Emotional Distress," *id.* at 22, and the amended complaint elsewhere includes the term "negligent infliction of emotional distress." *Id.* at ¶ 1. But the factual allegations in Count VII and throughout the complaint identify intentional conduct, *id.* at ¶¶ 164–165, and he identifies the claim as intentional infliction of emotional distress throughout the amended complaint and briefing. *See id.* at ¶ 169; *id.* at 26; Doc. 21 at 1.

In North Carolina, severe emotional distress is a required element of both intentional infliction of emotional distress and negligent infliction of emotional distress. *Maisha v. Univ. of N.C.*, 641 F. App'x 246, 251 (4th Cir. 2016) (citing *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 32, 724 S.E.2d 568, 577 (2012)); *see also Alejandra Batlle v. United Drug Supply, Inc.*, No. 20-CV-412, 2020 WL 9848460, at *9 (M.D.N.C. Dec. 2, 2020), *report and recommendation adopted as modified sub nom. Batlle v. United Drug Supply, Inc.*, No. 20-CV-412, 2021 WL 7709972 (M.D.N.C. Sept. 20, 2021). Severe emotional distress is "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Alejandra Batlle*, 2020 WL 9848460, at *9 (quoting

14

*Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

Here, Dr. Rageh alleges only that the "[d]efendant's conduct did in fact cause [him] severe emotional distress," and that he "has suffered severe injury to his person, including great emotional distress, humiliation, embarrassment, anger, grief, pain and suffering, and damage to his reputation." Doc. 14 at ¶¶ 167–168. The first of those allegations is conclusory, and the remaining allegations are also non-specific. He alleges no facts tending to indicate he suffered an "emotional or mental disorder" such as a neurosis or chronic depression and no facts tending to show a severe and disabling emotional or mental condition.

While he does not have to prove his claim and all the elements in the complaint, he does need to allege sufficient facts to make the claim plausible. Here, Dr. Rageh has not alleged "any facts that might establish [he] has suffered from actual, severe emotional distress," so the motion to dismiss this claim will be granted as to all defendants. *Moses v. Am. Red Cross*, No. 12-CV-306, 2013 WL 2948155, at *2 (E.D.N.C. June 14, 2013), *aff'd sub nom. Moses v. Am. Red Cross Carolinas Region Blood Servs.*, 542 F. App'x 295 (4th Cir. 2013); *see also Alejandra Batlle*, 2020 WL 9848460, at *9–10 (recommending dismissal of negligent and intentional infliction of emotional distress claims for failure to allege severe emotional distress).

### 4. Interference with Contractual Relations

The elements for a claim of tortious interference with a contract are: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a

contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016) (quoting *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988)). A plaintiff does not need to show that the defendant caused the third party to breach the contract; a plaintiff need only show that the defendant wrongfully interfered with the contract. *Lexington Homes, Inc. v. W.E. Tyson Builders, Inc.*, 75 N.C. App. 404, 411, 331 S.E.2d 318, 322 (1985); *see also Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 546 F. Supp. 3d 440, 453 (M.D.N.C. 2021).

Generally, interference with a contract is justified "if it is motivated by a legitimate business purpose." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 976 F. Supp. 2d 706, 717 (M.D.N.C. 2013) (quoting *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992)). For claims of tortious interference with a contract, North Carolina law distinguishes between defendants who are outsiders and non-outsiders. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010). An outsider is "one who was not a party to the terminated contract and who had no legitimate business interest of his own in the subject matter thereof," and a non-outsider is "one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." *Id.* (quoting *Smith v. Ford Motor Co.*, 289 N.C. 71, 87, 221 S.E.2d 282, 292 (1976)).

16

Non-outsiders often have "qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Id.* (quoting *Lenzer v. Flaherty*, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (1992)). But non-outsiders lose that qualified privilege if their motives are "other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Id.* A non-outsider has not acted in good faith if he "does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Lamm v. Branch Banking & Tr. Co.*, 750 F. App'x 189, 191 (4th Cir. 2018) (quoting *Hubbard v. N.C. State Univ.*, 248 N.C. App. 496, 506, 789 S.E.2d 915, 922 (2016)).

Dr. Rageh does not allege any facts tending to indicate that Dr. Budenz interfered with his contract. Indeed, other than alleging that Dr. Budenz has institutional authority as the chair of the Department of Ophthalmology, Doc. 14 at ¶ 16, and that he "did not respond" to Dr. Rageh's complaints about Dr. Zhang, *id.* at ¶ 97, the complaint is silent as to any action taken by Dr. Budenz. This claim against him will be dismissed.

