IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM
Civil No. 1:24-CV-336

| | |
|---|---|
| Abdulrahman Rageh,<br><br>Plaintiff,<br><br>v.<br><br>University of North Carolina at Chapel Hill, Jan Niklas Ulrich, Alice Zhang, and Donald Budenz in their official capacities,<br><br>Defendants. | **DEFENDANTS' ANSWER TO AMENDED COMPLAINT AND DEFENDANT DR. YANG "ALICE" ZHANG'S COUNTERCLAIMS** |

NOW COME the University of North Carolina at Chapel Hill ("UNC-CH"), Dr. Jan Niklas Ulrich, and Dr. Yang "Alice" Zhang (collectively, "Defendants"), by and through the undersigned counsel, and respond to and answer the Amended Complaint of Abdulrahman Rageh ("Plaintiff") as follows:

## FIRST DEFENSE AND ANSWER

Without waiving any defenses or immunities asserted herein and specifically retaining the same, Defendants respond to the specifically numbered Paragraphs of Plaintiff's Amended Complaint as follows (Plaintiff's allegations and Defendants' responses are set forth below):

1

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action against Defendants, for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. §2000e-2], Age Discrimination in Employment Act ("ADEA") [29 U.S.C. § 621], Negligent Infliction of Emotional Distress ("NIED"), Defamation Per Se, Breach of Contract, Tortious Interference with Contractual Relations, Tortious Interference with Prospective Economic Advantage, and Wrongful Discharge in Violation of Public Policy.

**ANSWER:** It is admitted that the Amended Complaint speaks for itself as to the claims asserted therein (all of which are denied).  Except as admitted, this Paragraph is denied.

2.     Plaintiff is a male of Egyptian descent who began a highly competitive 24-month clinical Ophthalmology Fellowship with Defendant, UNC-Chapel Hill, in August 2022. Shortly after he started his Fellowship, Plaintiff began to experience discrimination from his supervising physician due to his national origin and age.

**ANSWER:** It is admitted, on information and belief, that Plaintiff is a male of Egyptian descent.  It is also admitted that in August 2022, Plaintiff began a Vitreoretinal Fellowship in UNC-CH's Department of Ophthalmology, which was anticipated to last twenty-four months.  Except as admitted, this

2

Paragraph is denied. Defendants expressly deny that Plaintiff experienced discrimination from his supervising physician due to his age and national origin.

3. Plaintiff made multiple verbal complaints to the Fellowship Program Director, but the discrimination continued. The supervising physician began to allege concerns regarding Plaintiff's skillset and patient safety. Based on information and belief, these concerns are not substantiated by hospital records.

**ANSWER:** It is admitted that shortly after Plaintiff started his fellowship, his supervising physician, Defendant Dr. Yang "Alice" Zhang, raised legitimate and serious concerns about Plaintiff's skillset and patient safety. It is further admitted that, throughout the Fall of 2022, Plaintiff verbally complained to the Fellowship Program Director, Defendant Dr. Jan Niklas Ulrich, about his perception of Dr. Zhang's treatment of him. Except as admitted, this Paragraph is denied. Defendants expressly deny that Plaintiff experienced discrimination during his time in the fellowship program.

4. Plaintiff eventually filed a formal complaint with the Program Director based on discrimination and more unsubstantiated complaints regarding Plaintiff's alleged deficiencies and patient concerns ensued from the supervising physician.

3

**ANSWER:** It is admitted that Plaintiff submitted a written complaint to Dr. Ulrich on or about December 19, 2022. Except as admitted, this Paragraph is denied.

5. Plaintiff was later told that his Fellowship would be cut short to approximately one year, and he would no longer be required to work with the same supervising physician. However, Defendants later terminated Plaintiff's employment after he filed a charge with the EEOC.

**ANSWER:** It is admitted that prior to Plaintiff's submission of his written complaint, Dr. Ulrich met with Plaintiff and informed him that his fellowship would end in June 2023, instead of June 2024, due to legitimate and serious concerns about Plaintiff's deficient skillset and failure to improve, despite multiple opportunities to do so. Except as admitted, this Paragraph is denied.

6. Since Plaintiff's termination, Defendants have continued to allege that Plaintiff was removed from the Fellowship due to patient safety concerns. This has damaged the Plaintiff's reputation and caused him to suffer emotionally, mentally, and financially.

**ANSWER:** It is admitted that Plaintiff resigned from his fellowship in March 2023. It is further admitted that Dr. Ulrich has submitted, at Plaintiff's request, forms to various medical licensure boards verifying Plaintiff's

4

fellowship and reiterating his legitimate and serious concerns about Plaintiff's skillset.  Except as admitted, this Paragraph is denied.

7.     Dr. Rageh timely filed an initial complaint on April 18, 2024.

**ANSWER:** It is admitted that Plaintiff's original complaint speaks for itself insofar as it identifies the date of filing.  Except as admitted, this Paragraph is denied.

8.     On July 15, 2024, Defendants filed a motion to dismiss.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII of the Civil Rights Act of 1964 and 29 U.S.C. § 621. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

**ANSWER:** The allegations of this Paragraph state legal conclusions that require no answer of Defendants, but to the extent that such allegations require an answer, they are denied.

10.    This Court has personal jurisdiction over Defendants, because it, at all times material, continuously conducted business in Orange County, North Carolina.

5

**ANSWER:** The allegations of this Paragraph state legal conclusions that require no answer of Defendants, but to the extent that such allegations require an answer, they are denied.

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district and all defendants reside in North Carolina, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the claim occurred in this district.

**ANSWER:** The allegations of this Paragraph state legal conclusions that require no answer of Defendants, but to the extent that such allegations require an answer, they are denied.

## CONDITIONS PRECEDENT

12. In December 2022, Dr. Rageh timely filed a charge, alleging discrimination based on age and national origin and retaliation, with the Equal Employment Opportunity Commission's ("EEOC") Raleigh District Office located at 434 Fayetteville Street, Suite 700, Raleigh, NC 27601. (EEOC Charge Number 433-2023-00862). (See Ex. 1).

**ANSWER:** It is admitted that Plaintiff filed a charge with the EEOC on April 24, 2023. It is further admitted that the EEOC charge is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

6

13. On January 19, 2024, the Raleigh District EEOC office issued a Notice of Right to Sue. The original Complaint was filed within 90 days of receipt of that notice. (See Ex. 2).

**ANSWER:** Admitted.

## PARTIES

14. Plaintiff, Abdulrahman Rageh resides in Springfield, Illinois, and was an employee at Defendant, UNC-Chapel Hill between August 2022 and March 2023. At all times relevant to this Complaint, Plaintiff was a North Carolina resident and citizen under the jurisdiction of this Court.

**ANSWER:** It is admitted that Plaintiff was employed as a Vitreoretinal Fellow at UNC-CH from August 2022 until March 2023, and it is admitted, on information and belief, that Plaintiff resided in North Carolina during that time. It is further admitted, on information and belief, that Plaintiff currently resides in Springfield, Illinois. Except as admitted, this Paragraph is denied.

15. At all times relevant to this Complaint, Defendant, UNC-Chapel Hill has been a non-profit state educational institution and research university existing under the laws of the State of North Carolina with its principal place of business at 103 South Building, Campus Box #9100, Chapel Hill, North Carolina 27599-9100. At all times relevant to this Complaint UNC-Chapel Hill did business in the State of North Carolina and was the employer of Dr. Rageh

within the meaning of the common law of the State of North Carolina. At all times relevant to this Complaint, UNC-Chapel Hill regularly employed more than 500 employees.

**ANSWER:** It is admitted that Defendant UNC-CH is a non-profit educational institution and research university organized under the laws of North Carolina; that it employs more than 500 employees; and that its principal place of business is in Chapel Hill, North Carolina. It is also admitted that Plaintiff was employed by UNC-CH from August 2022 to March 2023. Except as admitted, this Paragraph is denied.

16. Defendant Dr. Donald Budenz serves as the chair of the UNC Department of Ophthalmology and President of the Association of University Professors of Ophthalmology. The President has complete authority to manage the affairs and execute the policies of the UNC-Chapel Hill Association of University Professors of Ophthalmology Fellowship program. He is sued in his individual and official capacity.

