**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**DURHAM**

| | | |
|---|---|---|
| Abdulrahman Rageh, | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No: 1:24-cv-336** |
| | ) | |
| v. | ) | |
| | ) | **SECOND AMENDED** |
| | ) | **COMPLAINT** |
| University of North Carolina at Chapel Hill; | ) | |
| Jan Niklas Ulrich, and Alice Zhang, | ) | |
| and Donald Budenz in their official capacities, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

Formatted: Indent: Left: 3.58", First line: 0.42"

## INTRODUCTION

Plaintiff, Abdulrahman Rageh ("Plaintiff" or "Dr. Rageh"), by and through counsel undersigned, brings this Complaint against Defendants University of North Carolina at Chapel Hill ("Defendant" or "UNC Capel Hill"); and Dr. Jan Niklas Ulrich ("Dr. Ulrich"), and Dr. Alice Zhang ("Dr. Zhang"), and Dr. Donald Budenz ("Dr. Budenz") in their individual and official capacities, and alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action against Defendants UNC, for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. §2000e-2], Section 1981 of the Civil Rights Act of 1866 ("Section 1981") [42 U.S.C. § 1981], Age Discrimination in Employment Act ("ADEA") [29 U.S.C. § 621], and 42 U.S.C. § 1983. Plaintiff brings this

action against Defendants Dr. Ulrich and Dr. Zhang for Intentional ~~Negligent~~ Infliction of Emotional Distress ("~~NIED~~IIED"), ~~Defamation Per Se, Breach of Contract,and~~ Tortious Interference with Contractual Relations~~.~~. Plaintiff brings this action against Defendant Dr. Ulrich for Defamation Per Se and Tortious Interference with Prospective Economic Advantage~~, and Wrongful Discharge in Violation of Public Policy~~.

2.      Plaintiff is a male of Egyptian descent who began a highly competitive 24-month clinical Ophthalmology Fellowship with Defendant, UNC~~ Chapel Hill~~, in August 2022. Shortly after he started his Fellowship, Plaintiff began to experience discrimination from his supervising physician due to his ~~national origin~~race and age.

3.      ~~Plaintiff made multiple verbal complaints to the Fellowship Program Director, but the discrimination continued. The supervising physician began to allege concerns regarding Plaintiff's skillset and patient safety. Based on information and belief, these concerns are not substantiated by hospital records~~The plaintiff made multiple verbal complaints to the Fellowship Program Director, but the discrimination continued. The supervising physician began to allege concerns regarding the Plaintiff's skillset and patient safety. Based on information and belief, hospital records do not substantiate these concerns.

4.      Plaintiff eventually filed a formal complaint with the Program Director based on discrimination, and more unsubstantiated complaints regarding Plaintiff's alleged deficiencies and patient concerns ensued from the supervising physician.

5.      Plaintiff was later told that his Fellowship would be cut short to approximately one year, and he would no longer be required to work with the same

2

supervising physician. However, ~~Defendants~~ UNC later terminated Plaintiff's employment after he filed a charge with the EEOC.

6.      Since Plaintiff's termination, Defendants have continued to allege that Plaintiff was removed from the Fellowship due to patient safety concerns. This has damaged the Plaintiff's reputation and caused him to suffer emotionally, mentally, and financially.

7.      Dr. Rageh timely filed an initial complaint on April 18, 2024.

8.      On July 15, 2024, Defendants filed a motion to dismiss.

9.      Dr. Rageh filed his response to the Defendants' motion to dismiss on October 16, 2024.

~~8.~~10.  On December 12, 2024, this Court issued an order granting in part and denying in part Defendants' motion.

**JURISDICTION AND VENUE**

~~9.~~11.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII of the Civil Rights Act of 1964 and 29 U.S.C. § 621, 42 U.S.C. §1981, and 42 U.S.C. §1983. This court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

~~10.~~12.  This Court has personal jurisdiction over Defendants, because it, at all times material, continuously conducted business in Orange County, North Carolina.

~~11.~~13.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant~~s~~ reside~~s~~ in this district, and all defendants reside in North Carolina, and 28

3

U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the claim occurred in this district.

## CONDITIONS PRECEDENT

~~12.~~14. In December 2022, Dr. Rageh timely filed a charge, alleging discrimination based on age and national origin and retaliation, with the Equal Employment Opportunity Commission's ("EEOC") Raleigh District Office located at 434 Fayetteville Street, Suite 700, Raleigh, NC 27601. (EEOC Charge Number 433-2023-00862). (See ~~Ex. 1~~DE 14-2).

~~13.~~15. On January 19, 2024, the Raleigh District EEOC office issued a Notice of Right to Sue. The original Complaint was filed within 90 days of receipt of that notice. (See ~~Ex. 2~~DE 14-3).

## PARTIES

~~14.~~16. Plaintiff, Abdulrahman Rageh resides in Springfield, Illinois, and was an employee at Defendant, UNC ~~Chapel Hill~~, between August 2022 and March 2023. At all times relevant to this Complaint, Plaintiff was a North Carolina resident and citizen under the jurisdiction of this Court.

~~15.~~17. At all times relevant to this Complaint, Defendant, UNC ~~Chapel Hill~~ has been a non-profit state educational institution and research university existing under the laws of the State of North Carolina with its principal place of business at 103 South Building, Campus Box #9100, Chapel Hill, North Carolina 27599-9100. At all times relevant to this Complaint, UNC ~~Chapel Hill~~ did business in the State of North Carolina and was the employer of Dr. Rageh within the meaning of the common law of the State of

4

North Carolina. At all times relevant to this Complaint, UNC-Chapel Hill regularly employed more than 500 employees.

