# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM
### CIVIL ACTION NO: 1:24-CV-336

| | |
|---|---|
| Abdulrahman Rageh,<br><br>      Plaintiff,<br><br>  v.<br><br>University of North Carolina at Chapel Hill, Jan Niklas Ulrich, Alice Zhang, and Donald Budenz in their official capacities,<br><br>      Defendants. | **AFFFIDAVIT OF DR. YANG "ALICE" ZHANG** |

I, Dr. Yang "Alice" Zhang, being first duly sworn, hereby depose and say:

1. I am an adult over age 18, have never been adjudicated incompetent, do not suffer from mental or emotional illness, and make this affidavit of my own free will.

2. I give this affidavit for any use allowed in the above-styled case under the Federal Rules of Civil Procedure or other applicable laws or rules.

3. I am an ophthalmologist with a specialty in treating diseases and disorders of the retina, specifically through vitreoretinal surgery. I have been employed as a physician at the University of North Carolina for approximately eight years. In that role, I see patients on a clinical and surgical basis.

4. I also serve as an associate professor of ophthalmology and the

1

EXHIBIT 2

residency program director in the Ophthalmology Department at the UNC School of Medicine. In that role, I am responsible for supervising and training residents, as well as supervising the work of our vitreoretinal fellow.

5. The field of retinal surgery is demanding and precise, and any errors in diagnosis and treatment can have serious consequences that include blindness for a patient. As a result, it is critical that patients are diagnosed correctly and treated in a timely and appropriate manner. It is important that a retinal surgeon exhibit the utmost care and attention to detail in treating patients, and that he have the skills necessary to conduct the many surgical procedures we perform on a daily basis.

6. The vitreoretinal fellowship trains a board-eligible ophthalmologist with no or little experience in retinal surgery to be able to handle most retinal problems that require surgery. Because of the nature of this work, I am generally very strict with fellows to ensure that they are developing the necessary skills as well as the competence to take ownership and responsibility for patients. The fellowship also trains the fellow to treat medical retinal diseases, including minor procedures in clinic.

7. I worked closely with Dr. Abdulrahman Rageh during the first few months of his fellowship in 2022, both in surgical and clinical settings. Almost immediately after beginning to work with Dr. Rageh, I had concerns about his

skillset, conduct, and performance. For example, he had large gaps in his general ophthalmological knowledge. These gaps in knowledge resulted in misdiagnoses of patients and subpar patient care. In early September 2022, I provided my colleague Dr. Ulrich with a list of my concerns about Dr. Rageh. A true and correct copy of that communication is attached as **Exhibit A**.

8. Dr. Rageh continued to perform poorly over the next two months. For example, he continued to disregard instructions Dr. Ulrich and I had given him about consulting with attending physicians, ensuring that patient notes were complete and accurate, and performing patient exams. On one occasion, he was untruthful with me when I asked if he had used the appropriate sutures on a patient. On another occasion, he accidentally cut a patient's eyelid when prepping the patient for surgery, but he did not bring this to my attention or take ownership for it when it was discovered. These mistakes by Dr. Rageh were so significant not only because of the patient safety concerns, but because I had never before in my clinical experience seen a physician or fellow make such mistakes.

9. Further, when evaluating post-operative patients, Dr. Rageh failed to demonstrate the ability to record an accurate visual acuity, a basic skill learned in medical school or early residency. Dr. Rageh further demonstrated a lack of professionalism when in a post-operative appointment

3

with a patient; he did not wash his hands upon entering the room, did not counsel the patient on post-operative care, and instead simply handed her a sheet with instructions and asked if she had questions. The standard of care is to go over instructions with a patient and offer an opportunity for the patient to ask questions. This behavior was against training I had provided Dr. Rageh. On another occasion Dr. Rageh told me the wrong age for a patient who required urgent retinal detachment repair, which affects the specific type of surgery that the patient required. When I caught that mistake and asked Dr. Rageh whether he reviewed the chart himself to determine the patient's age he said he got the information from a resident and did not take personal responsibility for verifying all the facts about a patient. In one instance Dr. Rageh misdiagnosed a posterior subcapsular cataract by ultrasound. Ultrasound is not the conventional method for diagnosing this condition. When I examined the patient, I determined that Dr. Rageh's diagnosis was incorrect and what he saw on the ultrasound was reverberation artifacts, not the actual lens.

10. Additional instances of concern included when Dr. Rageh examined a post-op patient with the incorrect lens, resulting in an incomplete examination, and inadequate and subpar care. He failed to update progress notes in a timely manner, hindering workflow in the clinic. In a laser surgery,

4

he overused the laser, which has the potential to lead to adverse patient outcomes including scar tissue formation and increased inflammation. Further, even in October, he still did not know how to use essential surgical equipment required for beginner retinal surgery training despite my conducting a dedicated teaching session for him in which I explained and diagrammed these controls for him. I summarized these concerns and others in emails to Dr. Ulrich in October and November 2022. True and correct copies of those communications are attached as **Exhibit B**.

11. On November 10, 2022, Dr. Ulrich and I met with Dr. Rageh to discuss concerns about his conduct and performance. We outlined the many concerns we had noted and emphasized the need to improve his performance.

12. I did not work with Dr. Rageh after our meeting in November. I stopped supervising Dr. Rageh because he failed to fulfil core retina fellow duties. He did not know basics of operating, was careless with details, was unable to admit mistakes, and did not ask for help when needed. There were instances when he was dishonest and would not admit error. He failed to communicate inpatient consults and add-on surgeries in a timely manner. Ultimately, Dr. Rageh exhibited general negligence in his care for patients. Despite my attempts to train him, I saw little to no improvement from the start of his fellowship. The patient safety and liability concerns I had made me

unable to continue as his supervisor.

13. During my time supervising Dr. Rageh, I provided him with training and instruction appropriate for his skillset and position as a vitreoretinal fellow.

14. My actions towards Dr. Rageh were motivated at all times by the need to ensure that Dr. Rageh was developing his skills as a retina specialist and surgeon, prioritizing patient safety, and conducting himself in a professional manner expected of physicians in our department and in our field.

15. At no point during my interactions with Dr. Rageh did I mock his accent. Nor did I ever tell Dr. Rageh or anyone else that I was uncomfortable working with him due to his size or his age. Dr. Rageh and I never discussed his age.

16. My actions towards Dr. Rageh were never based on his age or his national origin. Nor were my actions towards Dr. Rageh in retaliation for his engagement in protected activity.

17. Any statements I have made about Dr. Rageh's conduct and performance during his tenure as a fellow have been truthful and based on my personal knowledge of Dr. Rageh's conduct and performance.

