IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO: 1:24-CV-336

Abdulrahman Rageh,

    Plaintiff,

    v.

University of North Carolina at
Chapel Hill, Jan Niklas Ulrich,
Alice Zhang, and Donald Budenz in
their official capacities,

    Defendants.

REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

In their Motion for Summary Judgment and supporting brief, Defendants showed overwhelming evidence that Plaintiff's fellowship was shortened because of Plaintiff's serious failures in his work, some of which resulted in actual or potential patient harm. D.E. 68 at 2; D.E. 69 at 4-8. Plaintiff attempts to avoid this straightforward conclusion by asserting an alternate theory: all of the attending physicians at UNC-CH, who supervised his fellowship, were lying about his poor performance. To reach this conclusion, Plaintiff selectively interprets, and at times misstates, the record in attempts to create material issues of fact. However, Plaintiff's attempts are unpersuasive.

1

Plaintiff does not put forward direct evidence of discrimination or retaliation and does not demonstrate that Defendants' legitimate, nonretaliatory, and nondiscriminatory reasons to shorten his fellowship were pretextual. Further, he does not establish that Ulrich made untrue, defamatory statements to preserve his defamation claim, and does not demonstrate that Defendants acted in bad faith to save his tortious interference claims. Defendants are entitled to summary judgment on all of Plaintiff's remaining claims.

## I. Plaintiff's Direct Evidence of Retaliation is Unpersuasive.

Plaintiff first argues that the record contains direct evidence of retaliatory intent, pointing to two statements by Ulrich which he claims directly "announce[], admit[], or otherwise unmistakably indicate[] that [Plaintiff's EOC complaint] was a determining factor" in Defendants' decisions. D.E. 76 at 8 (quoting *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982). But Plaintiff strains or outright mischaracterizes the record on each count.

First, Plaintiff points to an email sent by Ulrich to a Human Resources ("HR") representative on December 31, 2022, claiming that prior to that date, "Ulrich had no plans to immediately terminate [Plaintiff]." D.E. 76 at 8-9. He suggests Ulrich's statement that Plaintiff "now has made repeated statements

of being treated unfairly and that Dr. Zhang was acting discriminatory against him," coupled with the decision to terminate Plaintiff's contract, is direct evidence that Ulrich terminated Plaintiff's contract *because* of his EOC complaint. *Id.*

But this is wrong on two counts. To start, Plaintiff had already been informed on December 16, 2022, that his fellowship would be shortened, at a minimum. D.E. 68-1 ¶16. Moreover, the very same email that Plaintiff cites makes clear that there had been "another patient safety concern" and that Plaintiff's "lack of self awareness, failing to maintain a working relationship with his attendings and his actions repeatedly putting patients at risk" were the basis for Ulrich's decision to terminate Plaintiff's contract. D.E. 76-2 at 88.

Second, Plaintiff points to statements Ulrich made in an interview with the EOC investigator, which according to Plaintiff show Ulrich "was not comfortable working with [Plaintiff] after he filed a discrimination complaint." D.E. 76 at 9. But Ulrich explicitly told the investigator that "none of us were comfortable working with [Plaintiff] at this point" because of the "patient safety concerns, no matter what." D.E. 76-2 at 57. Indeed, Ulrich confirmed that he never said he wouldn't work with Plaintiff. *Id.* at 58. Ulrich also made clear he and his colleagues came to the conclusion to end the fellowship early "before I even ever heard of him complaining to [the EOC]." D.E. 77-1. Thus,

to the extent Plaintiff attempts to draw an inference that Ulrich's subsequent decision to terminate Plaintiff's contract was based on Ulrich's "discomfort," that is at most indirect evidence of retaliation, which is expressly rebutted by Ulrich's own statements.[1]

## II. Plaintiff Has Failed to Establish a Prima Facie Case for His Retaliation and Discrimination Claims and Has Not Demonstrated Pretext.