Dr. Rageh has alleged facts that make his claim against Dr. Ulrich and Dr. Zhang for tortious interference with his UNC employment contract plausible.[5] He alleges that he had an employment contract with UNC, *id.* at ¶¶ 29–30, 71, 155, 172, and that Dr.

---

[5] Dr. Rageh makes some allegations about potential employment with an organization in Pennsylvania. Doc. 14 at ¶¶ 74–76. But he does not allege that he had a contract with the organization. *See* Doc. 14-7 at 3 (offer letter stating that "signature below or the company's offering of these terms does not create a binding employment contract"). As tortious interference with contract requires a contract, *see Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 283, 827 S.E.2d 458, 476 (2019) (dismissing tortious interference claim where there was no valid contract), the Court construes those allegations as relevant only to his claim for interference with prospective economic advantage. *See* discussion *infra*.

Ulrich and Dr. Zhang knew about this contract. *See id.* at ¶¶ 17–18, 26, 173. He further alleges that Dr. Zhang made false statements about his skills with the intent to induce UNC to breach the contract, *id.* at ¶¶ 43–50, 57–58, 100, 174, and that Dr. Ulrich took steps to induce UNC to breach its contract with Dr. Rageh because Dr. Rageh filed discrimination complaints. *Id.* at ¶¶ 62–68, 70–72. Dr. Rageh alleges that those actions injured him by inducing UNC to terminate his employment contract and deny him due process and grievance procedures to which he was entitled under AUPO-FCC guidelines incorporated into his employment contract. *Id.* at ¶¶ 156–158, 176.

The defendants contend that Dr. Rageh does not "allege any breach of his contract with UNC-CH," so he cannot state a viable claim for tortious interference with a contract. Doc. 18 at 26. According to the defendants, Dr. Rageh does not state a breach of contract claim because he bases his claim on violations of the AUPO-FCC's guidelines, and those guidelines are not included in his employment contract. *Id.* at 21–23. But Dr. Rageh does allege that the guidelines are incorporated into his employment contract. Doc. 14 at ¶ 157. And North Carolina law does not require a plaintiff to plead actual breach of contract to state a claim for tortious interference with a contract; a plaintiff need only allege wrongful interference. *Intercollegiate Women's Lacrosse Coaches Ass'n*, 546 F. Supp. 3d at 453; *see also Lexington Homes, Inc.*, 75 N.C. App. at 411. As discussed *supra*, Dr. Rageh has alleged enough facts to make it plausible that Dr. Ulrich and Dr. Zhang wrongfully interfered with his employment contract.

The defendants also say that Dr. Ulrich and Dr. Zhang were justified in their actions as Dr. Rageh's supervisors. Doc. 18 at 26–27. Non-outsiders like Dr. Ulrich and

18

Dr. Zhang may enjoy a "qualified immunity from liability for inducing their corporation or other entity to breach its contract" unless they act with a wrongful purpose. *Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 523–24, 586 S.E.2d 507, 510 (2003) (cleaned up) (quoting *Lenzer*, 106 N.C. App. at 513). Taking the factual allegations in the complaint as true, Dr. Zhang and Dr. Ulrich's actions were motivated by the wrongful purposes of discrimination (Dr. Zhang) and retaliation (Dr. Ulrich). Doc. 14 at ¶¶ 43–50, 57–58, 63–66, 100, 174; *see also Combs*, 203 N.C. App. at 85–86 (reversing directed verdict for defendant on tortious interference claim where the plaintiff presented evidence that he was terminated for a wrongful purpose); *Riley v. Dow Corning Corp.*, 767 F. Supp. 735, 738 (M.D.N.C. 1991) (denying summary judgment on tortious interference claim because there was a factual dispute about the reason for plaintiff's termination). These arguments are better addressed on a more developed factual record.

The motion to dismiss the claim of interference with contractual relations against Dr. Ulrich and Dr. Zhang in their individual capacities will be denied. The motion to dismiss this claim against Dr. Budenz will be granted.

### 5. Tortious Interference with Prospective Economic Advantage

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege facts tending to indicate that the defendant "interfere[d] with a business relationship by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, if damage proximately ensues, when this interference is done not in the legitimate exercise of the interfering person's rights." *Beverage Sys.*, 368 N.C. at 701 (cleaned up).