**ANSWER:** It is admitted that all claims against Dr. Budenz were dismissed by order of this Court on December 10, 2024. D.E. 23. It is further admitted that Dr. Budenz serves as the Chair of UNC-CH's Department of Ophthalmology, and previously served as the President of the Association of

University Professors of Ophthalmology, a one-year role that ended in April 2024. Except as otherwise admitted, this Paragraph is denied.

17. Defendant Dr. Jan Niklas Ulrich is the Vitreoretinal Surgery Fellowship Program Director for Defendant UNC-Chapel Hill. He is sued in both his official and individual capacity.

**ANSWER:** It is admitted that Dr. Ulrich is the Vitreoretinal Surgery Fellowship Program Director at UNC-CH. It is also admitted that any official-capacity claims against Dr. Ulrich were dismissed by order of this Court on December 10, 2024 (D.E. 23). Except as admitted, this Paragraph is denied.

18. Defendant Alice Zhang is an Associate Professor of Ophthalmology and Residency Program Director for Defendant UNC-Chapel Hill. She was one of Dr. Rageh's supervising physicians during his Fellowship. She is sued in both her official and individual capacity.

**ANSWER:** It is admitted that Dr. Zhang is an Associate Professor of Ophthalmology and Residency Program Director for UNC-CH. It is also admitted that she was one of Plaintiff's supervising physicians for a period of time during his fellowship. It is further admitted that any official-capacity claims against Dr. Zhang were dismissed by order of this Court on December 10, 2024 (D.E. 23). Except as admitted, this Paragraph is denied.

19.     Collectively, UNC-Chapel Hill, Dr. Ulrich, Dr. Zhang, and Dr. Budenz are referred to as "Defendants."

**ANSWER:** It is admitted that the Amended Complaint speaks for itself as to its terminology.  It is also admitted that all claims against Dr. Budenz were dismissed by order of this Court on December 10, 2024.  Except as admitted, this Paragraph is denied.

## FACTUAL ALLEGATIONS

20.     Plaintiff, Dr. Rageh, is a 42-year-old man of Egyptian descent and practicing Muslim.

**ANSWER:** Admitted, on information and belief.

21.     Dr. Rageh is a trained Ophthalmologist who treated patients in Egyptian field hospitals during the Egyptian revolution between 2011 and 2015. He fled persecution and emigrated to the United States in 2015. He obtained asylum refugee status in 2018.

**ANSWER:** It is admitted, on information and belief, that Plaintiff trained as an ophthalmologist prior to beginning his fellowship at UNC-CH. Defendants lack sufficient information and knowledge to form a belief as to the truth of the remaining allegations in this Paragraph, and on that basis they are denied.

10

22.  Beginning in 2016, Dr. Rageh began multiple Externships and Observerships, followed by two, one-year clinical fellowships affiliated with Harvard University, and a one-year surgical fellowship at Duke University.

**ANSWER:** It is admitted, on information and belief, that prior to beginning his fellowship at UNC-CH, Plaintiff completed an ocular oncology fellowship at Duke University and a two-year medical retina fellowship at a Harvard affiliate institution in Boston.  Defendants lack sufficient information and knowledge to form a belief as to the truth of the remaining allegations in this Paragraph, and on that basis they are denied.  Except as admitted, this Paragraph is denied.

23.  Dr. Rageh is currently fully licensed without restrictions in over 12 states including Georgia, Virginia, Arizona, Montana, Minnesota, Connecticut, Illinois, Ohio, Iowa, and Tennessee.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis they are denied.

24.  No disciplinary action has ever been taken against Dr. Rageh in his capacity as a fully licensed physician.

**ANSWER:** Denied.

25. In an effort to gain valuable experience and obtain his surgical license, Dr. Rageh applied for a fellowship with the Association of University Professors of Ophthalmology.

**ANSWER:** It is admitted that Plaintiff applied for an ophthalmological vitreoretinal fellowship with UNC-CH. Defendants lack sufficient information and knowledge to form a belief as to the truth of Plaintiff's motivation for applying for a fellowship, and on that basis those allegations are denied. Except as admitted, this Paragraph is denied.

26. The Vitreoretinal Fellowship at the UNC-Chapel Hill identifies as an Association of University Professors of Ophthalmology Fellowship Compliance Committee ("AUPO-FCC") compliant medical and surgical fellowship. It is a highly competitive two-year program that accepts one applicant every 24 months.

**ANSWER:** Admitted.

27. The goal of the fellowship is to provide an advanced level of training in the diagnosis and management of medical and surgical disorders of the retina and vitreous. Fellows will acquire the necessary clinical skills for the treatment of patients with vitreoretinal diseases by initial evaluation and long-term follow-up of outpatients; pre, intra, and post-operative care of

12

patients and in-depth reading of subspecialty journals and texts as well as discussions and lectures.

**ANSWER:** It is admitted that the vitreoretinal fellowship at UNC-CH provides extensive training in all aspects of the diagnosis, clinical care, and surgical management of vitreoretinal disorders, with a goal to educate ophthalmologists to become ethical, competent, independent vitreoretinal surgeons. Except as admitted, this Paragraph is denied.

28. Dr. Rageh applied for Defendant's Vitreoretinal Fellowship because he saw it as a genuine opportunity to hone his craft.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of Plaintiff's motivation for applying for a fellowship, and on that basis the allegations in this Paragraph are denied.

29. On December 13, 2021, Defendant UNC-Chapel Hill extended Dr. Rageh an offer for its fellowship with a proposed effective date of August 1, 2022. (See Ex. 3).

**ANSWER:** It is admitted that on December 13, 2021, Dr. Budenz informed Plaintiff that he intended to recommend Plaintiff for an appointment as a Clinical Fellow in the Department of Ophthalmology, with an effective date of August 1, 2022. Except as admitted, this Paragraph is denied.

30.    Dr. Rageh accepted the offer on December 14, 2021, and began his fellowship in August 2022.

**ANSWER:** Admitted.

31.    Dr. Rageh passed up several opportunities to earn nearly a seven-figure salary prior to applying for Defendant's Fellowship.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on this basis this Paragraph is denied.

32.    The AUPO-FCC guidelines provide that all patient care services must be supervised by qualified faculty.

**ANSWER:** It is admitted that the AUPO-FCC's Program Requirements for Fellowship Education in Surgical Retina & Vitreous are contained in a written document that is the best evidence of its contents.  Except as admitted, this Paragraph is denied.

### Dr. Alice Zhang

33.    Dr. Rageh was sometimes supervised by attending physician, Dr. Alice Zhang.

**ANSWER:** Admitted.

34.    Shortly after the start of his fellowship, Dr. Ulrich, the Fellowship Program Director, began disclosing to Dr. Rageh that Dr. Zhang did not feel

comfortable sitting or standing next to him in the operating room because of his size and shape.

**ANSWER:** Denied

35. On multiple occasions during his fellowship, Dr. Rageh conveyed his belief to Dr. Ulrich that Dr. Zhang felt uncomfortable around him due to his age and national origin.

**ANSWER:** Denied.

36. On multiple occasions, Dr. Rageh told Dr. Ulrich that Dr. Zhang would routinely embarrass him in front of his colleagues.

**ANSWER:** It is admitted that Plaintiff conveyed to Dr. Ulrich his perception that he was embarrassed by Dr. Zhang's feedback. Except as admitted, this Paragraph is denied.

37. The behavior that Dr. Rageh complained of included Dr. Zhang shouting at him, mocking his accent, and openly criticizing him for mispronouncing her name.

**ANSWER:** It is admitted that during the November 10, 2022, meeting between Plaintiff, Dr. Ulrich, and Dr. Zhang, Dr. Zhang expressed that Plaintiff had not made an effort to learn how to pronounce her name. Except as admitted, this Paragraph is denied.

15

38. Dr. Zhang also showed preferential treatment to other residents who reported to Dr. Rageh and other UNC-Chapel Hill Fellows.

**ANSWER:** Denied.

39. For example, in training, Dr. Zhang would allow younger residents to perform more steps than she would allow Dr. Rageh, a Fellow, to perform.