~~16.    Defendant Dr. Donald Budenz serves as the chair of the UNC Department of Ophthalmology and President of the Association of University Professors of Ophthalmology. The President has complete authority to manage the affairs and execute the policies of the UNC Chapel Hill Association of University Professors of Ophthalmology Fellowship program. He is sued in his individual and official capacity.~~

~~17.~~18. Defendant Dr. Jan Niklas Ulrich is the Vitreoretinal Surgery Fellowship Program Director for Defendant UNC ~~Chapel Hill~~. He is sued in ~~both~~ his ~~official and~~ individual capacity.

~~18.~~19. Defendant Alice Zhang is an Associate Professor of Ophthalmology and Residency Program Director for Defendant UNC ~~Chapel Hill~~. She was one of Dr. Rageh's supervising physicians during his Fellowship. She is sued in ~~both~~ her ~~official and~~ individual capacity.

~~19.~~20. Collectively, UNC ~~Chapel Hill~~, Dr. Ulrich, and ~~Chapel Hill~~ Dr. Zhang~~, and Dr. Budenz~~ are referred to as "Defendants."

## FACTUAL ALLEGATIONS

~~20.~~21.  Plaintiff, Dr. Rageh, is a 42-year-old man of Egyptian descent, mixed race, and practicing Muslim.

~~21.~~22. Dr. Rageh is a trained Ophthalmologist who treated patients in Egyptian field hospitals during the Egyptian revolution between 2011 and 2015. He fled persecution and emigrated to the United States in 2015. He obtained refugee asylum ~~refugee~~ status in 2018.

5

~~22.~~23. Beginning in 2016, Dr. Rageh began multiple Externships and Observerships, followed by two~~,~~ one-year clinical fellowships affiliated with Harvard University~~,~~ and a one-year surgical fellowship at Duke University.

~~23.~~24. Dr. Rageh is currently fully licensed without restrictions in over 12 states including Georgia, Virginia, Arizona, Montana, Minnesota, Connecticut, Illinois, Ohio, Iowa, and Tennessee.

~~24.~~25. No disciplinary action has ever been taken against Dr. Rageh in his capacity as a fully licensed physician.

~~25.~~26. In an effort to gain valuable experience and obtain his surgical license, Dr. Rageh applied for a fellowship with the Association of University Professors of Ophthalmology.

~~26.~~27. The Vitreoretinal Fellowship at the UNC ~~Chapel Hill~~ is ~~identifies~~ identified as an Association of University Professors of Ophthalmology Fellowship Compliance Committee ("AUPO-FCC") compliant medical and surgical fellowship. It is a highly competitive two-year program that accepts one applicant every 24 months.

~~27.~~28. The goal of the fellowship is to provide an advanced level of training in ~~the diagnosis and management of~~diagnosing and managing medical and surgical disorders of the retina and vitreous. Fellows will acquire the necessary clinical skills for ~~the treatment of~~treating patients with vitreoretinal diseases by initial evaluation and long-term follow-up of outpatients~~;~~, pre, intra, and post-operative care of patients ~~and~~, in-depth reading of subspecialty journals and texts, ~~as well as~~and discussions and lectures.

6

28.29. Dr. Rageh applied for Defendant's Vitreoretinal  Fellowship because he saw it as a genuine opportunity to hone his craft.

29.30. On December 13, 2021, Defendant UNC Chapel Hill extended Dr. Rageh an offer for its fellowship with a proposed effective date of August 1, 2022. (See Ex. 3DE 14-4).

30.31. Dr. Rageh accepted the offer on December 14, 2021, and began his fellowship in August 2022.

31.32. Dr. Rageh passed up several opportunities to earn nearly a seven-figure salary prior tobefore applying for Defendant's Fellowship.

32.33. The AUPO-FCC guidelines provide that all patient care services must be supervised by qualified faculty.

**Dr. Alice Zhang**

33.34. Dr. Rageh was sometimes supervised by attending physician, Dr. Alice Zhang.

34.35. Shortly after the start of his fellowship, Dr. Ulrich, the Fellowship Program Director, began disclosing totold Dr. Rageh that Dr. Zhang did not feel comfortablewas uncomfortable sitting or standing next tobeside him in the operating room because of his size and shape.

35.36. On multiple occasions during his fellowship, Dr. Rageh conveyed his belief totold Dr. Ulrich his belief that Dr. Zhang felt uncomfortable around him due to his age and national origin.

7

36.37. On multiple occasions, Dr. Rageh told Dr. Ulrich that Dr. Zhang would routinely embarrass him in front of his colleagues.

37.38. The behavior that Dr. Rageh complained of included Dr. Zhang shouting at him, mocking his accent, and openly criticizing him for mispronouncing her name.

38.39. Dr. Zhang also showed preferential treatment to other residents who reported to Dr. Rageh and other UNC Chapel Hill Fellows.

39.40. For example, in training, Dr. Zhang would allow younger residents to perform more steps than she would allow Dr. Rageh, a Fellow, to perform.

40.41. It was known by other members of the ophthalmology department Other members of the ophthalmology department knew that Dr. Zhang did not want to work with Dr. Rageh.

41.42. At all relevant times of this Complaint, Dr. Rageh was older than 40 years of age, and Dr. Zhang was not.

42.43. Dr. Zhang also frequently changed her expectations for Dr. Rageh's performance.

43.44. Eventually, Dr. Zhang began complaining to Dr. Ulrich about Dr. Rageh's performance. Specifically, she voiced concerns regarding his skill and patient safety issues.

44.45. Based on information and belief, Dr. Zhang's alleged concerns regarding Dr. Rageh's skill and patient safety are not substantiated by hospital records hospital records do not substantiate Dr. Zhang's alleged concerns regarding Dr. Rageh's skill and patient safety.