18. It is my understanding that Dr. Rageh resigned from his fellowship in March 2023.

6

19. Following Dr. Rageh's resignation, he began sending increasingly disturbing emails to me and other faculty members and physicians at UNC, in which he made threats towards me and my family. True and correct copies of these emails are attached as **Exhibit C**. Dr. Rageh's threatening and harassing emails continued throughout the spring and summer of 2023.

20. In August 2023, a UNC graduate student entered an academic building and tragically shot and killed a faculty member. That same day, Dr. Rageh forwarded a news article discussing the murder to me and other members of the ophthalmology department, copying many other individuals. A true and correct copy of this email is attached as **Exhibit D**.

21. Dr. Rageh's communications made me fear for my safety and caused me significant mental and emotional distress. As a result, I sought and obtained a civil no-contact order under North Carolina General Statutes 50C. The order, dated November 6, 2023, ordered Dr. Rageh to (i) cease visiting, assaulting, molesting or otherwise interfering with me; (ii) cease stalking me, (iii) cease harassing me, (iv) not abuse or injure me, (v) not contact me by telephone, written communication or electronic means, (vi) not enter to remain present at my residence, place of employment or other places where I am present including but not limited to within 1000 feet of the campus of the University of North Carolina at Chapel Hill. A true and correct copy of that

7

order is attached as **Exhibit E**.

22.     Dr. Rageh's email communications continued, in violation of the no-contact order. Accordingly, I sought and received a continuation of the no-contact order. The no-contact order was renewed by the Orange County District Court on November 4, 2024. A true and correct copy of that order is attached as **Exhibit F**. In addition, the Orange County District Court cited Dr. Rageh for criminal contempt for violations of the original no-contact order. A true and correct copy of that decision is attached as **Exhibit G**.

23.     Dr. Rageh's actions, which led to the No Contact Order and criminal contempt order, caused me to suffer severe emotional distress, anxiety, fear, and mental anguish, pain, and suffering.

24.     All exhibits are true and correct copies of the documents referenced herein.

Further the affiant sayeth not.

This the 12 day of March 2026.

8

_____

DR. YANG "ALICE" ZHANG


SWORN TO AND SUBSCRIBED

before me this the ___12___ day

of ____3____, 2026.

_____

Notary Public

My commission expires: _01/17/2027_.

9

| | |
|---|---|
| **From:** | Zhang, Yang[alice_zhang@med.unc.edu] |
| **Sent:** | Fri 9/9/2022 6:27:18 PM (UTC-04:00) |
| **To:** | Ulrich, Jan Niklas[jnulrich@med.unc.edu] |
| **Subject:** | Re: Dr. Rageh |

Dear Nick,

Thank you for this list of deficiencies.

I have noted problems while working with him in the clinic. He has some knowledge but it is very hit or miss in terms of being correct or completely wrong.

1. While examining **Redacted** he measured CF vision because he did not know how to turn on a projector and measure the actual visual acuity.

2. I have explained and demonstrated in front of Dr. Rageh how to explain the post op instructions for patients. I have also discussed that it's necessary to say hello, introduce oneself before interacting with patients. Yesterday, **Redacted** daughter told me during a POD1 visit Dr. Rageh did not sanitize his hands, did not introduce himself, seemed in a rush. Then, he had the patient's family read the instruction sheet and to just tell him if they have questions. I relayed to him that this is considered subpar care and we do not just have patients read post op instructions on their own.

3. When signing up a patient for retinal detachment surgery, he told me that the patient is a 35F when she is a 58F. When asked whether he knows if there is a difference in how we treat RDs with such age differences, he said that he understood that the vitreous behaves differently in different patients depending on age. He was advised to double check all details before presenting cases.

4. When examining a patient, he told me that he was able to diagnose a posterior subcapsular cataract by using the ultrasound. We went over that the lines he saw were reverberation artifacts and were in fact, not the actual lens. That particular patient had 1+ NS and did not have a PSC at all.

Finally, I asked him to discuss all cases that residents present to him. If it is non-urgent and the case occurs after 10PM, I will discuss with him first thing in the morning.

He expressed understanding of the deficiencies and seems to want to improve.

Alice Y. Zhang, MD
Assistant Professor
Residency Program Director
UNC-Chapel Hill
Department of Ophthalmology

**From:** Ulrich, Jan Niklas <jnulrich@med.unc.edu>
**Sent:** Wednesday, September 7, 2022 9:30 PM
**To:** Zhang, Yang <alice_zhang@med.unc.edu>
**Subject:** Dr. Rageh

Hi Alice
As discussed I want to email you some of the interactions/issues with Dr. Rageh in August

8/9; He was on general call but did not have his phone on. Resident had to wake me and Dr. Fleischman up to talk about patient with ruptured globe.

**EXHIBIT A**

| From: | Zhang, Yang[alice_zhang@med.unc.edu] |
|---|---|
| Sent: | Fri 10/14/2022 5:54:55 PM (UTC-04:00) |
| To: | Ulrich, Jan Niklas[jnulrich@med.unc.edu] |
| Subject: | Progress report for retina fellow |

Dear Nick,

I am writing to let you know about how things are going with our current retina fellow.

On Sep 29, on a POD 1 PPV patient, Abdu examined the patient with only a 90D lens and did not use a 20D lens. I found out because there was no indirect ophthalmoscope. When I asked him why he did not use a 20D, he said "there wasn't one in the room" but knew that there was one in the pod next to the B-scan machine. He was advised to examine every patient with a 90D and 20D.

In the clinic, he is catching on more with the workflow. But he is still having some difficulty remembering to update the progress note according to what happened during that visit as well as putting in the wrap-up section when the patient needs to return.

For a patient he performed laser on Tuesday, I examined the patient on Thursday morning (Oct 13). The patient had much more laser than was necessary. There was an optos photo taken and I have shown him the rows that were unnecessary so that he may improve.

In the OR, he is learning to put ports in. He is still having difficulty remember the steps in placing 3 trocars. I asked him to study the microscope and vitrector pedal and he had difficulty accurately naming all of the functions. We reviewed this again on Wednesday and reiterated that it is important he knows these by heart when he's operating in the future.

In summary, he has made some progress compared to August 2022. However, he is still performing below the level of where I would expect a fellow to be in Oct of the first year.