The Court has ruled that Plaintiff's retaliation claims are limited to "shortening or terminating [Plaintiff's] fellowship in retaliation for protected activity," and his discrimination claims are limited to "the denial of training opportunities." D.E. 23 at 22. To the extent Plaintiff has blurred the lines on these claims in his arguments to establish his prima facie case, his arguments should be disregarded. For example, Plaintiff contends that (1) his retaliation claim can be based on deprivation of training opportunities, "false" allegations of patient harm, constructive discharge,[2] or the accrual of attorneys' fees, and

---

[1] Plaintiff cites to a statement purportedly by Ulrich that there was "no place for [Plaintiff] at UNC." D.E. 76 at 9. But that statement—which is in fact Ulrich's summary of another physician's words and is cut off in the exhibit provided by Plaintiff—has no bearing on Ulrich's reasoning for deciding to terminate Plaintiff's contract. It is thus not direct evidence of retaliation. To aid the Court, Defendants have attached the missing page of Plaintiff's exhibit at D.E. 77-1.

[2] Here Plaintiff raises a theory of constructive discharge for the first time. "Courts routinely refuse to consider legal theories not alleged in the complaint and raised for the first time in a brief in opposition to a motion for summary judgment." *Brass v. SPX Corp.*, No. 314CV00656RJCDSC, 2019 WL 7373785, at *2 (W.D.N.C. Dec. 31, 2019).

4

(2) his discrimination claim can be based on hiring a replacement fellow and being denied due process when his fellowship was shortened. D.E. 76 at 10-13, 16-17. These go beyond the Court's direction from its Order on the Motion to Dismiss and cannot be used to establish a prima facie case.

Assuming without conceding that Plaintiff has established a prima facie case for his retaliation and discrimination claims, he cannot demonstrate that Defendants' legitimate nondiscriminatory (and nonretaliatory) reasons for their actions were pretextual.

In their supporting memorandum, Defendants pointed to extensive evidence explaining the reasons for their actions towards Plaintiff. D.E. 69 at 4-8. Plaintiff nevertheless contends that this explanation is pretextual because, according to Plaintiff, all of Defendants' patient safety concerns are without justification. In support, Plaintiff (1) insists that Ulrich should have reported his failures through UNC-CH's internal reporting system and filled out medical board forms differently; (2) contends that because his failures did not result in severe patient harm they can be disregarded; and (3) states that certain of the instances detailed in Defendants' brief are "new" allegations. D.E. 76 at 17-24. The record does not support Plaintiff's conclusions.

To start, Plaintiff broadly argues that none of the specified concerns were legitimate because Ulrich did not make internal "SAFE" reports concerning

5

Plaintiff, and because Ulrich "attested to <u>NO</u> patient safety concerns or issues with [Plaintiff's] fitness as a doctor" on a December 2022 state medical board form. D.E. 76 at 18. But as Ulrich testified, there was no requirement that Ulrich make SAFE reports, and the types of safety concerns Plaintiff created were, in Ulrich's view, not the type typically reported through SAFE reports. D.E. 68-1 ¶28; D.E. 76-2 at 26-27.

And with respect to the December 2022 form, Ulrich testified that while he might recommend Plaintiff for licensure as a medical doctor, which was what the form addressed, he would not recommend him to be a vitreoretinal surgeon or retina specialist. D.E. 68-4 202:18-203:5. Moreover, Ulrich informed Plaintiff that, should his fellowship be shortened, Ulrich would be obligated to send updates to the medical boards. D.E. 68-4 187:23-189:15. In essence, neither of these instances indicate that Ulrich did not have concerns about patient safety with respect to Plaintiff—and in fact, the contemporaneous evidence is to the contrary. D.E. 69 at 4-8.

Perhaps in recognition of this overwhelming evidence, Plaintiff attempts to downplay the seriousness of the numerous documented concerns. For example, Plaintiff does not seriously challenge the veracity of using the incorrect suture during surgery, a failure that was contemporaneously documented. D.E. 68-2 at 12. Instead, he says he does not remember the

6

incident. D.E. 76-1 ¶3. And Plaintiff admits that he accidentally cut a patient's eyelid during surgery. D.E. 76 at 21. Nevertheless, Plaintiff argues that because the cut did not cause the patient serious harm it should be disregarded. *Id.*

Plaintiff also contends that if these incidents occurred as described, Defendants would have taken some sort of work-related discipline. Plaintiff does not acknowledge that Defendants *did* respond to this and other issues with Plaintiff at this time. D.E. 69 at 6-8. Indeed, because of this incident and others, Plaintiff was no longer permitted to work with Zhang or her patients. D.E. 68-1 ¶12; D.E. 68-2 ¶12.