19

Dr. Rageh bases his interference claim on his offer of employment from OCLI Vision at AIO, a Pennsylvania organization. Doc. 14 at ¶¶ 74, 179–185. He alleges that he was offered a position as an ophthalmologist, *id.* at ¶ 74, that he signed an offer letter, *id.* at ¶ 75; Doc. 14-7 at 2–3, and that the employer later rescinded its offer because Dr. Ulrich made untrue statements to the potential employer about Dr. Rageh's performance. Doc. 14 at ¶¶ 71, 73, 76–77, 182. Taken as true, these allegations state a claim for tortious interference with prospective economic advantage.

The defendants once again assert that Dr. Ulrich cannot be liable for tortious interference because he was motivated by a legitimate business purpose in making the statements to Dr. Rageh's potential employers. Doc. 18 at 29. But taking the allegations in the complaint as true, Dr. Ulrich did not act in good faith or with a legitimate business purpose in making the false statements. *See* Doc. 14 at ¶¶ 70–76. This argument is better addressed on a more developed factual record.

Dr. Rageh has alleged enough facts to make a claim for tortious interference with prospective economic advantage against Dr. Ulrich plausible. The motion to dismiss the claim against Dr. Ulrich in his individual capacity will be denied. But Dr. Rageh does not allege any facts tending to indicate that Dr. Zhang or Dr. Budenz interfered with the Pennsylvania opportunity, and this claim against these two defendants will be dismissed.

### 6. Wrongful Discharge

Under North Carolina law, individuals are not employers and cannot be held liable for wrongful discharge. *See McAdams v. N.C. Dep't of Com., Div. of Emp. Sec.*, No. COA16-196, 2016 WL 7100566, at *4 (N.C. Ct. App. Dec. 6, 2016); *see also*

*Hilderbrand v. Pelham Transp. Corp.*, No. 20-CV-1020, 2021 WL 2681966, at *5 (M.D.N.C. June 30, 2021) (collecting cases). The motion to dismiss the wrongful discharge claim will be granted as to all defendants.

## V.    Conclusion

Dr. Rageh's Title VII and ADEA discrimination claims against UNC may proceed to the extent that they are based on discriminatory denial of training opportunities by Dr. Zhang, and his Title VII and ADEA retaliation claims against UNC may proceed to the extent that they are based on shortening or terminating his fellowship in retaliation for protected activity; those claims are otherwise dismissed. His claims for defamation and tortious interference with prospective economic advantage may proceed against Dr. Ulrich in his individual capacity but are otherwise dismissed. His claim for interference with contractual relations may proceed against Dr. Ulrich and Dr. Zhang in their individual capacities but are otherwise dismissed. The breach of contract, infliction of emotional distress, and wrongful discharge claims against all defendants are dismissed.

It is **ORDERED** that the defendants' motion to dismiss the complaint, Doc. 10, is **DENIED** as moot, and the defendants' motion to dismiss the amended complaint, Doc. 17, is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The following claims are **DISMISSED**:

   a. The Title VII and ADEA discrimination and retaliation claims against all individual defendants in their individual and official capacities;

b.  The Title VII and ADEA discrimination claims against UNC to the extent the claims are based on shortening or terminating Dr. Rageh's fellowship because of his age or national origin;

c.  The breach of contract, infliction of emotional distress, and wrongful discharge claims against all defendants;

d.  The defamation claim against UNC, Dr. Ulrich in his official capacity, and Dr. Zhang and Dr. Budenz in their individual and official capacities;

e.  The tortious interference with contractual relations claim against UNC, Dr. Ulrich and Dr. Zhang in their official capacity, and Dr. Budenz in his individual and official capacities;

f.  The tortious interference with prospective economic advantage claim against UNC, Dr. Ulrich in his official capacity, and Dr. Zhang and Dr. Budenz in their individual and official capacities.

g.  For clarity, all claims against Dr. Budenz are **DISMISSED**.

2.  The motion is otherwise **DENIED**.  The following claims may proceed:

a.  The Title VII and ADEA discrimination claims against UNC to the extent that they are based on the denial of training opportunities;

b.  The Title VII and ADEA retaliation claims against UNC to the extent that they are based on shortening or terminating Dr. Rageh's fellowship in retaliation for protected activity;

c.  The claims for defamation and tortious interference with prospective economic advantage against Dr. Ulrich in his individual capacity;

22

    d. The claim for interference with contractual relations against Dr. Ulrich

       and Dr. Zhang in their individual capacities.

This the 10th day of December, 2024.

 

_____

UNITED STATES DISTRICT JUDGE