**ANSWER:** It is admitted that Dr. Zhang supervised residents in performing surgical steps commensurate with their skill and experience. It is further admitted that Dr. Zhang supervised Plaintiff, a fellow, in performing surgical steps commensurate with his skill and experience. Except as admitted, this Paragraph is denied.

40. It was known by other members of the ophthalmology department that Dr. Zhang did not want to work with Dr. Rageh.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of what unidentified members of the ophthalmology department did or did not know. On this basis, the allegations in this Paragraph are denied.

41. At all relevant times of this Complaint, Dr. Rageh was older than 40 years of age, and Dr. Zhang was not.

**ANSWER:** Admitted, on information and belief.

42. Dr. Zhang also frequently changed her expectations for Dr. Rageh's Performance.

**ANSWER:** Denied.

43. Eventually, Dr. Zhang began complaining to Dr. Ulrich about Dr. Rageh's performance. Specifically, she voiced concerns regarding his skill and patient safety issues.

**ANSWER:** It is admitted that soon after Plaintiff began his fellowship Dr. Zhang raised legitimate and serious concerns about Plaintiff's skills and related patient safety issues to Dr. Ulrich.

44. Based on information and belief, Dr. Zhang's alleged concerns regarding Dr. Rageh's skill and patient safety are not substantiated by hospital records.

**ANSWER:** Denied.

45. UNC-Chapel Hill has a SAFE reporting system to identify errors in patient care.

**ANSWER:** It is admitted that UNC Health utilizes the SAFE reporting system as one method for identifying errors in patient care. Except as admitted, this Paragraph is denied.

46. The SAFE reporting system is designed to report errors and near misses and allows for reports to be submitted anonymously. (See Ex. 4)

**ANSWER:** It is admitted that employees are encouraged to submit SAFE reports for errors and near misses. It is further admitted that SAFE reports may be submitted anonymously. Except as admitted, this Paragraph is denied.

47. At no point during Dr. Rageh's tenure did he receive feedback or an inquiry regarding a SAFE report concerning his performance.

**ANSWER:** Denied.

48. Also, based on information and belief, Dr. Zhang also excluded Dr. Rageh from several internal discussions with her colleagues, in which she openly expressed concern about Dr. Rageh's purported skill-related and patient safety issues.

**ANSWER:** It is admitted that Dr. Zhang discussed her legitimate and serious concerns about Plaintiff's skills and related patient-safety issues with colleagues who shared her concerns. It is further admitted that she did not include Plaintiff in those conversations. Except as admitted, this Paragraph is denied.

49. Dr. Rageh maintained open and regular communication with Dr. Zhang.

**ANSWER:** It is admitted that Plaintiff and Dr. Zhang frequently communicated prior to November 2022, when Dr. Zhang ceased supervising Plaintiff directly. Except as admitted, this Paragraph is denied.

50. Dr. Zhang's text message exchanges with Dr. Rageh were devoid of criticism or mention of patient harm.

**ANSWER:** It is admitted that Dr. Zhang did not relay her legitimate and serious concerns about Plaintiff's skills or related patient-safety issues via text message. It is further admitted that Dr. Zhang chose different methods of communication to provide Plaintiff with feedback about his performance. Except as admitted, this Paragraph is denied.

51. During his tenure, Dr. Rageh made multiple verbal complaints to Dr. Ulrich about Dr. Zhang's discriminatory treatment of him.

**ANSWER:** It is admitted that, throughout the Fall of 2022, Plaintiff complained to Dr. Ulrich about his perception of Dr. Zhang's treatment of him. It is denied that Plaintiff complained to Dr. Ulrich about alleged discriminatory treatment prior to December 19, 2022. Except as admitted, this Paragraph is denied.

52. In October 2022, Dr. Zhang refused to continue working with Dr. Rageh.

**ANSWER:** It is admitted that after November 10, 2022, Dr. Zhang stopped supervising Plaintiff, and supervision of Plaintiff transitioned to Dr. Ulrich and Dr. Keirnan Willett. Except as admitted, this Paragraph is denied.

53. Dr. Rageh's other supervising physicians continued to work with him after Dr. Zhang stopped.

**ANSWER:** It is admitted that Dr. Ulrich and Dr. Willett took primary responsibility for supervising Plaintiff after November 10, 2022. Except as admitted, this Paragraph is denied.

54. On or about December 19, 2022, Dr. Rageh hand delivered a formal complaint to Dr. Ulrich complaining of discrimination by Dr. Zhang.

**ANSWER:** It is admitted that Plaintiff submitted a letter to Dr. Ulrich on or about December 19, 2022. The letter is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

55. Dr. Rageh's formal complaint threatened to escalate matters to multiple authorities including the dean's office, human resources, AUPO, and legal authorities.

**ANSWER:** It is admitted that the letter submitted to Dr. Ulrich on or about December 19, 2022, is a written document that is the best evidence of its content. Except as admitted, this Paragraph is denied.

56. Beginning in January 2023, UNC-Chapel Hill began an investigation into Dr. Rageh's claims of discrimination and retaliation.

**ANSWER:** It is admitted that Plaintiff submitted a complaint to UNC-CH's Equal Opportunity and Compliance ("EOC") office on December 25, 2022, alleging discrimination based on his age. It is further admitted that the EOC office initiated an investigation into Plaintiff's complaint.

57. During the investigation, Dr. Zhang mischaracterized an incident that allegedly occurred in August 2022 involving Dr. Rageh's initial examination of a patient in the clinic.

**ANSWER:** Denied

58. In September 2022 Dr. Zhang wrote in an email that Dr. Rageh accidentally misrepresented the age of a patient during the intake process at the clinic. However, Dr. Zhang told investigators that Dr. Rageh misrepresented a patient's age inside the operating room – which implies a much more serious infraction that could lead to patient harm.

**ANSWER:** It is admitted that in September 2022, Dr. Zhang sent an email to Dr. Ulrich outlining her concerns about Plaintiff's performance, which included an incident in which Plaintiff misrepresented the age of a patient. It is further admitted that the email is a written document that is the best evidence of its contents. It is also admitted that Dr. Zhang described this same

incident to investigators during the investigation of Plaintiff's report to UNC-CH's EOC office. Except as admitted, this Paragraph is denied.

## Dr. Jan Nicklas Ulrich

59. Dr. Ulrich is the Director of Dr. Rageh's Fellowship Program.

**ANSWER:** It is admitted that Dr. Ulrich is the Vitreoretinal Surgery Fellowship Program Director at UNC-CH. Except as admitted, this Paragraph is denied.

60. On August 19, 2022, just hours after Dr. Rageh submitted his formal complaint, Dr. Ulrich first alleged that Dr. Rageh's performance contained deficiencies and stressed the need for him to quickly improve if he wanted to continue his surgical retina fellowship successfully.

**ANSWER:** Denied.

61. Dr. Rageh had complained of discrimination to Dr. Ulrich multiple times since he started fellowship before formalizing his complaint on August 19th.

**ANSWER:** Denied.

62. Based on information and belief, after receiving multiple discrimination complaints from Dr. Rageh, Dr. Ulrich requested that the supervising physicians send information in support of his claims regarding Dr. Rageh's alleged poor performance.

**ANSWER:** Denied.

63.     On or about December 20, 2022, Dr. Ulrich sent an email to Dr. Rageh that purported to summarize their December 16, 2022 discussion.

**ANSWER:** It is admitted that Dr. Ulrich sent an email to Plaintiff on December 20, 2022.  It is further admitted that the email is a written document that is the best evidence of its contents.  Except as admitted, this Paragraph is denied.

64.     Dr. Ulrich's December 20, 2022 correspondence regarding Dr. Rageh's alleged deficiencies did not contain any generic or specific patient safety concerns.

**ANSWER:** It is admitted that the email is a written document that is the best evidence of its contents.  Except as admitted, this Paragraph is denied.

65.     On or about December 20, 2022, Dr. Ulrich asserted that he had multiple informal discussions with Dr. Rageh regarding his progress and alleged deficiencies since the beginning of his fellowship in August 2022.

**ANSWER:** It is admitted that in the December 20, 2022 email, Dr. Ulrich referenced multiple informal discussions with Plaintiff about his progress and deficiencies.  It is further admitted that the email is a written

document that is the best evidence of its contents.  Except as admitted, this Paragraph is denied.