45.46. UNC Chapel Hill has a SAFE reporting system to identify errors in patient care.

8

~~46.~~47. The SAFE reporting system is designed to report errors and near misses and allows ~~for~~ reports to be submitted anonymously. (See ~~Ex. 4~~DE 14-5)

~~47.~~48. At no point during Dr. Rageh's tenure did he receive feedback or an inquiry regarding a SAFE report concerning his performance.

~~48.~~49. ~~Also, based~~Based on information and belief, Dr. Zhang also excluded Dr. Rageh from several internal discussions with her colleagues, in which she openly expressed concern about Dr. Rageh's purported skill-related and patient safety issues.

~~49.~~50. Dr. Rageh maintained open and regular communication with Dr. Zhang.

~~50.~~51. Dr. Zhang's text message exchanges with Dr. Rageh were devoid of criticism or mention of patient harm.

~~51.~~52. During his tenure, Dr. Rageh ~~made multiple verbal complaints~~repeatedly complained to Dr. Ulrich about Dr. Zhang's discriminatory treatment of him.

~~52.~~53. In October 2022, Dr. Zhang refused to continue working with Dr. Rageh.

~~53.~~54. Dr. Rageh's other supervising physicians continued to work with him after Dr. Zhang stopped.

~~54.~~55. On or about December 19, 2022, Dr. Rageh ~~hand delivered~~hand-delivered a formal complaint to Dr. Ulrich~~,~~ complaining of ~~discrimination by~~ Dr. Zhang~~'s~~ discrimination.

~~55.~~56. Dr. Rageh's formal complaint threatened to escalate matters to multiple authorities~~,~~ including the dean's office, human resources, AUPO, and legal authorities.

~~56.~~57. Beginning in January 2023, UNC~~-Chapel Hill~~ began ~~an investigation into~~investigating Dr. Rageh's ~~claims of~~ discrimination and retaliation claims.

9

57.58. During the investigation, Dr. Zhang mischaracterized an incident that allegedly occurred in August 2022 involving Dr. Rageh's initial examination of a patient in the clinic.

58.59. In September 2022 ~~Dr. Zhang wrote in an email that Dr. Rageh accidentally misrepresented the age of a patient during the intake process at the clinic. However, Dr. Zhang told investigators that Dr. Rageh misrepresented a patient's age inside the operating room~~, <u>Dr. Zhang wrote in an email that Dr. Rageh accidentally misrepresented a patient's age during the clinic's intake process. However, Dr. Zhang told investigators that Dr. Rageh misrepresented a patient's age inside the operating room,</u> which implies a much more serious infraction that could lead to patient harm.

**Dr. Jan Nicklas Ulrich**

59.60. Dr. Ulrich is the Director of Dr. Rageh's Fellowship Program.

60.61. On August 19, 2022, just hours after Dr. Rageh submitted his formal complaint, Dr. Ulrich first alleged that Dr. Rageh's performance contained deficiencies and stressed ~~the need for him~~<u>his need</u> to quickly improve if he wanted to continue his surgical retina fellowship successfully.

61.62. <u>Since starting his fellowship,</u> Dr. Rageh ~~had~~ complained of discrimination to Dr. Ulrich multiple times ~~since he started fellowship~~ before formalizing his complaint on August 19th.

62.63. Based on information and belief, after receiving multiple discrimination complaints from Dr. Rageh, Dr. Ulrich requested that the supervising physicians send

10

information ~~in support of~~supporting his claims regarding Dr. Rageh's alleged poor performance.

~~63.~~64. On or about December 20, 2022, Dr. Ulrich sent an email to Dr. Rageh ~~that purported to summarize their December 16, 2022~~purporting to summarize their December 16, 2022, discussion.

~~64.~~65. Dr. Ulrich's December 20, 2022, correspondence regarding Dr. Rageh's alleged deficiencies ~~did not contain any~~contained no generic or specific patient safety concerns.

~~65.~~66. On or about December 20, 2022, Dr. Ulrich asserted that he had multiple informal discussions with Dr. Rageh regarding his progress and alleged deficiencies since the beginning of his fellowship in August 2022.

~~66.~~67. Dr. Rageh disputes Dr. Ulrich's assertion on December 20, 2022, ~~assertion~~ that they had discussions, ~~whether~~ formal or informal, regarding alleged deficiencies.

~~67.~~68. On December 20, 2022, Dr. Ulrich offered to allow Dr. Rageh to continue his Fellowship until June 2023 without requiring him to continue working with Dr. Zhang.

~~68.~~69. Dr. Ulrich's December 20, 2022, correspondence states that if Dr. Rageh ~~stayed through June 2023, Defendants would have allowed him to continue fulfilling his responsibilities~~had stayed through June 2023, the Defendants would have allowed him to continue fulfilling his responsibilities, including taking retina and trauma calls, seeing patients in the clinic, and participating in lectures and conferences.

69.70. Dr. Ulrich's December 20, 2022 correspondence continues to statestates that he and Dr. Willett would continue to allow Dr. Rageh to participate in the operating room and teach him general principles of retina surgery.

70.71. Around late December 2022, after extending his offer to allow Dr. Rageh to continue his fellowship through June 2023, Dr. Ulrich learned that Dr. Rageh had filed a discrimination and retaliation charge with the EEOC.

71.72. In a January 2023 meeting with Dr. Rageh and Dr. Keirnan Willett, Dr. Ulrich stated the Defendants needed to terminate his contract due to his filing of the Equal Opportunity Compliance/Commission complaint.

72.73. During the January 2023 meeting, Dr. Ulrich told Dr. Rageh his termination was completely out of his hands due to the discrimination complaint he filed.

73.74. Dr. Ulrich has informed employers, potential employers, and state medical licensing boards, in writing, that Dr. Rageh was relieved from seeing patients without supervision due to repeated patient safety concerns.

74.75. On March 6, 2023, Dr. Rageh was offered an Ophthalmologist position at OCLI Vision at AIO in the Western Pennsylvania region.