Best regards,

Alice Y. Zhang, MD
Assistant Professor
Residency Program Director
UNC-Chapel Hill
Department of Ophthalmology

EXHIBIT B

Confidential-Subject to Protective Order    UNC_0003470

| | |
|---|---|
| **From:** | Zhang, Yang[alice_zhang@med.unc.edu] |
| **Sent:** | Fri 11/4/2022 5:45:56 PM (UTC-04:00) |
| **To:** | Ulrich, Jan Niklas[jnulrich@med.unc.edu] |
| **Subject:** | Retina fellow issues Oct-Nov 2022 |
| **Attachment:** | IMG_2401 2.PNG |

Dear Nick,

I have further issues to report with regards to the performance of the retina fellow, Abdu Rageh.

10/20/22, retina CAP clinic. Fellow reviewed a patient with PGY-2 resident. The case was that of a "operculated hole" noted by another physician. He reviewed the case based off an optos photo that does not demonstrate clearly the location of the hole. He did not go see the patient with the resident. I advised him that he should always go and review cases with the resident in person and that Optos imaging is insufficient to replace a peripheral retinal exam.

On 10/22/22, the fellow, resident Vikram Ponnusamy, and I did an open globe with foreign body removal on Saturday. I allowed the resident to close the corneal laceration as is customary. Abdu did not scrub in for the remainder of the case.
The case was exceptionally difficult with a dense hyphema and poor view for the majority of the surgery and none of the steps were truly at his level to perform.

Towards the end of the surgery, he asked what the post op plan was for the patient. I replied that the patient needs to be seen on POD 1. He asked, who should see the patient, to which I replied, since this is a retina case, he as the retina fellow should be involved. Vikram made arrangements to see the patient at 9AM at Kittner Eye Center.

10/23/22, at 9:22AM, Vikram texted me with POD 1 findings. Abdu had not yet made it to the eye clinic, so I let Vikram know that since the patient has already been seen and has waited 20 minutes for the exam, he should be let go and not wait for Abdu. I also let Vikram know to let Abdu know that the patient is leaving.

10/26/22, I had the resident and Abdu alternate scrubbing in for cases, as the resident on rotation is highly interested in retina and I wanted to help optimize his exposure. Abdu excused himself to go have lunch on the 3rd case of the day. When he returned, he also excused himself to get a flu shot. When he left for lunch, the patient had not even been positioned in the room yet or blocked/prepped for surgery. Other than attempting 1 operative note for the day, he did not write any of the other operative notes. He did not ask or discuss this with me, just didn't do it.

11/2/22, for patient [Redacted], I allowed the fellow to close sclerotomies. This is a step that he has done a handful of times and that he has seen me do for 3 months now.
On POD 1, I discovered that 1 of the 3 sclerotomies was a nylon and 2 of them were vicryls. We normally always use vicryl (or another absorbable suture like gut). When I examined the patient in the office, and asked Abdu whether he used nylon, he said "no I did not". The suture clearly looks smaller and black (nylon) rather than thicker and purple (vicryl).

I sent a text message to the glaucoma fellow Samantha Sauerzopt who was assisting him at the microscope. She did inquire at the time of closure, whether he should be using vicryl, and he said no. Please see screenshot attached to this email.

11/2/22, for patient[Redacted]Abdu draped the patient (without my direct supervision). I usually do not have him do this step. While cutting the drape across the eye, as is customary for retina surgery, he had cut the eyelid. Either he did not notice, or he did not want to admit to it. I discovered this when I tried to extend the nasal aspect of the drape cut and noticed that there was a superficial eyelid nasal laceration. When I pointed it out, he did not say anything and did not take ownership for it. Thankfully, the patient was under GA, otherwise it would have been extremely painful. As you are aware, a safe report had been filed by a member of the OR team and risk management contacted me.

To be clear, I did not discuss issues on 10/22/22 onward with him directly, as I believe many of these are attitude issues. I do not think that Abdu respects me as an attending. I have brought up many issues, requests, demands of what my expectations are previously (please see previous email records that I have sent you), and there has been no progress. Other than this, he called me "sweetie" via text message in August 2022 and claims that this was a mistaken message. Additionally, he makes jokes in the operating room even when the surgery is clearly challenging and even when patients are awake. At this point, I do not feel comfortable discussing these concerns by myself with him.

To conclude, there are several behaviors that are of major concern here.

1. **Abdu is not fulfilling core retina fellow duties**: writing operative notes, being present to help set up for surgery, seeing post-op patients.

2. **Abdu does not know basics of operating, he is careless with details, he is unable to admit to mistakes, he is not able to recognize limitations and ask for help to inquire if he is doing the right thing.** Although he has seen all retina surgeons at UNC use vicryl on sclerotomies, he did not notice or realize that he should be using vicryl on all 3. If he did realize half-way through and used vicryl correctly on the 2nd and 3rd sclerotomies, then why not correct the first mistake, cut out the nylon and do it properly? I was still sterile in a gown, standing a few feet away. He could have also asked for help and clarification.

3. He also cut the eyelid while cutting the eye drapes on another patient. Either he saw the cut and ignored it and did not bother letting me know. Or he was careless enough to make the mistake and not realize it.

4. **Abdu lied to me (and it's not his first time).** When I asked him about using nylon vs vicryl, he claims to not have. But it is clear through the text message with the glaucoma fellow that he was aware of this. It also does not explain why the other 2 sclerotomies were done using the correct suture.

5. **Abdu does not show that he is sorry for any of the mistakes he has made in patient care.** I have not heard him either own up to mistakes or apologize for them. I currently have no reason to believe that he cares to improve and become competent.

6. **Abdu has not shown consistency in communicating inpatient consults, add-on surgeries from clinic.** He forgot to let me know that one of my re-detachment patients wanted me to do surgery the following week- Dr. Willett let me know on Friday evening. When he reviewed a patient who may require surgery, he did so at 6:46PM when the patient had already left the clinic. We were not able to inform the patient of any decisions that were made right away, we could no longer ask for lens calculations at that point. I do not know what had occurred except that the patient decided to have surgery elsewhere.

Finally, as residency program director, I also have concerns about the quality of teaching he is providing residents when reviewing retina cases as the fellow and staffing primary globe cases.

I look forward to discussing all of these issues with you and Abdu next week at our meeting and come up with

RPD·05/12: decision to shorten fellowship and then end fellowship and/or decision to restrict him from seeing patients, RPD 06: evaluations, performance reviews, or discipline

a plan.