Next Plaintiff argues that Defendants' rationale is pretextual because, he claims, Defendants now assert "new" reasons for their actions: that Plaintiff's misdiagnosis caused a patient to go blind, and that Plaintiff incorrectly prescribed medication. D.E. 76 at 21-22. Neither is the case.

To start, both instances were documented as concerns during the semester that Plaintiff was a fellow at UNC-CH. Indeed, Ulrich noted the incident with Plaintiff misdiagnosing an infection, resulting in an eye that was full of pus, as one of his first documented concerns about Plaintiff's performance in August 2022. D.E. 68-1 at 11. Similarly, Ulrich noted the concern about Plaintiff's improper prescription of steroid drops in yet another

email documenting his concerns in December 2022. *Id.* at 12. Ulrich further elaborated on both concerns in explanatory letters sent to medical boards in 2023. D.E. 76-2 at 79-80, 86-87. Plaintiff simply cannot, through wishful thinking, claim that these concerns are "new."

Instead, Plaintiff argues that Ulrich's reports must have been fabricated because no disciplinary action was taken; Ulrich did not report it through UNC-CH's internal reporting system; and because Ulrich sent an email saying the patient was feeling better. D.E. 76 at 22, 27. But as Ulrich testified, he addressed these incidents with Plaintiff at the time they occurred. D.E. 77-2 206:21-208:3; 220:4-221:21. Plaintiff's insistence that UNC-CH should have taken formal disciplinary action after each of his failures, and that each failure must have been reported through UNC-CH's SAFE reporting system are personnel matters this Court does not normally second-guess. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). And even if Ulrich stated that a patient was "feeling better" at one point, that does not contradict his later email that the patient's eye was full of pus when the operation occurred.[3]

---

[3] In fact, it is not apparent from the face of the document that Ulrich is even referring to the same patient, nor has Plaintiff pointed to any testimony making that connection.

Finally, Plaintiff makes broad arguments that Defendants' emails documenting their concerns with Plaintiff were contrived and speculates that they were created after advice from HR. D.E. 76 at 22-23. This strains belief. While true that Ulrich was discussing Plaintiff with HR in December 2022, when the situation was becoming untenable, the emails sent after those discussions began are entirely consistent in tone, format, and content with emails Ulrich and Zhang sent to each other months before. *Compare* D.E. 68-2 at 10-14 *with* D.E. 76-2 at 92-93. Far from demonstrating discriminatory motive or pretext, these emails show Ulrich and Zhang's consistent concerns with Plaintiff's performance.

* * *

Plaintiff's argument that he believes UNC-CH should have handled its internal discipline and reporting process differently, and his view that his mistakes were not as serious as Defendants believed them to be, do not demonstrate pretext. Defendants' extensive, consistent, contemporaneous evidence lays out their legitimate, nondiscriminatory, and nonretaliatory reasons for their actions. Defendants are entitled to summary judgment on Plaintiff's discrimination and retaliation claims.

9

## III. Plaintiff Has Not Established His Defamation Claim.

Plaintiff's attempts to save his defamation claim fail. To start, he does not address, and therefore concedes, that Ulrich's statements are unactionable either because they were made at Plaintiff's direction, or because they were Ulrich's opinion. But even if these arguments were not conceded, Plaintiff fails to demonstrate that any of Ulrich's statements were false.

Plaintiff does not address Defendants' argument that his defamation claim fails because a defamation claim cannot be based on a communication made "at the request and direction of the plaintiff." *Friel v. Angell Care Inc.*, 113 N.C. App. 505, 508, 440 S.E.2d 111, 113 (1994). Plaintiff does not deny that he requested Ulrich fill out and submit the forms to the medical boards. Further, Plaintiff does not address Defendants' argument that Ulrich stating there were "repeated patient safety concerns" is, alternatively, Ulrich's opinion, and not an actionable statement for defamation purposes. D.E. 69 at 21-22. The Court may deem these arguments conceded, and they are dispositive. *See Brand v. N. Carolina Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004).

However, even if the Court does not deem these arguments conceded, Plaintiff rests his entire defamation argument on his position that all of Defendants' patient safety concerns were lies. Specifically, he reiterates his

10

arguments that HR instructed Ulrich to create documentation, that Ulrich recommended Plaintiff for licensure to certain medical boards, and that some of Plaintiff's errors that had the potential to harm patients did not in fact harm patients, and thus they should not have been concerns. D.E. 76 at 25-27. For the same reasons discussed above, the record demonstrates that the statements in the letters to medical boards were truthful.