66.    Dr. Rageh disputes Dr. Ulrich's December 20, 2022 assertion that they had discussions whether formal or informal regarding alleged deficiencies.

**ANSWER:** It is admitted that to the extent the Amended Complaint sets forth Plaintiff's factual disputes, the Amended Complaint is the best evidence of its contents.  Except as admitted, this Paragraph is denied.

67.    On December 20, 2022, Dr. Ulrich offered to allow Dr. Rageh to continue his Fellowship until June 2023 without requiring him to continue working with Dr. Zhang.

**ANSWER:** It is admitted that in the December 20, 2022 email, Dr. Ulrich summarized a December 16 meeting, in which it was conveyed to Plaintiff that his fellowship would end on June 30, 2023.  It is also admitted that the email conveyed the decision that Dr. Zhang would no longer participate in Plaintiff's training.  It is further admitted that the email is a written document that is the best evidence of its contents.  Except as admitted, this Paragraph is denied.

68.    Dr. Ulrich's December 20, 2022 correspondence states that if Dr. Rageh stayed through June 2023, Defendants would have allowed him to

continue fulfilling his responsibilities including taking retina and trauma calls, seeing patients in the clinic, and participating in lectures and conferences.

**ANSWER:** It is admitted that the email referenced is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

69. Dr. Ulrich's December 20, 2022 correspondence continues to state that he and Dr. Willett would continue to allow Dr. Rageh to participate in the operating room and teach him general principles of retina surgery.

**ANSWER:** It is admitted that the email referenced is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

70. Around late December 2022, after extending his offer to allow Dr. Rageh to continue his fellowship through June 2023, Dr. Ulrich learned that Dr. Rageh had filed a discrimination and retaliation charge with the EEOC.

**ANSWER:** Denied

71. In a January 2023 meeting with Dr. Rageh and Dr. Keirnan Willett, Dr. Ulrich stated the Defendants needed to terminate his contract due to his filing of the Equal Opportunity Compliance/Commission complaint.

**ANSWER:** It is admitted that during a January 2023 meeting, Dr. Ulrich told Plaintiff his fellowship would be terminated immediately, as a result of

25

additional patient-safety concerns, pending investigation into Plaintiff's complaint to UNC-CH's EOC office. It is expressly denied that Plaintiff was told that his fellowship would be terminated because of Plaintiff's complaint to UNC-CH's EOC office. Except as admitted, this Paragraph is denied.

72. During the January 2023 meeting, Dr. Ulrich told Dr. Rageh his termination was completely out of his hands due to the discrimination complaint he filed.

**ANSWER:** Denied.

73. Dr. Ulrich has informed employers, potential employers, and state medical licensing boards, in writing, that Dr. Rageh was relieved from seeing patients without supervision due to repeated patient safety concerns.

**ANSWER:** It is admitted that, when contacted at Plaintiff's initiative by potential employers and medical licensing boards for verification of Plaintiff's fellowship and qualifications, Dr. Ulrich relayed his legitimate and serious concerns about Plaintiff's skills and patient-safety incidents. Except as admitted, this Paragraph is denied.

74. On March 6, 2023, Dr. Rageh was offered an Ophthalmologist position at OCLI Vision at AIO in the Western Pennsylvania region.

**ANSWER:** Admitted, on information and belief.

26

75. After Dr. Rageh agreed and signed the offer, he was informed that he would not be given the position.

**ANSWER:** It is admitted, on information and belief, that the vision clinic referenced in Paragraph 74 ultimately decided not to proceed with offering Plaintiff an employment contract. Except as admitted, this Paragraph is denied.

76. Based on information and belief, Dr. Rageh was not provided the position based on Defendants' comments.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

77. Hospitals refuse to offer Dr. Rageh privileges and surgical privileges due to Defendants' continued allegations of patient safety concerns during his Fellowship.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

78. Dr. Rageh was denied his medical license in Kentucky due to Dr. Ulrich's allegations of patient harm.

27

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations are denied.

### Dr. Ulrich's Satisfaction with Dr. Rageh's Work

79. On or about September 9, 2022, days after Dr. Zhang had begun making disparaging marks about Dr. Rageh, Dr. Ulrich nominated Dr. Rageh for the Alcon wet lab in Texas the following month.

**ANSWER:** It is admitted that, just as Dr. Ulrich had done with previously fellows, Dr. Ulrich nominated Plaintiff to attend the Alcon wet lab in Texas as part of Plaintiff's fellowship training. Except as admitted, this Paragraph is denied.

80. The Alcon wet lab allows for training in the ophthalmic surgical environment.

**ANSWER:** Admitted.

81. In November 2022, Dr. Ulrich expressed satisfaction with Dr. Rageh's performance when he stated that a lecture Dr. Rageh recently delivered was great.

**ANSWER:** It is admitted that Dr. Ulrich provided Plaintiff with occasional positive feedback on his lecture performances, as appropriate. Except as admitted, this Paragraph is denied.

82. On December 20, 2022, Dr. Ulrich signed a Postgraduate Reference Letter("PRL") for the State of Missouri on Dr. Rageh's behalf.

**ANSWER:** It is admitted that, at Plaintiff's request, Dr. Ulrich signed a PRL for the State of Missouri on Plaintiff's behalf. It is further admitted that Dr. Ulrich cautioned Plaintiff that he may later need to amend or update the PRL in light of the ongoing conversations regarding the abbreviation of Plaintiff's fellowship. Except as admitted, this Paragraph is denied.

83. Dr. Ulrich indicated on the PRL that (1) Dr. Rageh was never subjected to any disciplinary or corrective action such as imposition of consultation requirements, suspension, termination, probation or remediation plans and (2) at the time of his departure from UNC-CH, Dr. Rageh had no actions instituted, in process, or pending against, him.

**ANSWER:** It is admitted that the PRL is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

84. Dr. Ulrich indicated on the PRL that he recommended Dr. Rageh for licensure to practice medicine and surgery without any reservation.

**ANSWER:** It is admitted that the PRL is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

85. Dr. Ulrich also indicated on the PRL that Dr. Rageh was on track to [*sic*]

**ANSWER:** Defendants lack sufficient information or knowledge to form a belief as to the truth of any purported allegations in this Paragraph, as such allegations are incomplete. On that basis, any purported allegations in this Paragraph are denied.

86. On December 22, 2022, Dr. Ulrich signed an Arizona Postgraduate Training Verification Form indicating that Dr. Rageh was not disciplined and/or placed under investigation or probation. Dr. Ulrich also indicated that Defendant's program was approved for postgraduate training by the Accreditation Counsel for Graduate Medical Examination Education ("ACGME"). ACGME requires Program directors ensure program compliance with sponsoring institution policies and procedures related to grievances and due process.

**ANSWER:** It is admitted that, at Plaintiff's request, Dr. Ulrich signed Arizona Postgraduate Training Verification Form on Plaintiff's behalf. It is further admitted that the form is a written document that is the best evidence of its contents. It is also admitted that Dr. Ulrich cautioned Plaintiff that he may later need to amend or update this form in light of the ongoing conversations regarding the abbreviation of Plaintiff's fellowship. Except as admitted, this Paragraph is denied.

87. Dr. Ulrich also affirmed that he would recommend Dr. Rageh for licensure to practice medicine and surgery without any reservation.

**ANSWER:** It is admitted that the form referenced in Paragraph 86 is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

### Defendants' Failure to Comply with AUPO-CC Guidelines

88. According to AUPO-CC guidelines, Fellows are to receive both formal feedback (every 6 months) and frequent informal feedback from faculty regarding their progress in training.

**ANSWER:** It is admitted that the AUPO-CC Program Requirements for Fellowship Education in Surgical Retina & Vitreous are contained in a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

89. The AUPO-CC guidelines require that Fellowship Program Director provide Fellows with grievance procedures and due process to address grievances in compliance with the Institutional Requirements (See Ex. 5 at 5.).

**ANSWER:** It is admitted that the AUPO-CC Program Requirements for Fellowship Education in Surgical Retina & Vitreous are contained in a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

31

90. Defendants did not provide Dr. Rageh with a grievance process or policy to follow, nor was he provided due process at any point during his removal from the Fellowship program.