75.76. After Dr. Rageh agreed and signed the offer, he was informed that he would not be given the position.

76.77. Based on information and belief, Dr. Rageh was not provided the position based on Defendants' comments.

77.78. Hospitals refuse to offer Dr. Rageh privileges and surgical privileges due to Defendants' continued allegations of patient safety concerns during his Fellowship.

12

78.79. Dr. Rageh was denied his medical license in Kentucky due to Dr. Ulrich's allegations of patient harm.

**Dr. Ulrich's Satisfaction with Dr. Rageh's Work**

79.80. On or about September 9, 2022, days after Dr. Zhang had begun making disparaging marks about Dr. Rageh, Dr. Ulrich nominated Dr. Rageh for the Alcon wet lab in Texas the following month.

80.81. The Alcon wet lab allows for training in the ophthalmic surgical environment.

81.82. In November 2022, Dr. Ulrich expressed satisfaction with Dr. Rageh's performance when he stated by stating that a lecture Dr. Rageh recently delivered his recent lecture was great.

82.83. On December 20, 2022, Dr. Ulrich signed a Postgraduate Reference Letter ("PRL") for the State of Missouri on Dr. Rageh's behalf.

83.84. Dr. Ulrich indicated on the PRL that (1) Dr. Rageh was never subjected to any disciplinary or corrective action such as imposition of consultation requirements, suspension, termination, probation or remediation plans and (2) at the time of his departure from UNC–CH, Dr. Rageh had no actions instituted, in process, or pending against, him.

84.85. Dr. Ulrich indicated on the PRL that he recommended Dr. Rageh for licensure to practice medicine and surgery without any reservation.

85.86. Dr. Ulrich also indicated on the PRL that Dr. Rageh was on track to

86.87. On December 22, 2022, Dr. Ulrich signed an Arizona Postgraduate Training Verification Form indicating that Dr. Rageh was not disciplined and/or placed under

13

investigation or probation. ~~Dr. Ulrich also indicated that Defendant's program was approved for postgraduate training by the Accreditation Counsel for Graduate Medical Examination Education ("ACGME"). ACGME requires Program directors ensure program compliance with sponsoring institution policies and procedures related to grievances and due process.~~

~~87~~ 88. Dr. Ulrich also affirmed that he would recommend Dr. Rageh for licensure to practice medicine and surgery without any reservation.

**Defendants' Failure to Comply with AUPO-CC Guidelines**

~~88~~ 89. According to AUPO-CC guidelines, Fellows are to receive both formal feedback (every 6 months) and frequent informal feedback from faculty regarding their progress in training.

~~89~~ 90. The AUPO-CC guidelines require that Fellowship Program Director provide Fellows with grievance procedures and due process to address grievances in compliance with the Institutional Requirements (See ~~Ex. 5~~DE 14-6 at 5.).

~~90~~ 91. Defendants did not provide Dr. Rageh with a grievance process or policy to follow, nor ~~was he provided~~did they give him due process at any point during his removal from the Fellowship program.

~~91~~ 92. Defendants also failed to follow any University due process procedures prior to removing Dr. Rageh from the fellowship or terminating his employment.

~~Dr. Donald Budenz~~**Lack of Due Process**

~~92~~ 93. On December 28, 2022, Dr. Rageh contacted AUPO-FCC regarding his Fellowship.

14

93.94. On January 3, 2023, AUPO-FCC requested the name of his program and the name of his fellowship director.

94.95. On January 4, 2023, in response to AUPO-FCC's inquiry, Dr. Rageh identified the Vitreoretinal Surgical Fellowship at the University of North Carolina, and its director, Dr. Ulrich.

95.96. AUPO-FCC never responded following Dr. Rageh's January 4th email.

96.97. At that time, Dr. Budenz, the head of UNC's Department of Ophthalmology and President of the Association of University Professors of Ophthalmology, never responded to Dr. Rageh's emails and pleas for assistance and due process following Dr. Ulrich's decision to remove him from the Fellowship.

97.    As President of AUPO, Dr. Budenz and his organization also did not respond to Dr. Rageh's complaints regarding Dr. Zhang's actions.

98.    Prior to Before his removal from the Fellowship, Dr. Rageh received –no counseling, reprimands, or other correspondence regarding the alleged patient safety concerns.

99.    AUPO-FCC guidelines further provide that a fellowship program must demonstrate that it has an effective plan for assessing fellow performance through the program and for an effective plan for assessing fellow performance through the program and utilizing the result to improve fellow performance. The plan should include: (1) a written semiannual evaluation that is communicated to each fellow in a timely manner, and (2) the maintenance of a record of evaluation for each fellow that is accessible to the fellow. The plan should include (i) a process involving the use of assessment results to

15

achieve progressive (ii) improvements in fellows' competence and performance, including the (iii) development of professional attitudes consistent with being a physician. (Id. at 11).

100. At no time ~~prior to~~before ~~his~~ filing a formal complaint with Dr. Ulrich was Dr. Rageh informed of Dr. Zhang and others expressing concerns regarding his skills or patient safety.

101. Following Dr. Rageh's termination, he applied for multiple positions as an ophthalmologist and ~~he~~ received multiple offer letters, including from OCLI Vision at AIO, for specific terms of employment. (See ~~Ex. 6~~DE 14-7).

102. Based on information and belief, Dr. Rageh's offers of employment were withdrawn following discussions or correspondence with Dr. Ulrich regarding unsubstantiated allegations of patient safety concerns.

103. Dr, Ulrich and Dr. Zhang's actions cause Dr. Rageh severe mental suffering and distress, including loss of productivity, difficulty sleeping, inability to concentrate, difficulty managing anxiety, and justifiably and reasonably caused Dr. Rageh to seek professional counseling.

~~102.~~104. Dr. Rageh was diagnosed with adjustment disorder with mixed anxiety and depressed mood after his removal from the fellowship.