Alice Y. Zhang, MD
Assistant Professor
Residency Program Director
UNC-Chapel Hill
Department of Ophthalmology

**From:** Abdulrahman Rageh <dr.rageh@gmail.com>
**Sent:** Tuesday, March 21, 2023 2:05 AM
**To:** Ulrich, Jan Niklas <jnulrich@med.unc.edu>
**Cc:** Budenz, Don <donald_budenz@med.unc.edu>; Hall, Elizabeth <cehall@email.unc.edu>; Jamison, Christopher <cjamison@unc.edu>; Leonard, Bonnie L <bonnie_leonard@med.unc.edu>; Maxfield, Ellen <emaxfield@unc.edu>; Willett, Keirnan <willettk@email.unc.edu>; Winn, Kathryn M. <kmwinn@unc.edu>; Zhang, Yang <alice_zhang@med.unc.edu>; Brewington, Beatrice Yvette <beatrice_brewington@med.unc.edu>
**Subject:** Re: Good luck

I will never forgive you for what you've put me through! The trauma you have caused to me is a lifelong and I am unable to recover at all!

I wish you see such damage in your beloved ones!

I hope you feel guilty for the rest of your career!

I hope your family suffers the same way my family did!

I wish the worst things ever to happen to you and your criminal teammate!

Abdu


On Mon, Mar 20, 2023 at 9:05 PM Ulrich, Jan Niklas <jnulrich@med.unc.edu> wrote:
Abdu
I realize your time at UNC has not been at all what you and we had expected...
Anyways- I want to wish you good luck for the next step in your career wherever you choose to go. I am sure our ways will cross again at some point- retina is a small community...
Best

Nick


J. Niklas Ulrich, MD

Vice Chair of Faculty Development
Director, UNC Surgical Vitreo-Retinal Fellowship Program
Professor of Ophthalmology, Vitreo-Retinal Surgery
Adjunct Assistant Professor of Pediatrics
University of North Carolina at Chapel Hill
Department of Ophthalmology
5151 Bioinformatics Bldg CB 7040
Chapel Hill, NC 27599
ph: 919-966-5296
f:   919-966-1908



**EXHIBIT**
16
RAGEH

--

**EXHIBIT C**

| | |
|---|---|
| **From:** | Abdulrahman Rageh[dr.rageh@gmail.com] |
| **Sent:** | Sun 7/2/2023 1:24:27 PM (UTC-04:00) |
| **To:** | Budenz, Don[donald_budenz@med.unc.edu]; Ulrich, Jan Niklas[jnulrich@med.unc.edu]; Zhang, Yang[alice_zhang@med.unc.edu] |
| **Cc:** | Jamison, Christopher[cjamison@unc.edu]; MARIE A. MYATT[marie.myatt@eeoc.gov]; LYDIA.HALL@eeoc.gov[LYDIA.HALL@eeoc.gov]; ACGME Complaints[complaints@acgme.org]; ethics@aao.org[ethics@aao.org]; aupofcc[aupofcc@aao.org] |
| **Subject:** | Re: Kentucky licensure |
| **Attachment:** | bullets.jpg |

Another reminder!
On a weekend call, I saw a patient after midnight at the UNC emergency room. It was an intraocular foreign body. After calling Dr. Zhang, we decided to operate the next day. She as usual had the resident scrub and work with her and I was watching from the back and writing the notes. After she finished I asked if I can leave because I had a plumber who was coming to fix some stuff at my home and she agreed. I also asked who should see the patient the following day (weekend) as I did not scrub or operate and usually the person who assisted sees the patient for follow-up. She said I still have to see the patient. The next day, I was on my way to see the patient and the resident was already there. I called the resident and said I am on my way, only 5 minutes away. The resident said that Dr. Zhang said I do not have to go see the patient and the resident followed that with "Abdu, I think this is a trap for you". I asked the resident, Did Dr. Zhang mention that I do not need to see the patient and did she ask you to let the patient go even though she knew I am on my way? The resident said yes, Dr. Zhang knew you are on your way and she asked to let the patient go.

A few days later, Dr. Ulrich mentioned that I refused to go see the patient on a weekend! She lied to him. She is a liar! The resident was right!

By the way, after I raised a claim to the UNC discrimination office and the EEOC, I was not only threatened to lose my whole career, but I received death threats. I received 3 bullets at the top of my mailbox. Attached

My frequent emails and warnings are very very serious and I have nothing to lose after UNC destroyed my dream and caused me serious mental, social, and career problems! I am unable to sleep or think! I am still getting nightmares! I can not recover from the anxiety or the depression. I am losing control over myself!
I will take my own revenge if nobody cares! Nobody can blame me then! I have nothing more to lose and I do not care much about my future anymore!

One of the funny things Dr. Ulrich mentioned was that I sometimes log in to my Epic account to chart patients "I had to use my smart phrases" and he then had to re-login. He said would consider that a patient safety issue that justifies the termination of my fellowship! What a great fellowship director! What is funnier is that the UNC investigation concluded that there was no discrimination or retaliation!

I swear on my life, I will get my revenge ASAP!

Next warning email I will mention another patient whom Dr. Ulrich accused me of causing harm but when he saw the patient he did agree with my plan exactly the same!

Abdu

On Sun, Jun 25, 2023 at 9:06 PM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

Another reminder that the KY medical board has inquired about my time at UNC and did not receive a response yet

So, Dr. Zhang commented on the way I pronounced her name twice. One in October and that was in front of one of the residents (either Luke or Patrick, not sure) and the second time was when I had a meeting with Drs. Ulrich and Zhang in early November.

In the meeting in front of Dr. Ulrich, She talked to me angrily "It is not Zhang, it's Zhang" or something like that. I said I'm sorry it is just my accent and she replied at least you should try. That was in front of Dr. Ulrich who replied that his wife can not yet pronounce his name correctly because he is from Germany. I then said thank you for that, Dr. Ulrich.
Dr. Zhang decided not to work with me since then.

One other time I mentioned to Dr. Ulrich that Dr. Zhang treated me badly in the OR because of a towel that she put under her foot pedal. The towel was kinda not folded the exact way she likes and she blamed me for that. I mentioned that later to Dr. Ulrich verbally and friendly and he was sympathetic and replied "Abdu, Fuck the towel, who cares!"

I believe a program director who is unable to protect his trainee from hate and discrimination, does not deserve his/her position.
I also believe a program director who is unable to set up rules to guarantee the well-being of his trainees and that everyone has to be treated fairly and respectfully in the work environment does not deserve his/her position. I believe a program director who is easily manipulated by a criminal manipulative colleague does not deserve his position. UNC Ophthalmology and AUPO should be ashamed of protecting them! ZERO ETHICS! ZERO RESPONSIBILITY!

Next email reminder I will mention an incident where I was going to see one of Dr. Zhang's patients on a weekend and the resident warned me over the phone and said "Abdu, I believe this is a trap for you!"