Plaintiff also questions the legitimacy of Ulrich's concerns about Plaintiff's examination of a patient with a potential sub-retinal tear. D.E. 76 at 25. As Ulrich explained, his concerns were (1) that Plaintiff examined the wrong portion of the eye, and so did not evaluate the potential tear the attending physician had flagged, and (2) that after Plaintiff's assessment that there was no tear he did not check in with the attending physician to confirm. D.E. 68-4 at 133:19-135:16. Ultimately, because an untreated sub-retinal tear can cause irreversible vision loss, "[Plaintiff] was lucky there was no tear." *Id.* 133:16-135:6.

Plaintiff appears to argue that the concerns articulated in Ulrich's letters to medical boards after Plaintiff left UNC-CH were "fabricated" because Ulrich did not articulate those same concerns in the December 2022 form he submitted on Plaintiff's behalf. D.E. 76 at 26. But Plaintiff ignores that every single concern raised in the post-fellowship letters is drawn from concerns

11

articulated and documented during Plaintiff's fellowship. *Compare* D.E. 76-2 at 79-80, 86-87 *with* D.E. 68-1 at 10-13, 15-16; D.E. 68-2 at 10-14.

For the foregoing reasons Defendants are entitled to summary judgment on Plaintiff's defamation claim.

## IV. Plaintiff Has Not Established Interference With Contractual Relations.

Plaintiff's only argument to support his interference with contractual relations claim is a conclusory statement that Ulrich and Zhang acted in bad faith, with no citations to the record. "[C]onclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Defendants are entitled to summary judgment on this claim.

## V. Plaintiff Has Not Established Tortious Interference with Prospective Economic Advantage.

Like his interference with contractual relations claim, Plaintiff's only argument in response to support his claims of tortious interference with prospective economic advantage is a conclusory statement that Ulrich's comments were defamatory and that those statements led to "cancellation of a signed offer." D.E. 76 at 28. But Plaintiff does not identify any specific statement that he contends is "defamatory," nor does he address at all Ulrich's

12

argument that he is entitled to a qualified privilege. D.E. 69 at 27-28. For this reason, Defendants are entitled to summary judgment on this claim.[4]

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in their favor.

This 27th day of April, 2026.

<div style="margin-left: 40%;">

JEFF JACKSON
Attorney General

<u>/s/ Lindsay Vance Smith</u>
Lindsay Vance Smith
Special Deputy Attorney General
NC State Bar No. 48085
lsmith@ncdoj.gov

North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorney for Defendants*

</div>

---

[4]     As noted in Defendants' brief, Plaintiff merely speculates Ulrich's comments caused AIO to not enter into a contract with him. D.E. 69 at 27. In response, Plaintiff cites an email chain from individuals appearing to be from a separate clinic discussing an unspecified job application. D.E. 76 at 28, D.E. 76-2 at 75. This document was not produced to Defendants until after Plaintiff's response brief was submitted, and there is no affidavit or deposition testimony authenticating the document. It cannot be considered as evidence at summary judgment. *Pettiford v. N. Carolina Dep't of Health & Hum. Servs.*, 228 F. Supp. 2d 677, 695 n.7 (M.D.N.C. 2002).

/s/ Zach Padget
Zach Padget
NC State Bar No. 46610
padget@unc.edu

Office of University Counsel
The University of North Carolina at
Chapel Hill
123 W. Franklin St., Suite 600A
Chapel Hill, NC 27599-9105
(919) 962-1219
*Attorney for Defendant the University of
North Carolina at Chapel Hill*

14

<u>**CERTIFICATE OF WORD COUNT**</u>

I certify that, in compliance with Local Rule 7.3(d), this brief is no more than 3,125 words according to the word processing software used to prepare this document.

This the 27th day of April, 2026.

<u>/s/ Lindsay Vance Smith</u>
Lindsay Vance Smith
Special Deputy Attorney General

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was served on all parties via the court's CM/ECF System, which will send a Notice of Electronic Filing to all Parties' counsel of record in this action.

This the 27th day of April, 2026.

<u>/s/ Lindsay Vance Smith</u>
Lindsay Vance Smith
Special Deputy Attorney General