**ANSWER:** The allegations of this Paragraph state legal conclusions that require no answer of Defendants, but to the extent that such allegations require an answer, they are denied.

91. Defendants also failed to follow any University due process procedures prior to removing Dr. Rageh from the fellowship or terminating his employment.

**ANSWER:** The allegations of this Paragraph state legal conclusions that require no answer of Defendants, but to the extent that such allegations require an answer, they are denied.

## Dr. Donald Budenz

92. On December 28, 2022, Dr. Rageh contacted AUPO-FCC regarding his Fellowship.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

93. On January 3, 2023, AUPO-FCC requested the name of his program and the name of his fellowship director.

32

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

94. On January 4, 2023, in response to AUPO-FCC's inquiry, Dr. Rageh identified the Vitreoretinal Surgical Fellowship at the University of North Carolina, and its director, Dr. Ulrich.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

95. AUPO-FCC never responded following Dr. Rageh's January 4th email.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

96. Dr. Budenz, the head of UNC's Department of Ophthalmology and President of the Association of University Professors of Ophthalmology never responded to Dr. Rageh's emails and pleas for assistance and due process following Dr. Ulrich's decision to remove him from the Fellowship.

33

**ANSWER:** It is admitted that, to the extent Plaintiff copied Dr. Budenz on emails that Plaintiff sent to many recipients, Dr. Budenz did not directly respond to such emails. Except as admitted, this Paragraph is denied.

97. As President of AUPO, Dr. Budenz and his organization also did not respond to Dr. Rageh's complaints regarding Dr. Zhang's actions.

**ANSWER:** It is admitted that, to the extent Plaintiff copied Dr. Budenz on emails that Plaintiff sent to many recipients, Dr. Budenz did not directly respond to such emails. Defendants lack sufficient information or knowledge to form a belief as to the truth of Plaintiff's allegations regarding other individuals' or entities' purported lack of response, and on this basis any such allegations are denied. Except as admitted, this Paragraph is denied.

98. Prior to his removal from the Fellowship, Dr. Rageh received no counseling, reprimands, or other correspondence regarding the alleged patient safety concerns.

**ANSWER:** Denied.

99. AUPO-FCC guidelines further provide that a fellowship program must demonstrate that it has an effective plan for assessing fellow performance through the program and for utilizing the result to improve fellow performance. The plan should include: (1) written semiannual evaluation that is communicated to each fellow in a timely manner and (2) the maintenance of a

34

record of evaluation for each fellow that is accessible to the fellow. The plan should include (i) a process involving use of assessment results to achieve progressive (ii) improvements in fellows' competence and performance, including the (iii) development of professional attitudes consistent with being a physician. (Id. at 11).

**ANSWER:** It is admitted that the AUPO-CC Program Requirements for Fellowship Education in Surgical Retina & Vitreous are contained in a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

100. At no time prior to his filing a formal complaint with Dr. Ulrich was Dr. Rageh informed of Dr. Zhang and others expressing concerns regarding his skills or patient safety.

**ANSWER:** Denied.

101. Following Dr. Rageh's termination, he applied for multiple positions as an ophthalmologist and he received multiple offer letters, including from OCLI Vision at AIO, for specific terms of employment. (See Ex. 6).

**ANSWER:** It is admitted, on information and belief, that Plaintiff applied for a position as an ophthalmologist with OCLI Vision at AIO. Defendants lack sufficient information and knowledge to form a belief as to the

35

truth of the remaining allegations in this Paragraph, and on that basis they are denied. Except as admitted, this Paragraph is denied.

102. Based on information and belief, Dr. Rageh's offers of employment were withdrawn following discussions or correspondence with Dr. Ulrich regarding unsubstantiated allegations of patient safety concerns.

**ANSWER:** Defendants lack sufficient information and knowledge to form a belief as to the truth of the allegations in this Paragraph, and on that basis the allegations in this Paragraph are denied.

## <u>CLAIMS FOR RELIEF</u>

### COUNT I – Unlawful Discrimination Due to National Origin in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

103. Plaintiff repeats and realleges paragraphs 1 – 102 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

104. Plaintiff is Egyptian, a member of a protected class.

**ANSWER:** Admitted, on information and belief.

105. Plaintiff was accepted into a two-year fellowship in Defendant UNC-Chapel Hill's Department of Ophthalmology.

**ANSWER:** Admitted

106.  Plaintiff was qualified for the position, and his performance was satisfactory.

**ANSWER:** Denied.

107.  Based on information and belief, Plaintiff's attending physician, Dr. Zhang, was uncomfortable working around Plaintiff due to his national origin.

**ANSWER:** Denied.

108.  Dr. Zhang refused to train or work with Plaintiff, and she informed Dr. Ulrich that she was uncomfortable around Plaintiff.

**ANSWER:** It is admitted that on November 10, 2022, Dr. Zhang informed Dr. Ulrich and Plaintiff that she felt uncomfortable working with Plaintiff because she was concerned that her patients would not be safe in his care.  It is further admitted that following November 10, 2022, Dr. Zhang did not work with Plaintiff in a supervisory capacity.  Except as admitted, this Paragraph is denied.

109.  Dr. Zhang publicly shouted at Plaintiff, mocked his accent, and made unsubstantiated complaints concerning his skillset and patient safety.

**ANSWER:** Denied.

110. Based on Dr. Zhang's complaints, Defendants removed Plaintiff from his fellowship less than 6 months after it began and eventually terminated his employment.

**ANSWER:** It is admitted that Plaintiff's fellowship was abbreviated to one year, ending in June 2023, based on legitimate and serious concerns about Plaintiff's skills and patient safety. It is further admitted that Plaintiff resigned from his fellowship in March 2023. Except as admitted, this Paragraph is denied.

111. Plaintiff was treated less favorably than members outside of his national origin/protected class who were subject to the same standards and engaged in the same conduct.

**ANSWER:** Denied.

112. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

**ANSWER:** Denied.

113. Defendant intentionally violated Plaintiff's federally protected rights with malice or reckless indifference, and as a result, is liable for punitive damages.

**ANSWER:** Denied.

114. Officers, directors, and/or managers of Defendant condoned the conduct and/or intentionally violated Plaintiff's rights with malice or reckless indifference, and as a result, is liable for punitive damages.

**ANSWER:** Denied.

## COUNT II – Unlawful Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

115. Plaintiff repeats and realleges paragraphs 1 – 114 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

116. Plaintiff is Egyptian, a member of a protected class.

**ANSWER:** Admitted, on information and belief.

117. Plaintiff engaged in protected activity by complaining of discrimination based on his national origin.

**ANSWER:** It is admitted that in his EEOC charge, filed April 24, 2023, Plaintiff alleged discrimination based on his national origin. Except as admitted, this Paragraph is denied.

118. Plaintiff suffered an adverse employment action of being removed from the fellowship early and eventually terminated from his employment.

**ANSWER:** It is admitted that Plaintiff's fellowship was abbreviated to one year, ending in June 2023, based on legitimate and serious concerns about

Plaintiff's skills and patient safety. It is further admitted that Plaintiff resigned from his fellowship in March 2023. Except as admitted, this Paragraph is denied.

119. After Plaintiff filed charges of discrimination and retaliation, Defendants also made unsubstantiated written claims to potential employers and medical boards regarding Plaintiff's skillset and alleged concerns regarding patient safety to others.

**ANSWER:** Denied.

120. Defendants knew these statements were false, or in the alternative, believing them to be true, lacked reasonable grounds for such belief, or made such statements with reckless disregard for whether they were true or false.

**ANSWER:** Denied.

121. A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions.

**ANSWER:** Denied.

122. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

**ANSWER:** Denied.

123. Officer, directors, and/or managers of Defendant condoned the conduct and/or intentionally violated Plaintiff's rights with malice or reckless indifference, and as a result, is liable for punitive damages.

**ANSWER:** Denied.

## COUNT III – Unlawful Discrimination in Violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621.

124. Plaintiff repeats and realleges paragraphs 1 – 123 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

125. Plaintiff is over 40, and a member of a protected class.

**ANSWER:** Admitted, on information and belief.

126. Plaintiff was accepted into a two-year fellowship in Defendant UNC-Chapel Hill's Department of Ophthalmology.

**ANSWER:** Admitted.

127. Plaintiff was qualified for the position and his performance was satisfactory.

**ANSWER:** Denied.

128. Plaintiff, a fellow, was provided fewer opportunities for training by Dr. Zhang than the younger residents who reported to him.