**CLAIMS FOR RELIEF**

**COUNT I – Unlawful Discrimination Due to National Origin in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.***
**(Dr. Rageh against Defendant UNC)**

~~103.~~105.     Plaintiff repeats and realleges he preceding tparagraphs ~~1 – 102~~ as if fully set forth herein.

~~104.~~106.     Plaintiff is Egyptian, a member of a protected class.

~~105.~~107.     Plaintiff was accepted into a two-year fellowship in Defendant UNC-Chapel Hill's Department of Ophthalmology.

~~106.~~108.     Plaintiff was qualified for the position, and his performance was satisfactory.

~~107.~~109.     Based on information and belief, Plaintiff's attending physician, Dr. Zhang, was uncomfortable working around Plaintiff due to his national origin.

~~108.~~110.     Dr. Zhang refused to train or work with Plaintiff, and ~~she~~ informed Dr. Ulrich that she was uncomfortable around ~~Plaintiff~~him.

~~109.~~111.     Dr. Zhang publicly shouted at Plaintiff, mocked his accent, and made unsubstantiated complaints concerning his skillset and patient safety.

~~110.~~112.     Based on Dr. Zhang's complaints, Defendant~~s~~ UNC removed Plaintiff from his fellowship less than 6 months after it began and eventually terminated his employment.

~~111.~~113.     Plaintiff was treated less favorably than members outside of his national origin/protected class who were subject to the same standards and engaged in the same conduct.

~~112.~~114.     Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

17

113.115.    Defendant UNC intentionally violated Plaintiff's federally protected rights with malice or reckless indifference, and as a result, is liable for punitive damages.

114.116.    Officers, directors, and/or managers of Defendant condoned the conduct and/or intentionally violated Plaintiff's rights with malice or reckless indifference, and as a result, is are liable for punitive damages.

**COUNT II – Unlawful Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.***
**(Dr. Rageh against Defendant UNC)**

115.117.    Plaintiff repeats and realleges the preceding paragraphs 1—114 as if fully set forth herein.

116.118.    Plaintiff is Egyptian, a member of a protected class.

117.119.    Plaintiff engaged in protected activity by complaining of discrimination based on his national origin.

118.120.    Plaintiff suffered an adverse employment action of being removed from the fellowship early and eventually terminated from his employment.

119.121.    After Plaintiff filed charges of discrimination and retaliation, Defendants UNC also made unsubstantiated written claims to potential employers and medical boards regarding Plaintiff's skillset and alleged concerns regarding patient safety to others.

120.122.    Defendants UNC knew these statements were false, or in the alternative, believing them to be true, lacked reasonable grounds for such belief, or made such statements with reckless disregard for whether they were true or false.

18

121.123.  A causal connection exists between Plaintiff's protected activity and Defendant's adverse employment actions.

122.124.  Plaintiff suffered damages as a result of Defendant's UNC's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

123.125.  Officer, directors, and/or managers of Defendant UNC condoned the conduct and/or intentionally violated Plaintiff's rights with malice or reckless indifference, and as a result, is liable for punitive damages.

**COUNT III – Unlawful Discrimination in Violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621.**
**(Dr. Rageh against Defendant UNC)**

124.126.  Plaintiff repeats and realleges the preceding paragraphs 1   123 as if fully set forth herein.

125.127.  Plaintiff is over 40, and a member of a protected class.

126.128.  Plaintiff was accepted into a two-year fellowship in Defendant UNC–Chapel Hill's Department of Ophthalmology.

127.129.  Plaintiff was qualified for the position, and his performance was satisfactory.

128.130.  Plaintiff, a fellow, was provided fewer opportunities for training by Dr. Zhang than the younger residents who reported to him.

129.131.  Plaintiff's supervisor, Dr. Zhang, publicly shouted at him and questioned his skillset and patient safety in front of others.

19

~~130.~~132.    Plaintiff was treated less favorably than younger members outside of his protected class.

~~131.~~133.    Plaintiff suffered damages ~~as a result of~~due to Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

**COUNT IV– Unlawful Retaliation in Violation of the Age Discrimination in Employment Act (ADEA) 29 U.S.C.**
**(Dr. Rageh against Defendant UNC)**

~~132.~~134.    Plaintiff repeats and realleges the preceding paragraphs ~~1 – 131~~ as if fully set forth herein.

~~133.~~135.    Plaintiff is a member of a protected class.

~~134.~~136.    Plaintiff engaged in protected activity by complaining about age discrimination.

~~135.~~137.    As a result of Plaintiff's protected activity, he suffered an adverse employment action of being removed from his fellowship early and later terminated.

~~136.~~138.    After Plaintiff filed charges of discrimination and retaliation, Defendants also made unsubstantiated written claims to potential employers and medical boards regarding Plaintiff's skillset and concerns regarding patient safety to others.

~~137.~~139.    Defendants knew these statements were false, or ~~in the~~ alternatively, believing them to be true, lacked reasonable grounds for such belief, or made such statements with reckless disregard for whether they were true or false.

~~138.~~140.    A causal connection exists between Plaintiff's protected activity and the adverse employment action.

20

139.141.　　Plaintiff suffered damages as a result of Defendant's unlawful retaliation.

140.142.　　Defendants intentionally violated Plaintiff's rights under the ADEA with malice and/or reckless indifference and are liable for damages as a result.

**COUNT V – Defamation Per Se**
**(Dr. Rageh against Defendant Dr. Ulrich in his individual capacity)**

141.143.　　Plaintiff repeats and realleges the preceding paragraphs 1—140 as if fully set forth herein.

142.144.　　Plaintiff is informed, believes, and therefore alleges that during the time period offrom August 2022 through July 2024, the Defendants knowingly made false statements about the Plaintiff.