Until the next reminder email, have a peaceful week!
Abdu

On Fri, Jun 23, 2023 at 12:53 PM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

Another reminder that the KY medical board has inquired about my time at UNC and did not receive a response.
So, in January 2022 after things escalated and Dr. Ulrich knew that I contacted the UNC discrimination office and the EEOC, he put me on leave. He claimed it was because of patients' safety concerns. He mentioned a few cases that happened very early when I started the fellowship (like not responding to the page once or twice even though I apologized for that) in addition to the patient I did not laser as I mentioned in my previous email.

There was a patient who had bleeding in the eye "hyphema" and I found a lesion behind the iris and mentioned it to Dr. Ulrich. I mentioned that we probably should send to Dr. Materin (ocular oncology) for evaluation to rule out eye malignancy or do a scan "anterior segment OCT or UBM". Dr. Ulrich believed the Hyphema is because of neovascularization secondary to a vein occlusion. He also said that the iris mass is probably a residual cortical cataract and he would address that during the vitrectomy surgery. During the surgery the mass was vascular and it bled. It was found to be a malignancy later on. I believe this might be a patient harm more serious than not lasering a patient who does not need it or missing the pager!

Next reminder email I will mention an incident where Dr. Zhang was upset because of the way I pronounce her name and how many times she commented on my accent and how was Dr. Ulrich response to that.

Have a good weekend, thnx
Abdu

On Wed, Jun 21, 2023 at 2:46 PM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

Another reminder that KY medical board has contacted UNC Ophthalmology a few times for my full license application and they did not get a response. I believe UNC still retaliating against me or they are using that to negotiate it during the mediation process through the EEOC.

One day during my horrible days at UNC under the supervision of the director Dr. Ulrich, I was told there was a patient from the morning clinic with a retinal break that needed laser treatment. I went after a long day to see the patient and supposedly to laser the retinal break. I did a thorough exam and there were no retinal breaks or tears. Only a vitreous tuft. It was late around 7 pm. I did not do any laser and I asked the patient to come the following day for another exam with the fellowship director Dr. Ulrich who examined the patient and agreed that there were breaks or tears and no treatment was required. The funny part is when things got escalated and after I filed a claim against them he said (Dr. Ulrich) that I have caused serious patient harm by not lasering the patient and this could justify the fellowship termination! I reminded him that he saw the patient the following day I decided no need for a laser and he agreed with me. He then felt confused and could not explain it. It was funny. I just wanted to let you all know how much stress, discrimination, and retaliation I was exposed to. I was in a very toxic environment. I am glad it is over. Now I will work hard to get them all punished for what they did and hopefully, this will help the next generations in ophthalmology, especially internationals.

I will continue the email reminders every few days until UNC becomes responsive and responsible. Next time I will provide a story of a patient to whom Dr. Ulrich caused really very serious harm by ignoring my exam findings. (He even erased my exam findings from EPIC but I have screenshots!).

Until then, have a great week!
Abdu

On Fri, Jun 16, 2023 at 1:32 PM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

Another reminder that KY medical board has contacted UNC Ophthalmology a few times for my full license application and they did not get a response.
Here I am sharing only a very little piece of information of what I have been exposed to at UNC **(only a few things!):**

August 1, 2022, to July 31, 2024: Previously agreed-upon timeline for completion of a vitreoretinal fellowship at the University of North Carolina at Chapel Hill (UNC)

August/September 2022:

- Dr. Ulrich provide a verbal report that Dr. Zhang did not like me because of my age and shape. Dr. Ulrich stated that Dr. Zhang expressed concerns even before I started my fellowship about my age. Dr. Ulrich did not
understand why. later on, he reposted that Dr. Zhang does not feel comfortable working with me in the OR because of my size sitting next to her under the microscope. He said that she reported that to him a few times. He advised me to suck it up and "bend over". He mentioned that she is stressed out because of her residency director duties and he advised me to give her some time in mid to late December after the residency interviews are over so she might be a little relieved. He also said that they are one team and if one member does not feel comfortable with me they will have to terminate my fellowship. I told Dr. Ulrich that I will do my best and I even offered a lunch or dinner altogether. I also offered to bring her a gift like a flower or a chocolate but he said there is no need to do that and let's keep it professional. I appreciated his advice.

- I have reported to Dr. Ulrich the way Dr. Zhang treated me in the clinic and the OR (only after he reported to me that she does not like me):
Dr. Ulrich said that he witnessed that she treated me aggressively in the clinic and that she was oversensitive to anything I did.
Dr. Ulrich also said that Dr. Zhang used to document everything I do while I worked with her by sending very long and detailed emails without even her or him sharing that with me at all. He said that she is documenting everything without letting me know anything.
Dr. Ulrich said that I should only suck it up when I am exposed to harassment, bullying, and discrimination by Dr. Zhang in the clinics and the OR otherwise they will have to terminate the fellowship. I asked multiple times that I would strongly and politely disagree with the decision to terminate my fellowship, and I asked about the process to appeal your decision within the UNC. I want to let you know that they deliberately ignored me and didn't give me any information about that. I have been living a nightmare since I started at UNC Ophthalmology. I begged him to come all together with a focused plan to support my training under his supervision to set rules to protect my well-being and to ensure that I will be fairly and respectfully treated in the work environment. But again no response

This is it for today and I will continue with more details later on.

Have a great weekend!
Abdu


On Thu, Jun 15, 2023 at 9:53 AM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

 Another reminder


 On Wed, Jun 14, 2023 at 1:01 PM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

 Cheryl,
 I am cc-ing UNC Ophthalmology again to respond to your emails. Hopefully, they feel responsible before my application expires!
 Please keep me posted

 Thanks,
 Abdu

 On Tue, May 30, 2023 at 9:34 AM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

Thank you for your prompt response Cheryl
Have a great day
Abdu

On Tue, May 30, 2023 at 8:49 AM Tabler, Cheryl M (KBML) <Cheryl.Tabler@ky.gov> wrote:

Good Morning, Dr. Rageh,

I do apologize for my delay in responding to you. We are still awaiting information from UNC.

Thank you.

----------------------------------------

*Cheryl Tabler*

Licensure Coordinator L-Z

Kentucky Board of Medical Licensure

310 Whittington Pkwy, Ste 1B

Louisville, KY 40222

502-429-7933

**From:** Abdulrahman Rageh <dr.rageh@gmail.com>
**Sent:** Tuesday, May 30, 2023 9:28 AM
**To:** Budenz, Don <donald_budenz@med.unc.edu>; Tabler, Cheryl M (KBML) <Cheryl.Tabler@ky.gov>
**Cc:** Jamison, Christopher <cjamison@unc.edu>; Lineberry, Harvey <harvey_lineberry@med.unc.edu>; MARIE A. MYATT <marie.myatt@eeoc.gov>; Maxfield, Ellen <emaxfield@unc.edu>; Ulrich, Jan Niklas <jnulrich@med.unc.edu>; Winn, Kathryn M. <kmwinn@unc.edu>; aupofcc <aupofcc@aao.org>; ethics@aao.org
**Subject:** Re: Kentucky licensure

Hey Cheryl

Please let me know the status of my application and if INC has responded to your inquiries.