**ANSWER:** Denied.

129. Plaintiff's supervisor, Dr. Zhang, publicly shouted at him and questioned his skillset and patient safety in front of others.

**ANSWER:** Denied.

130. Plaintiff was treated less favorably than younger members outside of his protected class.

**ANSWER:** Denied.

131. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

**ANSWER:** Denied.

### COUNT IV– Unlawful Retaliation in Violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C.

132. Plaintiff repeats and realleges paragraphs 1 – 131 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

133. Plaintiff is a member of a protected class.

**ANSWER:** Admitted, on information and belief.

42

134. Plaintiff engaged in protected activity by complaining about age discrimination.

**ANSWER:** The allegations of this Paragraph state legal conclusions that require no answer of Defendants, but to the extent that such allegations require an answer, they are denied.

135. As a result of Plaintiff's protected activity, he suffered an adverse employment action of being removed from his fellowship and later terminated.

**ANSWER:** It is admitted that Plaintiff's fellowship was abbreviated to one year, ending in June 2023, based on legitimate and serious concerns about Plaintiff's skills and patient safety. It is further admitted that Plaintiff resigned from his fellowship in March 2023. Except as admitted, this Paragraph is denied.

136. After Plaintiff filed charges of discrimination and retaliation, Defendants also made unsubstantiated written claims to potential employers and medical boards regarding Plaintiff's skillset and concerns regarding patient safety to others.

**ANSWER:** Denied.

137. Defendants knew these statements were false, or in the alternative, believing them to be true, lacked reasonable grounds for such

belief, or made such statements with reckless disregard for whether they were true or false.

**ANSWER:** Denied.

138. A causal connection exists between Plaintiff's protected activity and the adverse employment action.

**ANSWER:** Denied.

139. Plaintiff suffered damages as a result of Defendant's unlawful retaliation.

**ANSWER:** Denied.

140. Defendants intentionally violated Plaintiff's rights under the ADEA with malice and/or reckless indifference and are liable for damages as a result.

**ANSWER:** Denied.

### COUNT V – Defamation Per Se

141. Plaintiff repeats and realleges paragraphs 1 – 140 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

142. Plaintiff is informed, believes, and therefore alleges that during the time period of August 2022 through July 2024, the Defendants knowingly made false statements about the Plaintiff.

**ANSWER:** Denied.

143. Defendants stated in writing to Plaintiff's employer, prospective employers, various Medical Boards, and others that Plaintiff was relieved from his fellowship because of patient safety concerns.

**ANSWER:** It is admitted that Dr. Ulrich has submitted, at Plaintiff's request, forms to various medical licensure boards verifying Plaintiff's fellowship and reiterating his legitimate and serious concerns about Plaintiff's skillset and related patient-safety issues. Except as admitted, this Paragraph is denied.

144. On September 13, 2023, Dr. Ulrich sent a letter to the Tennessee Health Licensure and Regulation Board stating that Dr. Rageh was relieved from seeing patients on January 9, 2023 due to repeated safety concerns.

**ANSWER:** It is admitted that Dr. Ulrich submitted a letter to the Tennessee Health Licensure and Regulation Board at Plaintiff's request. It is further admitted that the letter is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

145. On November 15, 2023, Dr. Ulrich sent a letter to the Massachusetts Board of Medical Licensure stating that Dr. Rageh was relieved from seeing patients on January 9, 2023 due to repeated safety concerns.

**ANSWER:** It is admitted that Dr. Ulrich submitted a letter to the Massachusetts Board of Medical Licensure at Plaintiff's request. It is further admitted that the letter is a written document that is the best evidence of its contents. Except as admitted, this Paragraph is denied.

146. Defendants knew these statements were false, or in the alternative, believing them to be true, lacked reasonable grounds for such belief, or made such statements with reckless disregard for whether they were true or false.

**ANSWER:** Denied.

147. Based on information and belief, officers, directors, and/or managers of Defendant condoned the conduct through inaction or reckless indifference.

**ANSWER:** Denied.

148. Defendants' conduct in making and publishing these statements to third persons constitute defamation per se in that the false statements prejudiced the Plaintiff in his reputation, trade, business, or means of livelihood.

**ANSWER:** Denied.

149. Defendants' conduct in making these defamatory statements was also undertaken out of spite, personal ill-will, and personal malice towards plaintiff, with the intention of damaging Plaintiff's personal and business reputation, and with the intention to injure Plaintiff by depriving him of the respect, confidence, and esteem to Plaintiff's profession as an ophthalmologist, and with the intention to prejudice Plaintiff in his reputation, trade, business, or means of livelihood.

**ANSWER:** Denied.

150. As a proximate and direct result of Defendants' defamatory statements, the Plaintiff was terminated from multiple jobs, and has sustained a loss of income and other financial injury, and in addition, has suffered severe injury to his person, including great emotional stress, physical injury, humiliation, embarrassment, anger, grief, pain and suffering, and damages to his reputation, and Plaintiff is entitled to compensatory damages in an amount to be determined by the jury at trial.

**ANSWER:** Denied.

151. As a further result of the malicious statements made by the Defendants, Plaintiff has suffered extreme embarrassment, public

humiliation, and mental distress and damages to his name and professional reputation.

**ANSWER:** Denied.

152. As a result of the defamation by the Defendants, and the resulting injuries caused to the Plaintiff thereby, the Plaintiff has suffered damages in an amount exceeding $25,000.

**ANSWER:** Denied.

153. Because these statements were willful and wanton conduct, made with malice, and with willful intent to injure him, the Plaintiff is entitled to punitive damages against the Defendants.

**ANSWER:** Denied.

<strong>COUNT VI – Breach of Contract</strong>

154. Plaintiff repeats and realleges paragraphs 1 – 153 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

155. At the time of Plaintiff's remove from the Fellowship and termination, Plaintiff had a written contract of employment with Defendant UNC-Chapel Hill for a two-year fellowship.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

156. Plaintiff alleges that Defendants breached and violated its contract with Plaintiff when it terminated the contract prior to the end of its two-year term.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

157. As an AUPO-FCC compliant program, the Defendant's fellowship and hence, the employment contract, incorporated the AUPO-FCC guidelines.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

158. In violation of the AUPO-FCC guidelines, Defendants terminated Plaintiff's employment without a grievance process or due process.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

159. Dr. Ulrich failed in his duty to abide by the employment agreement when he failed to provide a grievance process or policy or allow due process for Dr. Rageh as required by the AUPO-FCC guidelines.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

160. Dr. Budenz failed in his duties as President of the Association of University Professors of Ophthalmology when he ignored Dr. Rageh's requests for help and allowed UNC-Chapel Hill and Dr. Ulrich to violate the AUPO-FCC guidelines.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

161. Plaintiff suffered injury or damages due to Defendants' actions and the breach of his employment contract.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

### COUNT VII – Negligent Infliction of Emotional Distress

162. Plaintiff repeats and realleges paragraphs 1 – 161 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

163. On or about January 13, 2023, Plaintiff informed Defendants that he was suffering from stress, anxiety, and depression due to the harassment, discrimination, and retaliation he experienced during his Fellowship.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

164. After receiving notice of Plaintiff's anxiety and depression, Defendants made unsubstantiated written claims to potential employers and medical boards regarding Plaintiff's skillset and concerns regarding patient safety to others.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

165. Defendants engaged in conduct, the defamation of Plaintiff, injuring his reputation at his place of work and with prospective employers, is a series of bad acts which go beyond all normal civil interchanges.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

166. Defendant's conduct was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

167. Defendant's conduct did in fact cause the Plaintiff severe emotional distress.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

168. As a result of Defendant's conduct, the Plaintiff has suffered severe injury to his person, including great emotional distress, humiliation, embarrassment, anger, grief, pain and suffering, and damage to his reputation.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

169. As a result of the intentional infliction of emotional distress by the Defendants, the Plaintiff's reputation and business has been irreparably harmed.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

170. Because Defendants' tortious actions were willful and wanton conduct, made with malice, and with willful intent to injure him, the Plaintiff is entitled to punitive damages against the Defendants.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

### COUNT VIII – Interference with Contractual Relations

171. Plaintiff repeats and realleges paragraphs 1 – 170 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

172. At the time when Defendants' defamatory comments were made to Plaintiff's employer, a valid employment contract was in place.