143.145.　　Defendants Dr. Ulrich stated in writing to Plaintiff's employer, prospective employers, various Medical Boards, and others that Plaintiff was relieved from his fellowship because of patient safety concerns.

144.146.　　On September 13, 2023, Dr. Ulrich sent a letter to the Tennessee Health Licensure and Regulation Board stating that Dr. Rageh was relieved from seeing patients on January 9, 2023 due to repeated safety concerns.

145.147.　　On November 15, 2023, Dr. Ulrich sent a letter to the Massachusetts Board of Medical Licensure stating that Dr. Rageh was relieved from seeing patients on January 9, 2023, due to repeated safety concerns.

146.148.    Defendants Dr. Ulrich knew these statements were false, or in the alternative, believing them to be true, he lacked reasonable grounds for such belief, or made such statements with reckless disregard for whether they were true or false.

147.149.    Based on information and belief, officers, directors, and/or managers of Defendant UNC condoned the conduct through inaction or reckless indifference.

148.150.    Defendants' Dr. Ulrich's conduct in making and publishing these statements to third persons constitute defamation per se in that the false statements prejudiced the Plaintiff in his reputation, trade, business, or means of livelihood.

149.151.    Defendants' Dr. Ulrich's conduct in making these defamatory statements was also undertaken out of spite, personal ill-will, and personal malice towards plaintiff, with the intention of damaging Plaintiff's personal and business reputation, and with the intention to injure Plaintiff by depriving him of the respect, confidence, and esteem to Plaintiff's profession as an ophthalmologist, and with the intention to prejudice Plaintiff in his reputation, trade, business, or means of livelihood.

150.152.    As a proximate and direct result of Defendants' defamatory statements, the Plaintiff was terminated from multiple jobs, and has sustained a loss of income and other financial injury, and in addition, has suffered severe injury to his person, including great emotional stress, physical injury, humiliation, embarrassment, anger, grief, pain and suffering, and damages to his reputation, and Plaintiff is entitled to compensatory damages in an amount to be determined by the jury at trial.

~~151.~~153.    As a further result of the malicious statements made by ~~the Defendants~~Dr. Ulrich, Plaintiff has suffered extreme embarrassment, public humiliation, ~~and~~ mental distress. and damages to his name and professional reputation.

~~152.~~154.    As a result of the defamation by ~~the Defendants~~Dr. Ulrich, and the resulting injuries caused to the Plaintiff thereby, the Plaintiff has suffered damages in an amount ~~exceeding $25,000~~in excess of $75,000.

~~153.~~155.    Because these statements were willful and wanton conduct, made with malice, and with willful intent to injure him, the Plaintiff is entitled to punitive damages against the Defendants.

**COUNT VI – ~~Breach of Contract~~Intentional Infliction of Severe Emotional Distress**

~~154.~~156.    Plaintiff repeats and realleges the preceding paragraphs ~~1 – 153~~ as if fully set forth herein.

~~155.~~157.    ~~At the time of Plaintiff's remove from the Fellowship and termination, Plaintiff had a written contract of employment with Defendant UNC-Chapel Hill for a two-year fellowship~~Dr. Ulrich and Dr. Zhang's conduct towards Dr. Rageh as described herein was extreme and outrageous and exceeded all bounds usually tolerated by decent society.

~~156.~~158.    ~~Plaintiff alleges that Defendants breached and violated its contract with Plaintiff when it terminated the contract prior to the end of its two-year term~~Dr. Ulrich and Dr. Zhang intended to cause and/or were recklessly indifferent to the likelihood that their conduct would cause Dr. Rageh severe emotional distress.

~~157.~~159.    ~~As an AUPO-FCC compliant program, the Defendant's fellowship and hence, the employment contract, incorporated the AUPO-FCC guidelines~~Dr. Ulrich

23

and Dr. Zhang's conduct was intended and did in fact cause Dr. Rageh severe emotional distress..

158.160.     ~~In violation of the AUPO FCC guidelines, Defendants terminated Plaintiff's employment without a grievance process or due process~~As a direct, proximate, and foreseeable consequence of Dr. Ulrich and Dr. Zhang's conduct, Dr. Rageh has suffered lost income and other fringe benefits, damage to reputation, emotional distress, mental distress and anxiety, depression, embarrassment, humiliation, and other compensatory damages.

159.161.     ~~Dr. Ulrich failed in his duty to abide by the employment agreement when he failed to provide a grievance process or policy or allow due process for Dr. Rageh as required by the AUPO FCC guidelines~~Dr. Rageh suffered severe emotional distress because of the above-alleged tortious conduct and now meets the criteria for diagnosable conditions under the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) because of Dr. Ulrich and Dr. Zhang's conduct.

160.162.     ~~Dr. Budenz failed in his duties as President of the Association of University Professors of Ophthalmology when he ignored Dr. Rageh's requests for help and allowed UNC Chapel Hill and Dr. Ulrich to violate the AUPO FCC guidelines~~Dr. Ulrich and Dr. Zhang's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Dr. Rageh's rights. Dr. Rageh is entitled to recover punitive damages as a result of Dr. Ulrich and Dr. Zhang's conduct.

~~161.     Plaintiff suffered injury or damages due to Defendants' actions and the breach of his employment contract.~~

24

**COUNT VII –** ~~Negligent Infliction of Emotional Distress~~**Interference with**

**Contractual Relations**

**(Dr. Rageh against Dr. Ulrich and Dr. Zhang in their individual capacities.**

~~162.~~163.        Plaintiff repeats and realleges the preceding paragraphs ~~1 – 161~~ as if
fully set forth herein.

~~163.~~164.        ~~On or about January 13, 2023, Plaintiff informed Defendants that he
was suffering from stress, anxiety, and depression due to the harassment, discrimination,
and retaliation he experienced during his Fellowship.~~At the time when Dr. Ulrich and Dr.
Zhang's defamatory comments were made to Plaintiff's employer, a valid employment
contract was in place.