Thank you,

Abdu

On Fri, May 19, 2023 at 1:27 PM Abdulrahman Rageh <dr.rageh@gmail.com> wrote:

Hi

The Kentucky medical board is looking for your response to their emails. I applied for a full unrestricted medical license in the state of KY in 01/2023 and they needed more information regarding your allegations of privileges suspensions.

Please respond to them promptly and stop the continuing retaliation against me IMMEDIATELY!

Thanks,

AR

--

Sent from my iPhone

--
Sent from my iPhone

--
Sent from my iPhone

--
Sent from my iPhone



JNC_0002702

| Message |
| --- |
| **From:** dr.rageh [dr.rageh@gmail.com] |
| **Sent:** 8/28/2023 8:18:56 PM |
| **To:** Budenz, Don [donald_budenz@med.unc.edu]; Ulrich, Jan Niklas [jnulrich@med.unc.edu]; Zhang, Yang [alice_zhang@med.unc.edu] |
| **CC:** ACGME Complaints [complaints@acgme.org]; Accommodations [accommodations@unc.edu]; Wogu, Brian [Brian.Wogu@unchealth.unc.edu]; DeChamplain, Bryce [Bryce_DeChamplain@med.unc.edu]; Anugo, Davis [Davis.Anugo@unchealth.unc.edu]; Kumar, Dipen [dkuma@email.unc.edu]; Feeney, Jaclyn [jaclyn.feeney@unc.edu]; Grace_reiley@med.unc.edu; Shaheen, Gulrukh [gshaheen@email.unc.edu]; Humes, Angela H. [Angela.Humes@unchealth.unc.edu]; Jamie.Prince@unchealth.unc.edu; Jamison, Christopher [cjamison@unc.edu]; Zehden, Jason [Jason.Zehden2@unchealth.unc.edu]; Zehden, Jason Adam [jason_zehden@med.unc.edu]; Karen_lee@med.unc.edu; Aldaas, Khalid [Khalid.Aldaas@unchealth.unc.edu]; LYDIA.HALL@eeoc.gov; Leonard, Bonnie L [bonnie_leonard@med.unc.edu]; Lineberry, Harvey [harvey_lineberry@med.unc.edu]; MARIE A. MYATT [marie.myatt@eeoc.gov]; Maxfield, Ellen [emaxfield@unc.edu]; Michael Elliot [michaelelliot@emplawfirm.com]; Miguel Materin, M.D. [miguel.materin@duke.edu]; Mills, David C [dcmills@med.unc.edu]; Osborne-Adams, Dawn [dawnoa@unc.edu]; Le, Patrick [Patrick.Le@unchealth.unc.edu]; Li, Rebecca [Rebecca.Li@unchealth.unc.edu]; Ford, Richard [Richard.Ford@unchealth.unc.edu]; Sallie Wallis [sallie.wallis@asrs.org]; Sauerzopf, Samantha Ada [Samantha_Sauerzopf@med.unc.edu]; Stacy Kiff [stacy.kiff@asrs.org]; Flynn, Steven Brent [Steven_Flynn@med.unc.edu]; Vincent.Tang@unchealth.unc.edu; Tang, Vincent D [vdtang@email.unc.edu]; |

Some people who received this message don't often get email from dr.rageh@gmail.com. Learn why this is important

**EXHIBIT D**

Willett, Keirnan [willettk@email.unc.edu]; Winn, Kathryn M. [kmwinn@unc.edu]; Xavier.Mortensen@unchealth.unc.edu; Pascoe, Alexis R [alexpasc@email.unc.edu]; aupofcc [aupofcc@aao.org]; Brewington, Beatrice Yvette [beatrice_brewington@med.unc.edu]; Friedland, Beth Rosenthal [beth_friedland@med.unc.edu]; Hwang, Chris Jaeyon [christopher_hwang@med.unc.edu]; Postlethwait, Christopher Scott [cpostlet@med.unc.edu]; Rubinstein, Daniel Ethan [daniel_rubinstein@med.unc.edu]; Fleischman, David [david_fleischman@med.unc.edu]; ethics@aao.org; Miller, Hannah M [hmiller2@email.unc.edu]; Banna, Hussam Eddin Tawfiq Moh'd [hussam_banna@med.unc.edu]; Brisley, Jon [jbrisley@med.unc.edu]; jennifer.sun@joslin.harvard.edu; Whitfield, Katherine [katherine_whitfield@med.unc.edu]; Kostic, Maja [maja_kostic@med.unc.edu]; Klifto, Meredith Remmer [meredith_klifto@med.unc.edu]; Go, Michelle S [michelle_go@med.unc.edu]; ophth_dept@listserv.med.unc.edu; Heidinger, Patricia [Patricia.Heidinger@unchealth.unc.edu]; patricia.heidinger@unchealthunc.edu; Jones, Peter Woodward [pwj@email.unc.edu]; Shah, Pooja Manesh [pmshah@email.unc.edu]; Weeks, Sherill Mernique [sherry_weeks@med.unc.edu]; Ranjan, Sinthu Sivarama [sranjan@email.unc.edu]

**Subject:** Re: UNC ophthalmology discrimination and retaliation



## STATE OF NORTH CAROLINA

ORANGE _____ County

ORANGE COUNTY
FILED

NOV - 6 2023

AT 11:06 O'CLOCK __ M
BY _____
CLERK OF SUPERIOR COURT

File No.

In The General Court Of Justice
District Court Division

Name And Address Of Plaintiff

ZANG ZHANG

**VERSUS**

**NO-CONTACT ORDER
FOR STALKING OR
NONCONSENSUAL SEXUAL CONDUCT**

Name And Address Of Defendant

ABDULRAHMAN RAGEH

G.S. 50C-7

| FINDINGS |
|---|

This matter was heard by the undersigned district court judge, the court has jurisdiction over the parties and subject matter, and the defendant has been provided notice of the hearing.

The Court hereby finds that:

☐ 1. This Order is entered by default for the remedy sought in the complaint because the defendant failed to ☐ file an answer ☐ appear at this hearing and the allegations in the complaint are sufficient to justify a no-contact order for stalking or nonconsensual sexual conduct.

☑ 2. Present at the hearing were: ☑ the plaintiff, represented by _Greg Connor of Wake Co._ ☑ the defendant, represented by _Self_.