**ANSWER:** Denied. It is expressly denied that Defendants made any defamatory comments about Plaintiff.

173. Defendants were aware that the Plaintiff had signed a contract with his employer.

**ANSWER:** It is admitted that Plaintiff accepted an offer to work as a Clinical Fellow in UNC-CH's Department of Ophthalmology, with an effective date of August 1, 2022. It is further admitted that Defendants had knowledge of Plaintiff's appointment to this position. Except as admitted, this Paragraph is denied.

174. Defendants made their slanderous comments with the intent of injuring the Plaintiff, interfering with the Plaintiff's employment contract, and causing him to lose his job and hence his Fellowship.

**ANSWER:** Denied. It is expressly denied that Defendants made any slanderous comments about Plaintiff.

175. Upon information and belief, the Defendants' reasons for making the slanderous and false comments regarding the Plaintiff were malice, ill-will, and personal hatred of the Plaintiff.

**ANSWER:** Denied. It is expressly denied that Defendants made any slanderous or false comments about Plaintiff.

176. As a direct and proximate result of the slanderous statements and interference with the employment contract of the Plaintiff, the Plaintiff was terminated from his fellowship and has suffered loss of income and other financial injury. In addition, he has suffered injury to his person, including great emotional distress, humiliation, embarrassment, anger, grief, pain and suffering, and damage to his reputation.

**ANSWER:** Denied. It is expressly denied that Defendants made any slanderous comments about Plaintiff.

177. As a result of the interference with contractual relations by the Defendants, the Plaintiff's reputation and business has been irreparably harmed.

**ANSWER:** Denied. It is expressly denied that Defendants interfered with Plaintiff's contractual relations.

178. Because Defendants' tortious actions were willful and wanton conduct, made with malice and with willful intent to injure him, the Plaintiff is entitled to punitive damages against the Defendants.

**ANSWER:** Denied.

### COUNT IX – Tortious Interference with Prospective Economic Advantage

179. Plaintiff repeats and realleges paragraphs 1 – 178 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

180. A prospective employment contract existed between Dr. Rageh and OCLI Vision at AIO.

**ANSWER:** Denied.

181. Defendants held a reasonable expectation that Dr. Rageh would contract with OCLI Vision at AIO.

**ANSWER:** Denied.

182. Based on information and belief, Defendants, by and through the acts of Dr. Ulrich, intentionally induced OCLI Vision at AIO not to contract with Dr. Rageh.

**ANSWER:** Denied.

183. By doing so, Defendants acted with malice and without justification.

**ANSWER:** Denied.

184. But for the interference of Defendants, OCLI Vision at AIO would have entered a contract with Dr. Rageh.

**ANSWER:** Denied.

185. Defendants' actions resulted in actual damages to Dr. Rageh which will be proven at trial.

56

**ANSWER:** Denied.

### COUNT X – Wrongful Discharge in Violation of Public Policy

186. Plaintiff repeats and realleges paragraphs 1-185 as if fully set forth herein.

**ANSWER:** The foregoing paragraphs are re-alleged and incorporated by reference.

187. Dr. Rageh was employed by Defendants.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

188. Dr. Rageh belongs to a protected category and engaged in protected activity.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

189. Defendants terminated Dr. Rageh's employment as a result of his protected activity.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

190. There was a public policy applicable to the circumstances of the termination (N.C.G.S. 126-17).

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

191. Dr. Rageh was protected by this public policy, and [*sic*]

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

192. Defendants' motivation in terminating Dr. Rageh violated this public policy.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

193. Dr. Rageh suffered damages as a result of Defendants' actions.

**ANSWER:** This claim was dismissed by the Court on December 10, 2023 (D.E. 23). A response is not therefore required. To the extent a response is deemed required, this Paragraph is denied.

## **GENERAL DENIAL**

Each and every allegation contained in Plaintiff's Amended Complaint, including Plaintiff's Prayer for Relief, not herein specifically admitted, is denied.

## SECOND DEFENSE

Defendants did not discriminate against Plaintiff on the basis of age, national origin, or any other protected class.

## THIRD DEFENSE

At the time the decision was made to abbreviate and/or terminate Plaintiff's fellowship, Plaintiff's performance was not satisfactory.

## FOURTH DEFENSE

Plaintiff was not treated less favorably, with respect to training opportunities, than any similarly situated employees outside of his protected class.

## FIFTH DEFENSE

Decisions to abbreviate and/or subsequently terminate Plaintiff's fellowship were based legitimate, non-discriminatory reasons and were not based on any protected status.

## SIXTH DEFENSE

Defendants did not engage in retaliatory conduct.

## SEVENTH DEFENSE

Plaintiff did not engage in protected activity under Title VII of the Civil Rights Act of 1964.

## EIGHTH DEFENSE

There was no causal connection between any alleged protected activity under either Title VII or the Age Discrimination and Employment Act and the abbreviation and/or termination of Plaintiff's fellowship.

## NINTH DEFENSE

Any statements made by Defendants regarding Plaintiff's skillset or other concerns regarding patient safety were substantially true.

## TENTH DEFENSE

Defendants are entitled to a qualified privilege for any statements regarding Plaintiff's skillset or other concerns regarding patient safety.

## ELEVENTH DEFENSE

Defendants were justified in making any statements regarding Plaintiff's skillset or other concerns regarding patient safety.

## TWELFTH DEFENSE

Plaintiff is not entitled to recover any damages from Defendants.

## THIRTEENTH DEFENSE

Defendants assert mitigation of damages as a defense to all applicable claims for damages asserted in the Amended Complaint.

## FOURTEENTH DEFENSE

To the extent that Plaintiff is seeking punitive damages, Plaintiff's claim for punitive damages is barred in whole or in part by the doctrine of sovereign immunity and should therefore be dismissed.

## FIFTEENTH DEFENSE

Defendants reserve the right to amend their Answer and plead additional affirmative defenses at a later time if such defenses are determined to exist through discovery and are appropriate based on information then available.

## SIXTEENTH DEFENSE

Defendants do not waive and expressly reserve any and all defenses that may presently be available to them, or that later may become apparent, and further reserve the right to supplement and amend their defenses and answer to assert additional defenses that may later become known to them, including during discovery.

## COUNTERCLAIMS OF DR. YANG "ALICE" ZHANG

### FACTS

1. Yang "Alice" Zhang ("Dr. Zhang") is an Associate Professor of Ophthalmology and the Residency Program Director in the University of North Carolina at Chapel Hill's Department of Ophthalmology ("UNC

Ophthalmology").

2.     In August of 2022, Abdulrahman Rageh ("Dr. Rageh") began a fellowship with the Vitreoretinal Fellowship Program at UNC Ophthalmology.

3.     Dr. Zhang worked directly with Dr. Rageh, as one of his supervising Ophthalmologists, during Dr. Rageh's fellowship with UNC Ophthalmology.

4.     Shortly after Dr. Rageh started his fellowship, Dr. Zhang raised legitimate and serious concerns about Dr. Rageh's skillset and patient safety.

5.     Dr. Rageh resigned his fellowship on or about March 20, 2023 ("Date of Termination"), though multiple conversations and/or meetings occurred prior to the Date of Termination to discuss supervising physicians' concerns about Dr. Rageh's deficient skillset and failure to improve despite multiple opportunities to do so.

6.     On multiple occasions since March 1, 2023, Dr. Rageh has harassed Dr. Zhang with electronic mail messages, which serve no legal purpose and are intended only to terrorize Dr. Zhang.

7.     On or about March 2, 2023, Dr. Rageh emailed numerous individuals affiliated with UNC Ophthalmology, to include Dr. Zhang, to report that he felt "threatened" and otherwise appearing to be upset that he had lost access to his email prior to the Date of Termination ("March 2, 2023 Email").

In the March 2, 2023 Email, Dr. Rageh stated, "I keep receiving bullets on my mailbox. I have already reported that to you before. Now, I have three bullets!!" A photograph of three (3) bullets was attached to the March 2, 2023 Email.