~~164.~~165.        ~~After receiving notice of Plaintiff's anxiety and depression,
Defendants made unsubstantiated written claims to potential employers and medical boards
regarding Plaintiff's skillset and concerns regarding patient safety to others.~~Dr. Ulrich and
Dr. Zhang knew the Plaintiff had signed a contract with his employer, UNC.

~~165.~~166.        ~~Defendants engaged in conduct, the defamation of Plaintiff, injuring
his reputation at his place of work and with prospective employers, is a series of bad acts
which go beyond all normal civil interchanges.~~Dr. Ulrich and Dr. Zhang made their
slanderous comments with the intent of injuring the Plaintiff, interfering with the Plaintiff's
employment contract, and causing him to lose his job and hence his Fellowship.

~~166.~~167.        ~~Defendant's conduct was reasonably foreseeable that such conduct
would cause Plaintiff severe emotional distress.~~Upon information and belief, Dr. Ulrich

and Dr. Zhang's reasons for making the slanderous and false comments regarding the Plaintiff were malice, ill-will, and personal hatred of the Plaintiff.

167.168. Defendant's conduct did in fact cause the Plaintiff severe emotional distress.As a direct and proximate result of the slanderous statements and interference with the Plaintiff's employment contract, the Plaintiff's fellowship was shortened and eventually terminated.

168.169. As a result of Defendant's conduct, the Plaintiff has suffered severe injury to his person, including great emotional distress, humiliation, embarrassment, anger, grief, pain and suffering, and damage to his reputation.Plaintiff has suffered the loss of income and other financial injury as a result.

169.170. As a result of the intentional infliction of emotional distress by the Defendants, the Plaintiff's reputation and business has been irreparably harmed.In addition, he has suffered injury to his person, including great emotional distress, humiliation, embarssment, anger, grief, pain, and suffering, and damage to his reputation.

171. Because Defendants' tortious actions were willful and wanton conduct, made with malice, and with willful intent to injure him, the Plaintiff is entitled to punitive damages against the Defendants.As a result of the interference with contractual relations by Dr. Ulrich and Dr. Zhang, the Plaintiff's reputation and business have been irreparably harmed.

170.172. Because Dr. Ulrich and Dr. Zhang's tortious actions were willful and wanton conduct, made with malice and willful intent to injure the Plaintiff, he is entitled to punitive damages against them.

26

**COUNT VIII – ~~Interference with Contractual Relations~~Tortious Interference with**

**Prospective Economic Advantage**

**(Dr. Rageh against Dr. Ulrich in his individual capacity.)**

~~171.~~173.    Plaintiff repeats and realleges the preceding paragraphs ~~1—170~~ as if fully set forth herein.

~~172.~~174.    ~~At the time when Defendants' defamatory comments were made to Plaintiff's employer, a valid employment contract was in place.~~ A prospective employment contract existed between Dr. Rageh and OCLI Vision at AIO.

~~173.~~175.    Defendants ~~were aware that the Plaintiff had signed a contract with his employer.~~ held a reasonable expectation that Dr. Rageh would contract with OCLI Vision at AIO.

~~174.~~176.    ~~Defendants made their slanderous comments with the intent of injuring the Plaintiff, interfering with the Plaintiff's employment contract, and causing him to lose his job and hence his Fellowship.~~ Based on information and belief, Defendants, by and through the acts of Dr. Ulrich, intentionally induced OCLI Vision at AIO not to contract with Dr. Rageh.

~~175.~~177.    ~~Upon information and belief, the Defendants' reasons for making the slanderous and false comments regarding the Plaintiff were malice, ill will, and personal hatred of the Plaintiff.~~ By doing so, Dr. Ulrich acted with malice and without justification.

~~176.~~178.    ~~As a direct and proximate result of the slanderous statements and interference with the employment contract of the Plaintiff, the Plaintiff was terminated from his fellowship and has suffered loss of income and other financial injury. In addition,~~

27

he has suffered injury to his person, including great emotional distress, humiliation, embarrassment, anger, grief, pain and suffering, and damage to his reputation.But for the interference of Dr. Ulrich OCLI Vision at AIO would have entered a contract with Dr. Rageh.

177.179.    As a result of the interference with contractual relations by the Defendants, the Plaintiff's reputation and business has been irreparably harmed.Dr. Ulrich's actions resulted in actual damages to Dr. Rageh, which will be provedn at trial.

178.    Because Defendants' tortious actions were willful and wanton conduct, made with malice and with willful intent to injure him, the Plaintiff is entitled to punitive damages against the Defendants.

**COUNT IX – Tortious Interference with Prospective Economic AdvantageViolation**

**of the Civil Rights Act of 1866**

**(Dr. Rageh against Defendnat UNC)**

179.180.    Plaintiff repeats and realleges the preceding paragraphs 1   178 as if fully set forth herein.

180.181.    A prospective employment contract existed between Dr. Rageh and OCLI Vision at AIODr. Rageh was employed by the Defendant, UNC.

181.182.    Defendants held a reasonable expectation that Dr. Rageh would contract with OCLI Vision at AIO.Dr. Rageh, of Egyptian descent, of mixed race, and belongs to a protected category.

182.183.    Based on information and belief, Defendants, by and through the acts of Dr. Ulrich, intentionally induced OCLI Vision at AIO not to contract with Dr. Rageh.The

28

foregoing allegations against UNC constitute a deprivation of Dr. Rageh's right to make and enforce contracts on the same terms enjoyed by persons outside of his protected category and otherwise continue discriminatory conduct on the basis of race against Dr. Rageh, in violation of 42 U.S.C. § 1981.