☑ 3. The plaintiff has suffered unlawful conduct committed by the defendant in that the defendant:

☑ a. on more than one occasion followed or otherwise harassed, as defined in G.S. 14-277.3A(b)(2), the plaintiff, without legal purpose and with the intent to:

☑ i. place the plaintiff in reasonable fear for the plaintiff's safety or the safety of the plaintiff's immediate family or close personal associates, in that (describe defendant's conduct) _Defendant sent emails to Plaintiff and other faculty at UNC Opthamalogy that made statements that he wished "you see such damage to your loved ones" and "I wish the worst things ever to_

☑ ii. cause the plaintiff to suffer substantial emotional distress by placing the plaintiff in fear of death, bodily injury, or continued harassment, and this in fact caused the plaintiff substantial emotional distress, in that (describe defendant's conduct and plaintiff's reaction) _(Cont'd from 3.a.i.) you and your criminal teammate" Additionally, Defendant sent the headline from the murder of a UNC faculty member to Plaintiff and other faculty on the day the murder occured. He did not include any context._

☐ b. committed one or more incidences of nonconsensual sexual conduct upon the plaintiff, in that the defendant, intentionally or knowingly, without freely given consent and for the purpose of sexual gratification or arousal, (describe defendant's conduct – "sexual conduct" is defined by G.S. 50C-1(4) as any intentional or knowing touching, fondling, or sexual penetration, either directly or through clothing, of the sexual organs, anus, or breast of another, whether an adult or a minor, for the purpose of sexual gratification or arousal, and includes the transfer or transmission of semen) _____

☑ 4. Other: _Defendant believes that Plaintiff and other Drs/Professors at UNC discriminated against him and made allegations of Pt. safety concerns in order to remove him from the Opthamology Fellowship. This caused him extreme anxiety and mental distress._

| CONCLUSIONS |
|---|

☑ 1. The defendant committed acts of unlawful conduct against the plaintiff.

☐ 2. The plaintiff has failed to prove grounds for issuance of a no-contact order.

(Over)

AOC-CV-524, Rev. 3/22
© 2022 Administrative Office of the Courts

**EXHIBIT E**

## ORDER

It is ORDERED that:

☑ 1. The defendant shall not visit, assault, molest, or otherwise interfere with the plaintiff. [01]

☑ 2. The defendant cease stalking the plaintiff. [01]

☑ 3. The defendant cease harassment of the plaintiff. [01]

☑ 4. The defendant not abuse or injure the plaintiff. [01]

☑ 5. The defendant not contact the plaintiff by telephone, written communication, or electronic means. [05]

☑ 6. The defendant not enter or remain present at the plaintiff's residence, school, place of employment, and other places listed below at times when the plaintiff is present. [04]

List Other Places Where Defendant Ordered Not To Be *Defendant shall not be within 1000ft of the Campus of the University of North Carolina at Chapel Hill without first contacting UNC Public Safety and making arrangements through*

☐ 7. Other: (specify) [08] *public safety to escort him to his intended destination on campus. Defendant may be*

☑ 8. The terms of this Order shall be effective until ☑ one (1) year from the date of this Order.

☐ (specify date and time if less than one year) _____.

☐ 9. The request is denied and the case is dismissed.

| Date | Time | | Name Of District Court Judge (type or print) | Signature Of District Court Judge |
|---|---|---|---|---|
| 11/6/23 | 11:05 | ☑ AM ☐ PM | S. Cole | |

**NOTICE TO DEFENDANT:** *A KNOWING VIOLATION OF A CIVIL NO-CONTACT ORDER SHALL BE PUNISHABLE AS CONTEMPT OF COURT, WHICH MAY RESULT IN A FINE OR IMPRISONMENT. THE COURT MAY FIND YOU IN CIVIL OR CRIMINAL CONTEMPT.*

## CERTIFICATION

I certify this Order is a true copy.

| Date | Signature Of Clerk | | |
|---|---|---|---|
| | | ☐ Deputy CSC ☐ Clerk Of Superior Court | ☐ Assistant CSC |

**NOTE TO CLERK:** *G.S. 50C-9 provides: "The clerk of court shall deliver on the same day that a civil no-contact order is issued, a certified copy of that order to the sheriff." The statute also provides that a copy of the order shall be issued promptly to the police department of the municipality of the victim's residence, or the sheriff and any county police department if the victim does not live within a municipality with a police department.*

## RETURN/CERTIFICATE OF SERVICE WHEN DEFENDANT NOT PRESENT AT HEARING

I certify that this No-Contact Order For Stalking Or Nonconsensual Sexual Conduct was received and served as follows:

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of this Order.

☐ By leaving a copy of this Order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

Name And Address Of Person With Whom Copies Left

☐ By mailing a copy of this Order to the defendant by

☐ registered mail. ☐ certified mail (return receipt). ☐ designated delivery service.

☐ Defendant WAS NOT served for the following reason:

| Date Received | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Of Return | Name Of Sheriff (type or print) |
| Date Mailed | County Of Sheriff |
| | Signature Of Clerk |

☐ Deputy CSC
☐ Assistant CSC
☐ Clerk Of Superior Court

**NOTE TO CLERK:** *G.S. 50C-9(b) provides: "If the [defendant] was not present in court when the order was issued, the [defendant] may be served in the manner provided for service of process in civil proceedings in accordance with Rule 4(j) of the Rules of Civil Procedure."*

AOC-CV-524, Side Two, Rev. 3/22
© 2022 Administrative Office of the Courts

FILED
DATE: July 11, 2025
TIME: 2:19:36 PM
ORANGE COUNTY
CLERK OF SUPERIOR COURT
BY: L. Schmidt

**STATE OF NORTH CAROLINA**

_____ORANGE_____ County

In The General Court Of Justice
District Court Division

File No.
23CVD001049-670

Name Of Plaintiff
Yang Zhang

**VERSUS**

Name And Address Of Defendant
Abdulrahman Rageh
Prairie Eye Center
2020 W. Iles Avenue
Springfield, Illinois 62704

**ORDER RENEWING
NO-CONTACT ORDER
FOR STALKING OR
NONCONSENSUAL SEXUAL CONDUCT**

G.S. 50C-8(c)

Pursuant to G.S. 50C-8(c) and the motion filed in this case, the Court held a hearing to determine whether the previous No-Contact Order should be renewed. The defendant was given proper notice of the hearing. The previous No-Contact Order is attached and incorporated by reference.

| **FINDINGS** |
| --- |

The Court finds:

1. The motion to renew  ☒ was  ☐ was not  filed before the previous order expired.

☒ 2. *(State facts regarding good cause to renew the order; a new incident of unlawful conduct is not required.)*
    Defendant has contacted the Plaintiff via email and Violated the Order. He was found in contempt.

| **CONCLUSION** |
| --- |

The Court concludes that there  ☒ is  ☐ is not  good cause to renew the protective order.

| **ORDER** |
| --- |

It is ORDERED that:

☒ the No-Contact Order For Stalking Or Nonconsensual Sexual Conduct entered on *(give date)* _____11/06/2023_____
    and attached is renewed and valid until the date of expiration listed below, subject to modifications listed below. *(Specify any modifications to previous order.)*
    The Order is entered Nunc Pro Tunc from the date of the hearing itself because the signature of the trial court did not attach.