8. The March 2, 2023 Email led to a Security Alert Communication being issued by UNC Hospitals and Police Department concerning Dr. Rageh.

9. On or about March 21, 2023, the day after his termination was effective, Dr. Rageh sent a threatening email to Dr. J. Niklas Ulrich, MD, Director of UNC Surgical Vitreoretinal Fellowship Program, on which Dr. Zhang was carbon copied ("March 21, 2023 Email"). The March 21, 2023 Email contained multiple threats made by Dr. Rageh, to include: "I wish you see such damage in your beloved ones!"; "I hope your family suffers the same way my family did!", and "I wish the worst things ever to happen to you and your criminal teammate!" This "criminal teammate" referenced Dr. Zhang.

10. Fearing for her safety following her receipt of the March 21, 2023 Email, Dr. Zhang reached out to the University about providing an escort to/from the building.

11. The March 21, 2023 Email led to a second to a Security Alert Communication being issued by UNC Hospitals and Police Department concerning Dr. Rageh.

12. Dr. Rageh sent additional emails to UNC Ophthalmology staff, to

include Dr. Zhang, between June 9, 2023, and August 28, 2023, several of which referenced Dr. Zhang by name, and many of which contain threats.

13. On or about July 2, 2023, Dr. Rageh sent an email which reads in part, "My frequent emails and warnings are very very serious and I have nothing to lose after UNC destroyed my dream and caused me serious mental, social, and career problems! I am unable to sleep or think! I am still getting nightmares! I can not recover from the anxiety or the depression. I am losing control over myself! I will take my own revenge if nobody cares! Nobody can blame me then! I have nothing more to lose and I do not care much about my future anymore!" and "I swear on my life, I will get my revenge ASAP!"

14. On or about August 28, 2023, Dr. Rageh once again emailed UNC Ophthalmology staff, to include Dr. Zhang, this time, providing a screenshot of a headline from the Associated Press, titled, "Faculty member fatally shot in University of North Carolina building," without any other context in that email.

15. These aforementioned emails from Dr. Rageh, led to the third and fourth Security Alert Communications being issued by UNC Hospitals and Police Department concerning Dr. Rageh.

16. Dr. Rageh's email communications caused Dr. Zhang severe mental suffering and distress, to include loss of productivity, difficulty

sleeping, inability to concentrate, difficulty managing anxiety, and intense fear of being injured and/or killed at her place of employment, and justifiably and reasonably caused Dr. Zhang to seek professional counseling, which is ongoing to the present date.

17. In addition to the severe emotional distress experienced by Dr. Zhang personally as described herein, Dr. Zhang has incurred loss of work income due to requiring significant amount of time off of work due to Dr. Rageh's conduct. Moreover, Dr. Zhang is also a researcher, teacher/mentor to medical students and residents, and a leader in education in her department. Any speaking engagements or attendance at conferences requires additional safety measures concerning the possible attendance of Dr. Rageh.

18. Because Dr. Rageh's conduct placed Dr. Zhang in reasonable fear for her own safety, the safety of her immediate family, and the safety of her close personal associates at UNC Ophthalmology, Dr. Zhang sought and obtained a No-Contact Order for Stalking in the District Court of Orange County, North Carolina against Dr. Rageh, Orange County file number 23CV001049-670 ("No-Contact Order").

19. Per the No-Contact Order, entered on November 6, 2023, the Court ordered, in relevant part, that Dr. Rageh shall cease stalking and harassing Dr. Zhang, that Dr. Rageh "not contact the plaintiff by telephone, written

communication, or electronic means."

20. Despite the No-Contact Order and in direct violation of the No-Contact Order, on March 4, 2024, Dr. Rageh sent an email to Joan W. Miller, MD, and knowingly carbon-copied Dr. Zhang and numerous other individuals affiliated with UNC Ophthalmology and Harvard. This email references Dr. Zhang by name numerous times throughout and in it, Dr. Rageh threatens, "I will never give up despite the risk I'm taking."

21. On June 6, 2024, Dr. Zhang filed a Motion and Order to Show Cause for Dr. Rageh's failure to comply with the No-Contact Order ("Motion to Show Cause") in 23CV001049-670.

22. On October 8, 2024, in the Court's Contempt Order ("Contempt Order"), the Court found that Dr. Rageh willfully failed to comply with the No-Contact Order and was therefore in criminal contempt (Orange County file number 24CR005849-670).

23. On October 9, 2024, Dr. Rageh, by and through counsel, filed a notice of appeal to Superior Court in 24CR005849-670.

24. Dr. Rageh's appeal remains pending before the Superior Court.

**FIRST CAUSE OF ACTION**
**(Intentional or Reckless Infliction of Severe Emotional Distress)**

25. The foregoing paragraphs are incorporated by reference and realleged as if set forth fully herein.

26. Dr. Rageh's conduct towards Dr. Zhang as described herein was extreme and outrageous and exceeded all bounds usually tolerated by decent society.

27. Dr. Rageh intended to cause and/or was recklessly indifferent to the likelihood that his conduct would cause Dr. Zhang severe emotional distress.

28. Dr. Rageh's conduct did in fact cause severe emotional distress to Dr. Zhang.

29. As a direct and proximate consequence of Dr. Rageh's conduct, Dr. Zhang has suffered compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

30. Dr. Zhang is entitled to have and recover of Dr. Rageh in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

31. Dr. Rageh's conduct toward Dr. Zhang was outrageous, willful and wanton and egregious and should result in an award of punitive damages against Dr. Rageh in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## FIRST ALTERNATIVE CAUSE OF ACTION
### (Negligent Infliction of Severe Emotional Distress)

32. The foregoing paragraphs are incorporated by reference and realleged as if set forth fully herein.

33. Dr. Rageh negligently engaged in the conduct towards Dr. Zhang as described herein.

34. It was reasonably foreseeable that Dr. Rageh's conduct towards Dr. Zhang would cause Dr. Zhang severe emotional distress.

35. Dr. Rageh's conduct did in fact cause severe emotional distress to Dr. Zhang.

36. As a direct and proximate consequence of Dr. Rageh's conduct, Dr. Zhang has suffered compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

37. Dr. Zhang is entitled to have and recover of Dr. Rageh in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

38. Dr. Rageh's conduct toward Dr. Zhang was outrageous, willful and wanton and egregious and should result in an award of punitive damages against Dr. Rageh in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**WHEREFORE**, having asserted the above-noted defenses and immunities, and having responded to the specifically numbered allegations of Plaintiff's Amended Complaint, Defendants pray the Court as follows:

1. That Plaintiff's Complaint and all claims therein be dismissed with prejudice;

2. That Plaintiff have and recover nothing from Defendants in this action;

3. That the Court find in favor of Dr. Zhang and against Dr. Rageh on all of Dr. Zhang's counterclaims;

4. That the Court award compensatory damages to Dr. Zhang and against Dr. Rageh in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

5. That the Court award punitive damages to Dr. Zhang and against Dr. Rageh in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

6. That costs of this action, including reasonable attorney's fees, be taxed to Plaintiff as allowed by law;

7. For such other and further relief as the Court deems just and proper; and

8. For a trial by jury of all issues of fact herein.

This the 7th day of January, 2025.

JEFF JACKSON
ATTORNEY GENERAL

/s/ Lindsay Vance Smith
Lindsay Vance Smith
Special Deputy Attorney General
NC State Bar No. 48085
lsmith@ncdoj.gov
NC Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919.716.6065
Fax: 919.716.6764
*Attorney for Defendants*


/s/ Gregory S. Connor
Gregory S. Connor
NC State Bar No.:  22445
gc@connorlaw.com
Connor Law Group
5511 Capital Center Dr., Ste. 180
Raleigh, NC  27606
Telephone: (919) 237-9220
Facsimile: (919) 237-9221
*Attorney for Yang "Alice" Zhang*

70

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **ANSWER TO AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Plaintiff's counsel, Kirton M. Madison (kmadison@madlawpllc.com) and Yang "Alice" Zhang's counsel, Gregory S. Connor (gc@connorlaw.com).

This 7th day of January 2025.

/s/ Lindsay Vance Smith
Lindsay Vance Smith