183.184. By doing so, Defendants acted with malice and without justification.UNC violated Section 1981 by subjecting Dr. Rageh to a hostile work environment based on his race by denying him training opportunities.

184.185. But for the interference of Defendants, OCLI Vision at AIO would have entered a contract with Dr. Rageh.UNC violated Section 1981 by shortening Dr. Rageh's fellowship and discharging him because of his race.

186. Defendants' actions resulted in actual damages to Dr. Rageh which will be proven at trial.Dr. Rageh suffered intentional, unwanted harassment because of his race; the harassment was severe or pervasive; the harassment negatively affected the terms, conditions, or privileges of his employment; UNC knew or should have known about the harassment and failed to take prompt, remedial action. As a result of this hostile work environment, Dr. Rageh suffered emotional distress and other damages.

187. Dr. Rageh suffered intentional, unwanted harassment because of his race; the harassment negatively affected the terms, conditions, or privileges of his employment; UNC knew or should have known about the harassment and failed to take prompt, remedial action. As a result of this hostile work environment, Dr. Rageh suffered emotional distress and other damages.

188.   As an actual, proximate, and foreseeable consequence of UNC's conduct, Dr. Ragehhas suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

189.   UNC's actions were done maliciously, willfully and wantonly, and in a manner that demonstrates a reckless disregard for Dr. Rageh's rights. As a result of UNC's conduct, Dr. Rageh is entitled to recover punitive damages in an amount to be determined at trial.

185.190.   UNC's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct.

**COUNT X – ~~Wrongful Discharge in Violation of Public Policy~~Retaliation in Violation of Section 1981 of the Civil Rights Act of 1866**

**(Dr. Rageh against Defendant UNC)**

186.191.   Plaintiff repeats and realleges the preceding paragraphs ~~1–185~~ as if fully set forth herein.

187.192.   ~~Dr. Rageh was employed by Defendants.~~The foregoing allegations against UNC constitute retaliation for Dr. Rageh's efforts to exercise his right to make and enforce contracts on the same terms enjoyed by persons outside of his protected category, in violation of 42 U.S.C. § 1981.

188.193.   ~~Dr. Rageh belongs to a protected category and engaged in protected activity.~~UNC is liable to Dr. Rageh for retaliating against him in violation of Section 1981 for opposing practices and activity made unlawful pursuant to 42 U.S.C. § 1981.

189.194.   ~~Defendants terminated Dr. Rageh's employment as a result of his protected activity.~~Plaintiff suffered damages, is now suffering, and will continue to suffer irreparable injury from Defendant UNC's unlawful conduct in violation of 42 U.S.C. § 1981.

30

~~190.~~195.   ~~There was a public policy applicable to the circumstances of the termination (N.C.G.S. 126-17).~~UNC's actions were done maliciously, willfully and wantonly, and in a manner that demonstrates a reckless disregard for Dr. Rageh's rights. As a result of UNC's conduct, Dr. Rageh is entitled to recover punitive damages in an amount to be determined at trial.

196.   ~~Dr. Rageh was protected by this public policy, and~~As an actual, proximate, and foreseeable consequence of UNC's conduct, Dr. Rageh has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

**COUNT XI – Discrimination and Retaliation in Violation of 42 U.S.C. §1983**

~~191.~~   **(Dr. Rageh against Defendant UNC)**

~~192.~~197.   ~~Defendants' motivation in terminating Dr. Rageh violated this public policy.~~Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

198.   ~~Dr. Rageh suffered damages as a result of Defendants' actions.~~Defendant UNC acted under the color of state and local laws by denying Plaintiff his constitutional right to work in an environment free from race discrimination, disparate treatment, and retaliation pursuant to and guaranteed by the Fourteenth Amendment to the United States of Constitution in violation of 42 U.S.C. § 1983.

199.   Plaintiff suffered damages, is now suffering, and will continue to suffer irreparable injury from Defendant's UNC's unlawful conduct in violation of 42 U.S.C. §1983.

200.   UNC's actions were done maliciously, willfully and wantonly, and in a manner that demonstrates a reckless disregard for Dr. Rageh's rights. As a result of UNC's conduct, Dr. Rageh is entitled to recover punitive damages in an amount to be determined at trial.

~~193.~~201.   As an actual proximate, and foreseeable consequence of UNC's conduct, Dr. Rageh has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHERFORE, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

31

B. Award Plaintiff damages for past and future loss of wages and benefits, plus pre-judgment and post-judgment interest, as appropriate by law;

C. Award Plaintiff compensatory and punitive damages;

D. Award Plaintiff damages for emotional distress;

E. Award to Plaintiff all costs, expert witness fees, and reasonable attorneys' fees incurred in connection with this action;

F. That Plaintiff recover as damages from Defendants, jointly and severally, in an amount to be determined at trial for defamation per se;

G. That Plaintiff recover as damages from Defendants, jointly and severally, in an amount to be determined at trial for interference with contractual relations;

H. That Plaintiff recover as damages from Defendants, jointly and severally, in an amount to be determined at trial for intentional infliction of emotional distress; and

I. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.


Dated: ~~August 12, 2024~~ May 1, 2025                    Respectfully Submitted:

/s/ *Kirton M. Madison*
Kirton M. Madison, NC State Bar # 43029
Madison Law, PLLC
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Telephone: (704) 981-2790
Fax: (704) 930-0648
kmadison@madlawpllc.com
*Attorney for Plaintiff, Dr. Abdulrahman Rageh*

32

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notification of the filing to all counsel of record.

On this 12th day of August 2024.     Respectfully Submitted:

**Madison Law, PLLC**

<u>*/s/ Kirton M. Madison*</u>
Kirton M. Madison, NC State Bar No. 43029
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Telephone: (704) 981-2790
Facsimile: (704) 930-0648
kmadison@madlawpllc.com
*Attorney for Plaintiff, Dr. Abdulrahman Rageh*