7/11/2025 12:16:44 PM

☐ the motion is denied.

| Date | Signature Of Judge |
| --- | --- |
| 11/04/2024 | *Joal Hall Broun* |
| **Date Of Expiration Of This Order** | Name Of Judge (Type Or Print) |
| 11/06/2025 | Joal Hall Broun |

| **CERTIFICATION** |
| --- |

I certify this order is a true copy.

| Date | Signature Of Clerk | ☐ Deputy CSC ☐ Assistant CSC |
| --- | --- | --- |
| | | ☐ Clerk Of Superior Court |

**NOTE TO CLERK:** *G.S. 50C-9 provides: "The clerk of court shall deliver on the same day that a civil no-contact order is issued, a certified copy of that order to the sheriff." The statute also provides that a copy of the order shall be issued promptly to the police department of the municipality of the victim's residence, or the sheriff or county police if the victim does not live within a municipality with a police department.*

AOC-CV-526, Rev. 5/13
© 2013 Administrative Office of the Courts

(Over)

**EXHIBIT F**



| | RETURN/CERTIFICATE OF SERVICE WHEN DEFENDANT NOT PRESENT AT HEARING | |
|---|---|---|

I certify that this No-Contact Order For Stalking Or Nonconsensual Sexual Conduct was received and served as follows:

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of this order.

☐ By leaving a copy of this order at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

Name And Address Of Person With Whom Copies Left

☐ By mailing a copy of this order to the defendant by
☐ registered mail.   ☐ certified mail (return receipt).   ☐ designated delivery service.

☐ Defendant WAS NOT served for the following reason.

| Date Received | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Of Return | Name Of Deputy Sheriff Making Return (Type Or Print) |
| Date Mailed | County Of Deputy Sheriff Making Return |
| | Signature Of Clerk | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court |

**NOTE TO CLERK:** *G.S. 50C-9(b) provides: "If the [defendant] was not present in court when the order was issued, the [defendant] may be served in the manner provided for service of process in civil proceedings in accordance with Rule 4(j) of the Rules of Civil Procedure."*

AOC-CV-526, Side Two, Rev. 5/13
© 2013 Administrative Office of the Courts

FILED
DATE: September 30, 2024
TIME: 3:26:48 PM
ORANGE COUNTY
CLERK OF SUPERIOR COURT
BY: C. Pope

**STATE OF NORTH CAROLINA**

_____ORANGE_____ County

| File No. |
| 23CVD001049 |

In The General Court Of Justice
District Court Division

Name Of Plaintiff
YANG ZHANG

**VERSUS**

Name Of Defendant
ADDULRAHAM RAGEH

**CONTEMPT ORDER**

**NO-CONTACT ORDER FOR STALKING OR**

**NONCONSENSUAL SEXUAL CONDUCT**

G.S. 50C-10; 5A-15, -23

**FINDINGS**

A contempt hearing was held before the district court judge named below, pursuant to a show cause order which was served on the defendant on (Give date) _____09-25-2024_____ .

The Court makes the following findings of fact:

1. A No-Contact Order For Stalking Or Nonconsensual Sexual Conduct was issued in this case on (Give date of order) _____11-06-2023_____ and has been in effect at all relevant times. In that Order the defendant was required to (list provisions at issue)

   Defendant was not to contact the plaintiff by telephone, written communication, or electronic means.

2. [x] a. **CRIMINAL CONTEMPT**
   The defendant was represented by counsel, waived representation by counsel, or was not entitled to court appointed counsel. The Court finds beyond a reasonable doubt that the defendant willfully failed to comply with the No-Contact Order in that: (Set out facts relating to violation(s).)

   Defendant emailed copied the Plaintiff on an email sent on March 4, 2024 in violation of the previously entered No Contact Order. Defendant alleged that it was a mistake and he did not realize that Dr. Zhang's email was in the group email he sent. The trial court had an opportunity to observe the Defendant when he testified and did not believe he did not know Dr. Zhang's email was in the group email. The Defendant even mentioned in the email that Dr. Zhang lied about his performance while he was a fellow at UNC Opthalmalogy.

   [ ] b. **CIVIL CONTEMPT**
   The defendant was represented by counsel, waived representation by counsel, or was not entitled to court appointed counsel. The Court finds that the defendant has willfully failed to comply with the No-Contact Order and at this time, has the ability to comply with the order and the purposes of the Order may still be served by compliance, in that: (Set out facts relating to violation, means to comply, and purposes served by compliance.)

3. Other: (specify)

AOC-CV-529, New 12/04
© 2004 Administrative Office of the Courts

(Over)

**EXHIBIT G**

This matter is properly before the Court and the Court has jurisdiction over the parties and the subject matter.

☒ 1. The defendant willfully failed to comply with the No-Contact Order and is in CRIMINAL CONTEMPT.

☐ 2. The defendant has willfully failed to comply with the No-Contact Order, has the present ability to comply, and is in CIVIL CONTEMPT.

☐ 3. The evidence does not support a conclusion that the defendant is in contempt, and this proceeding should be dismissed.

☐ 4. Other: *(specify)*

**ORDER**

It is ORDERED that:

☒ 1. **CRIMINAL CONTEMPT**
the defendant

    ☐ be committed to the county jail for_____ days *(Maximum of 30).*

    ☒ pay a fine in the amount of $ _500.00_____ *(Maximum of $500).*

☐ 2. **CIVIL CONTEMPT**
the defendant be committed to the county jail for an indefinite period, for as long as the contempt continues. The defendant may purge himself/herself from incarceration by _____
_____ .

☐ 3. this proceeding be dismissed.

☐ 4. Other: (specify)

9/30/2024 1:55:48 PM

| Date | Name Of Presiding Judge (Type Or Print) | Signature Of Presiding Judge |
|---|---|---|
| 09-30-2024 | Joal Hall Broun | *Joal Hall Broun* |

AOC-CV-529 Side Two, New 12/04
© 2004 Administrative Office of the Courts